1    ROB BONTA
     Attorney General of California
2    ANNA FERRARI
     Supervising Deputy Attorney General
3    JAMES R. BOWEN
     Deputy Attorney General
4    State Bar No. 334879
       300 South Spring Street, Suite 1702
5      Los Angeles, CA  90013-1230
       Telephone: (213) 269-6079
6      E-mail:  James.Bowen@doj.ca.gov
     *Attorneys for Defendants Rob Bonta, Karen Ross,*
7    *and Erica Pan, in their Official Capacities*

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11

12

13   **TRIUMPH FOODS, LLC,**              Case No. 2:25-cv-09063-CAS-AJRx

14                          Plaintiff,

15        **v.**                          **MEMORANDUM OF POINTS AND**
                                          **AUTHORITIES IN SUPPORT OF**
16   **ROB BONTA, in his official capacity**   **DEFENDANTS' MOTION TO**
     **as Attorney General of California,**    **DISMISS**
17   **KAREN ROSS, in her official**
     **capacity as Secretary of the**
18   **California Department of Food and**     Date:         January 5, 2025
     **Agriculture, and ERICA PAN, in her**   Time:         10:00 a.m.
19   **official capacity as Director of the**
     **California Department of Public**       Courtroom:  8B (8th Floor)
20   **Health,**                              Judge:        Hon. Christina A. Snyder
                                              Trial Date:   Not Set
21                          Defendants.       Action Filed: September 23, 2025

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Introduction ........................................................................................................... 1

Background ........................................................................................................... 1

    I.     Legal Background ................................................................................ 1

          A.    Proposition 12 ...................................................................... 1

          B.    The FMIA .............................................................................. 2

    II.    Summary of Prior, Related Proposition 12 Litigation ......................... 3

    III.   This Action ......................................................................................... 4

Legal Standard ..................................................................................................... 5

Argument .............................................................................................................. 6

    I.     Triumph Makes a Facial Challenge to Proposition 12 ........................ 6

    II.    The Section 1983 Claims Lack Merit and Are Untimely ..................... 6

          A.    All of Triumph's Section 1983 Claims Are Time-Barred .......... 6

          B.    The Complaint Alleges No Commerce Clause Violation .......... 7

               1.    The Complaint Does Not Plausibly Allege Intended
                     or Actual Discrimination Against Out-of-State
                     Producers ................................................................... 8

               2.    A *Pike* Balancing or Extraterritorial Effect Theory
                     is Foreclosed by *Ross* ............................................. 10

          C.    The Complaint Alleges No Violation of the Fourteenth
               Amendment's Due Process Clause .......................................... 11

               1.    Proposition 12 Is Not Unconstitutionally Vague .......... 12

                2.    There is No Risk of Arbitrary Enforcement ................... 13

                3.    Triumph Fails to Allege Inadequate Fair Notice .......... 14

          D.    The Import-Export Clause Does Not Apply to this Action ...... 15

    III.   Triumph's Preemption Claims are Based on Inapplicable Law ......... 15

          A.    The FMIA Does Not Preempt Proposition 12 ......................... 15

                1.    The FMIA Does Not Expressly Preempt
                     Proposition 12 .......................................................... 16

                2.    The FMIA Does Not Impliedly Preempt
                     Proposition 12 .......................................................... 18

    IV.   Leave to Amend Should be Denied as Futile ..................................... 21

Conclusion .......................................................................................................... 22

Certification of Compliance ............................................................................... 23

# TABLE OF AUTHORITIES

CASES

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) .................................................................. 5

*Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Becerra*
  870 F.3d 1140 (9th Cir. 2017) (*Éleveurs II*) ...............................*passim*

*Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Bonta*
  33 F.4th 1107 (9th Cir. 2022) (*Éleveurs III*) ......................... 16, 18, 19

*Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Harris*
  729 F.3d 937 (9th Cir. 2013) ............................................... 8, 9

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) .................................................................. 5

*Butler v. Nat'l Cmty. Renaissance of Cal.*
  766 F.3d 1191 (9th Cir. 2014) ............................................... 6

*Canatella v. Van De Kamp*
  486 F.3d 1128 (9th Cir. 2007) .......................................... 6, 22

*Cavel Int'l, Inc. v. Madigan*
  500 F.3d 551 (7th Cir. 2007) ...................................... 17, 18, 20

*Chinatown Neighborhood Ass'n v. Harris*
  794 F.3d 1136 (9th Cir. 2015) ............................................. 11

*Curtis v. Inslee*
  154 F.4th 678 (9th Cir. 2025) ............................................. 11

*Dep't of Revenue of State of Wash. v. Ass'n of Wash. Stevedoring
  Companies*
  435 U.S. 734 (1978) ........................................................... 15

*Ebner v. Fresh, Inc.*
  838 F.3d 958 (9th Cir. 2016) ............................................... 21

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*
  751 F.3d 990 (9th Cir. 2014) ................................................ 5

*Election Integrity Project Cal., Inc. v. Weber*
   113 F.4th 1072 (9th Cir. 2024)..........................................................5, 19

*Empacadora de Carnes de Fresnillo, S.A. de C.V., v. Curry*
   476 F.3d 326 (5th Cir. 2007).....................................................17, 18, 20

*Flynt v. Bonta*
   131 F.4th 918 (9th Cir. 2025)..........................................7, 8, 10, 11

*Halverson v. Skagit Cnty.*
   42 F.3d 1257 (9th Cir. 1994)..............................................................14

*Hayslett v. Tyson Foods, Inc.*
   No. 1:22-CV-1123-STA-JAY, 2023 WL 3666091 (W.D. Tenn.
   May 25, 2023)......................................................................................18

*Huynh v. Chase Manhattan Bank*
   465 F.3d 992 (9th Cir. 2006)...........................................................6, 7

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab.
   Litig.*
   959 F.3d 1201 (9th Cir. 2020)............................................................20

*Iowa Pork Producers Ass'n v. Bonta*
   2022 WL 613736 (C.D. Cal. Feb. 28, 2022)................................*passim*

*Iowa Pork Producers Ass'n v. Bonta et al.*
   Case No. 2:21-cv-09940-CAS-AFM (C.D. Cal. dismissed June 29,
   2022) (*IPPA*)........................................................................................3

*Iowa Pork Producers Ass'n v. Bonta*
   No. 22-55336, 2024 WL 3158532 (9th Cir. June 25, 2024) (*IPPA
   II*).................................................................................................12, 20

*Jones v. Google LLC*
   73 F.4th 636 (9th Cir. 2023)........................................................16, 17

*Khoja v. Orexigen Therapeutics, Inc.*
   899 F.3d 988 (9th Cir. 2018)................................................................6

*Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*
   701 F.2d 1276 (9th Cir. 1983)............................................................21

iv

*Knox v. Brnovich*
  907 F.3d 1167 (9th Cir. 2018)..................................................12, 13

*Lukovsky v. City & Cnty. of San Francisco*
  535 F.3d 1044 (9th Cir. 2008)...............................................7

*Minn. v. Clover Leaf Creamery Co.*
  449 U.S. 456 (1981) ..........................................................9

*Moody v. NetChoice, LLC*
  603 U.S. 707 (2024) ..........................................................6

*N. Am. Meat Inst. v. Becerra, et al.*
  Case No. 2:19-cv-08569-CAS-FFM (C.D. Cal. dismissed June 15,
  2023) (*NAMI*) ................................................................3

*Nat'l Meat Ass'n v. Harris*
  565 U.S. 452 (2012) .......................................................2, 3, 16, 17

*Nat'l Pork Producers Council v. Ross*
  598 U.S. 356 (2023) (*Ross*)...........................................*passim*

*People v. Santorsola*
  225 Cal.App.4th Supp. 12 (Cal. App. Dep't Super. Ct. 2014)..........................18

*Pike v. Bruce Church, Inc.*
  397 U.S. 137 (1970) ........................................................7, 8, 10, 11

*Project Veritas v. Schmidt*
  125 F.4th 929 (9th Cir. 2025) (en banc)..........................................6

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*
  754 F.3d 754 (9th Cir. 2014) ..............................................22

*Robles v. Domino's Pizza, LLC*
  913 F.3d 898 (9th Cir. 2019) ..............................................13

*Shanks v. Dressel*
  540 F.3d 1082 (9th Cir. 2008) .............................................12

*Triumph Foods, LLC v. Campbell*
  156 F.4th 29 (1st Cir. 2025) (*Triumph III*)...............................16, 18, 21

v

*Triumph Foods, LLC v. Campbell*
    715 F. Supp. 3d 143 (D. Mass. 2024) (*Triumph I*)................................................9

*Triumph Foods, LLC v. Campbell*
    742 F. Supp. 3d 63 (D. Mass. 2024) (*Triumph II*) .............................................20

*United States v. Campanale*
    518 F.2d 352 (9th Cir. 1975) ..............................................................................13

*United States v. Salerno*
    481 U.S. 739 (1987) ...............................................................................................6

*Vill. of Hoffman Ests. v. Flipside Hoffman Ests., Inc.*
    455 U.S. 489 (1982) .............................................................................................14

*Wyeth v. Levine*
    555 U.S. 555 (2009) .......................................................................................15, 21

*Zixiang Li v. Kerry*
    710 F.3d 995 (9th Cir. 2013) ..............................................................................21

**STATUTES**

21 U.S.C.
    § 451 .....................................................................................................................20
    § 467e....................................................................................................................18
    § 601 ...............................................................................................................17, 18
    § 603 .......................................................................................................................3
    § 605 .......................................................................................................................3
    § 606 .....................................................................................................................17
    § 661 ................................................................................................................2, 20
    § 678 .................................................................................................3, 16, 17, 18

42 U.S.C.
    § 1983 .........................................................................................................5, 6, 7, 21

Cal. Code Civ. Proc.
    § 335.1 ..................................................................................................................6, 7

Cal. Code Regs. Title 3
    §§ 1320-1327.3.......................................................................................................2
    § 1322(f) ...............................................................................................................13

vi

Cal. Health & Saf. Code
    § 25990 ................................................................................................*passim*
    § 25991 ................................................................................................*passim*
    § 25992 ....................................................................................................2, 9
    § 25993 ...........................................................................................................2
    § 25996 ...........................................................................................................1

## UNITED STATES CONSTITUTION

U.S. Const. Amendment XIV, § 1 .......................................................... 11

U.S. Const. Article I, § 8, cl. 3 ................................................................ 7

U.S. Const. Article I, § 10, cl. 2 ............................................................ 15

## COURT RULES

Fed. R. Civ. P.
    Rule 12......................................................................................................5
    Rule 12(b)(6) ..........................................................................................5
    Rule 15....................................................................................................21

## OTHER AUTHORITIES

9 C.F.R.
    § 300 ......................................................................................................18
    § 300.1 .....................................................................................................3

Ninth Circuit Memorandum, *IPPA*, 2:21-cv-09940-CAS-AFM.............. 4

Ninth Circuit Memorandum, *NAMI*, 2:19-cv-08569-CAS-FFM ............ 4

**INTRODUCTION**

California's Proposition 12 banned the sale of pork sourced from pigs subjected to cruel farming methods, or their immediate offspring. Since 2018, courts, including the U.S. Supreme Court and the Ninth and First Circuits, have uniformly rejected constitutional and preemption challenges to Proposition 12 and analogous laws. Related Ninth Circuit precedent reaffirms that California can preclude product sales arising from animal cruelty. Yet Plaintiff Triumph Foods LLC (Triumph) seeks to enjoin Proposition 12 by raising the same rejected arguments, including that the Federal Meat Inspection Act (FMIA) preempts Proposition 12. No matter how Triumph packages its claims, as this Court has ruled, they are legally untenable. Accordingly, Defendants[1] respectfully request that the Court dismiss Triumph's Complaint without leave to amend.

**BACKGROUND**

**I.    LEGAL BACKGROUND**

    **A.    Proposition 12**

California voters passed Proposition 12 in 2018. Proposition 12 followed Proposition 2 and AB 1437. In 2008, Proposition 2 began "prohibit[ing] the cruel confinement of farm animals in a manner that does not allow them to turn around freely, lie down, stand up, and fully extend their limbs." Prop. 2, § 2, as approved by voters, Gen. Elec. (Nov. 4, 2008). The Legislature enacted AB 1437 in 2010 to prohibit the sale of eggs produced by egg-laying hens that were confined contrary to Proposition 2. Cal. Health & Safety Code § 25996.

Proposition 12 generally prohibits "[a] farm owner or operator within the state" from confining any breeding pig who is kept on a farm in a "cruel manner." Cal. Health & Safety Code § 25990(a). This includes, as relevant here, both confining a breeding pig (1) "in a manner that prevents the animal from lying down,

---

[1] Defendants are Rob Bonta, Attorney General of California; Karen Ross, Secretary of the California Department of Food and Agriculture; and Erica Pan, Director of the California Department of Public Health, in their official capacities.

standing up, fully extending the animal's limbs, or turning around freely" (Turn Around Requirements) and (2) with less than 24 square feet of usable floorspace (Square Footage Requirements).[2] Cal. Health & Safety Code §§ 25991(e)(1), (e)(3). Proposition 12 also prohibits the sale in California of "[w]hole pork meat that the business owner or operator knows or should know is the meat of a covered animal who was confined in a cruel manner, or is the meat of immediate offspring of a covered animal who was confined in a cruel manner." *Id.* § 25990(b)(2).

Proposition 12 prescribes civil and criminal penalties for violations of its terms. Cal. Health & Safety Code § 25993(b). Pork producers can only be criminally liable for "knowingly engaging in the sale within [California]" of whole pork meat from a breeding pig that has been confined in a cruel manner, or that is the "immediate offspring of a breeding pig that has been so confined," which is a misdemeanor. *Id.* § 25990(b)(2); *see also id.* § 25993.

The California Department of Food and Agriculture (CDFA) and California Department of Public Health (CDPH) published draft final regulations on May 28, 2021, which went into effect on September 1, 2022. Cal. Code Regs. tit. 3, §§ 1320-1327.3; *see also* Cal. Health & Safety Code § 25993 (requiring CDFA and CDPH to jointly promulgate implementing regulations).

**B.    The FMIA**

Congress passed the FMIA "to protect the consuming public from meat and meat food products that are adulterated or misbranded and to assist in efforts by State and other Government agencies to accomplish this objective." 21 U.S.C. § 661(a). The FMIA has "dual goals" of "safe meat and humane slaughter." *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 456 (2012). Thus, it governs "activities at slaughterhouses," *Harris*, 565 U.S. at 456, but not activity that "works at a remove

---

[2] Proposition 12 includes exceptions for medical research, veterinary care, transportation, exhibitions, slaughter, periods before a breeding pig is expected to give birth or when a breeding pig is nursing, and temporary periods for animal husbandry. *See id.* § 25992.

1  from the sites and activities that the FMIA most directly governs." *Id.* at 467. It
2  contains a preemption clause. 21 U.S.C. § 678.

3       The FMIA requires inspection of animals at slaughterhouses before slaughter
4  (ante-mortem inspection), humane handling of animals at the slaughterhouse, and
5  inspection of carcasses post-slaughter for signs of disease, decay, or other
6  "adulteration" (post-mortem inspection). *See generally* 21 U.S.C. §§ 603, 605. The
7  Food Safety and Inspection Service (FSIS), an agency of the United States
8  Department of Agriculture (USDA), promulgates regulations under the FMIA and
9  carries out inspections. 9 C.F.R. § 300.1 *et seq.*

10  **II.    SUMMARY OF PRIOR, RELATED PROPOSITION 12 LITIGATION**

11       The constitutionality and lawfulness of Proposition 12's requirements for
12  producers and distributors of pigs that sell pork meat in California have been
13  litigated extensively. Shortly after Proposition 12's adoption, two organizations
14  filed suit, alleging the new law impermissibly burdened interstate commerce. The
15  U.S. Supreme Court rejected this dormant Commerce Clause challenge to
16  Proposition 12 in *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 368 (2023)
17  (*Ross*).

18       Proposition 12 has also been litigated in two related closed matters before this
19  Court: *N. Am. Meat Inst. v. Becerra, et al.*, Case No. 2:19-cv-08569-CAS-FFM
20  (C.D. Cal. dismissed June 15, 2023) (*NAMI*) and *Iowa Pork Producers Ass'n v.*
21  *Bonta et al.*, Case No. 2:21-cv-09940-CAS-AFM (C.D. Cal. dismissed June 29,
22  2022) (*IPPA*) Both *NAMI* and *IPPA* sought an injunction preventing the application
23  of Turn Around and Square Footage Requirements specifically. (Compare Dkt. 1
24  ¶¶ 126-136, 141 n.9, 204, *with NAMI* FAC ¶¶ 58-60, 74, 86-87, 92, *and IPPA* FAC
25  ¶¶ 20-21, 105-111, 213.) Like Triumph, the *NAMI* and *IPPA* plaintiffs each alleged
26  discrimination against out-of-state pork producers in violation of the Commerce
27  Clause, and the *IPPA* plaintiffs pressed due process claims based on an alleged
28  failure to timely issue regulations and purported statutory vagueness in *IPPA*.

(*Compare* Dkt. 1 ¶¶ 229-282, *with NAMI* FAC ¶¶ 44-64, *and IPPA* FAC ¶¶ 125-173, 203-219.) In *NAMI* and *IPPA*, this Court issued merits orders rejecting the plaintiffs' claims, which the Ninth Circuit affirmed. (*See* Ninth Circuit Memorandum, *NAMI*, 2:19-cv-08569-CAS-FFM (C.D. Cal., Oct. 15, 2020), Dkt. 75; Ninth Circuit Memorandum, *IPPA*, 2:21-cv-09940-CAS-AFM (C.D. Cal., June 25, 2024), Dkt. 98.)

**III.  THIS ACTION**

On September 23, 2025, Triumph filed this lawsuit. (Dkt. 1 (Compl.).) Triumph is a pork processor and distributor headquartered in Missouri. (*Id.* ¶ 15.) Triumph "processes pigs into pork," which "is sold directly and indirectly to customers in California." (*Id.*) Triumph's slaughterhouse operations must comply with the FMIA and its implementing regulations. (*Id.*)

Triumph purchases pigs from farms through "Hog Procurement Agreements," (Compl. ¶¶ 35-36), sorts them at the slaughterhouse after ante-mortem USDA inspections, (*id.* ¶¶ 44, 47), and continues "further processing" them, subject to USDA's post-mortem inspections. (*Id.* ¶ 54-55.) At this point, pigs are "approved for further processing and packing for distribution[.]" (*Id.* ¶ 58.) Triumph claims to have modified these operations to comply with Proposition 12, in particular, by separately storing and processing Proposition 12-compliant pigs. (*Id.* ¶ 104; *see also id.* ¶¶ 157, 165.)

Triumph alleges that it "passes physical possession—and legal title—of its pork in the state of California." (Compl. ¶ 261; *see id.* ¶ 172.) When delivery is made by truck, customers require intact security seals on Triumph's pork products at delivery. (*Id.* ¶ 71.) Once, due to an error by the delivering party in which "non-compliant pigs erroneously designated as compliant were sorted and processed with compliant pigs at delivery to Triumph," Triumph rerouted a delivery out of California. (*Id.* ¶ 195.)

Per Triumph, California relies on multiple processors to sustain its pork demand, and these entities are unable to "cross[-]coordinate or allocate their sales by geographic market" due to "competiti[on]" in the pork industry, "not to mention antitrust constraints." (Compl. ¶¶ 127, 129.) Thus, Triumph alleges, Proposition 12 is "costly" for it and will "ultimately lead to a direct impact on the price of pork for all Americans," presumably by passing the costs on to consumers. (*Id.* ¶ 133.)

Triumph pleads five causes of action: (1) "express preemption" by the FMIA; (2) "implied preemption" by the FMIA; (3) violation of the dormant Commerce Clause under 42 U.S.C. § 1983; (4) violation of the Fourteenth Amendment's Due Process Clause under 42 U.S.C. § 1983; and (5) violation of the Import-Export Clause under 42 U.S.C. § 1983. (*Id.* ¶¶ 137-296.) Triumph seeks an injunction of Proposition 12, similar declaratory relief, and attorneys' fees. (*Id.* ¶¶ 297-300.)

## LEGAL STANDARD

Rule 12(b)(6) permits dismissal for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Establishing plausibility is a "context-specific" task that "requires the reviewing court to draw on its judicial experience and common sense." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-96 (9th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion, the Court "assume[s] the truth of the complaint's 'well-pleaded' allegations," but "[c]onclusory statements, unreasonable inferences, and legal conclusions couched as factual allegations" will "not be credited." *Election Integrity Project Cal., Inc. v. Weber*, 113 F.4th 1072, 1081 (9th

Cir. 2024) (cleaned up). The Court may also consider material that is incorporated by reference into the complaint or subject to judicial notice. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

## ARGUMENT

## I.    TRIUMPH MAKES A FACIAL CHALLENGE TO PROPOSITION 12

Triumph brings a facial challenge to Proposition 12 because it seeks an order enjoining enforcement of Proposition 12 in its entirety and declaring it and all its regulations unconstitutional. (Compl. ¶¶ 297-98.) *See Project Veritas v. Schmidt*, 125 F.4th 929, 940 (9th Cir. 2025) (en banc) (facial challenges lie where "a plaintiff's 'claim and the relief that would follow . . . reach beyond the particular circumstances' of that plaintiff" (quoting *Doe v. Reed*, 561 U.S. 186, 194 (2010)). Thus, Triumph must show "that no set of circumstances exists under which the law would be valid" or "the law lacks a plainly legitimate sweep." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (cleaned up).

Triumph cannot meet this standard. Triumph's preemption claims are predicated on an inapplicable statute, and its Section 1983 claims are foreclosed by precedent. Thus, Triumph cannot show that Proposition 12 "might operate unconstitutionally under some conceivable set of circumstances," much less sustain a facial challenge. *Cf. United States v. Salerno*, 481 U.S. 739, 745 (1987).

## II.    THE SECTION 1983 CLAIMS LACK MERIT AND ARE UNTIMELY

### A.    All of Triumph's Section 1983 Claims Are Time-Barred

Claims may be dismissed as time-barred where "the running of the statute [of limitations] is apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006). The forum state's statute of limitations for personal injury actions applies to Section 1983 claims. *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014). California's statute of limitations for personal injury claims is two years. Cal. Code Civ. Proc.§ 335.1. Federal law determines when a Section 1983 claim accrues. *Canatella v. Van De*

*Kamp*, 486 F.3d 1128, 1133 (9th Cir. 2007). The accrual date is "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008).

Triumph filed this action on September 23, 2025. Any Section 1983 claims that accrued before the two-year limitations period, or September 23, 2023, are time-barred. *See* Cal. Civ. Proc. § 335.1.

Triumph alleges that Proposition 12 was enacted on November 6, 2018, effective either December 19, 2018 (Turn Around Requirements) or January 1, 2022 (Square Footage Requirements). (Compl. ¶¶ 82, 241, 246.) Triumph alleges that it immediately and successfully changed its operations to comply with Proposition 12. (*See id.* ¶¶ 242-45.) Thus, Triumph was aware of, and complied with, the Turnaround and Square Footage requirements that Triumph challenges in this action by at least their effective dates of December 19, 2018 and January 1, 2022. These fall well outside limitations period's cutoff of September 23, 2023.

Accordingly, Triumph's Section 1983 claims are time-barred on the face of the Compliant and should be dismissed. *See Huynh*, 465 F.3d at 997.

**B.    The Complaint Alleges No Commerce Clause Violation**

Congress may "regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. Under the dormant Commerce Clause theory, this Clause "contains a further, negative command, one effectively forbidding the enforcement of certain state economic regulations even when Congress has failed to legislate on the subject." *Ross*, 598 U.S. at 368 (cleaned up). "[E]xtreme caution" is warranted before a court invalidates a state law under the dormant Commerce Clause. *Id.* at 390.

Dormant Commerce Clause cases come in "three key strands." *Flynt v. Bonta*, 131 F.4th 918, 923 (9th Cir. 2025). First, "state regulations may not discriminate against interstate commerce." *Id.* Second, a "line of cases concerns state laws that operate extraterritorially beyond the state's borders." *Id.* at 924. Third, under "*Pike*

balancing, state laws that regulate even-handedly to effectuate a legitimate local public interest will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Id.* at 925 (cleaned up); *see also Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970).

Triumph alleges Proposition 12 violates the dormant Commerce Clause by discriminating against out-of-state pork processors. (Compl. ¶¶ 229-254.) Triumph's argument is foreclosed by *Ross* and related precedent.

### 1. The Complaint Does Not Plausibly Allege Intended or Actual Discrimination Against Out-of-State Producers

"[I]f a state law discriminates against out-of-state goods or nonresident economic actors, the law can be sustained only on a showing that it is narrowly tailored to advance a legitimate local purpose." *Flynt*, 131 F.4th at 923 (internal quotation marks omitted). The Complaint identifies no such discrimination. The Complaint articulates this theory narrowly, relying on a purported lack of "lead time" for out-of-state processers to comply with Proposition 12 and an alleged "loophole" exempting sales that occur on the premises of FMIA-inspected facilities. (*See* Compl. ¶¶ 229-254.) Neither theory holds up.

The "lead time" argument resurrects one this Court has already rejected. Three years ago, this Court found that a "plaintiff cannot plausibly state a claim that Proposition 12 has a discriminatory effect" based on the same lack of "lead time" for out-of-state producers. *Iowa Pork Producers Ass'n v. Bonta*, 2022 WL 613736, at *14 (C.D. Cal. Feb. 28, 2022) ("*IPPA I*"). That was because "a statute that treat[s] all private companies exactly the same does not discriminate against interstate commerce[.]" *Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 948 (9th Cir. 2013) ("*Éleveurs I*") (internal quotation marks omitted). And Proposition 12 bans the sale of noncompliant pork meat, regardless of origin. Cal. Health & Safety Code § 25990(b)(2). Thus, Triumph "cannot allege there is a discriminatory burden where in-state businesses are already in compliance

8

with the same regulatory standards, even if in-state pork producers had more time to comply with Proposition 2 than out-of-state pork producers had to comply with Proposition 12." *IPPA I*, 2022 WL 613736, at *14.

Second, the alleged "loophole" (Compl. ¶¶ 233-36) is a nondiscriminatory portion of the definition of "sale." Proposition 12 excludes from this definition "sale[s] undertaken at an establishment at which mandatory inspection is provided under the Federal Meat Inspection Act[.]" Cal. Health & Safety Code § 25991(*o*). In other words, Proposition 12 does not apply on the premises of an FMIA-regulated slaughterhouse. *See id.* This provides no advantage to in-state over out-of-state FMIA plants; it simply means that in-state FMIA plants may buy noncompliant pork to process into a pork product not covered under Proposition 12, sell to another in-state FMIA plant, or sell outside of California in states without a Proposition 12 analogue.[3] But, fundamentally, the "loophole" theory is simply a permutation of Triumph's broader argument that Proposition 12's even-handed requirements violate the Commerce Clause, and it should be rejected for the same reasons. *See Minn. v. Clover Leaf Creamery Co.*, 449 U.S. 456, 472 (1981) (laws that "regulate[] evenhandedly by prohibiting" sales of certain products "without regard to whether [the banned products or sellers] are from outside the State" do not violate the dormant Commerce Clause); *see also Éleveurs I*, 729 F.3d at 948.

---

[3] Because sales are deemed to occur at the location where the buyer takes physical possession, Cal. Health & Safety Code § 25991(*o*), any further commercial sale of whole pork meat within California will be subject to Proposition 12. *See id.* § 25992. This key respect distinguishes the District of Massachusetts's analysis severing the exception in Massachusetts' law. *See Triumph Foods, LLC v. Campbell*, 715 F. Supp. 3d 143, 153-54 (D. Mass. 2024) (*Triumph I*). Additionally, Ninth Circuit precedent establishes that universal and equal treatment of private companies does not violate the dormant Commerce Clause, even if only out-of-state businesses are ultimately burdened. *Compare id.*, *with IPPA I*, 2022 WL 613736, at *14 (relying on *Éleveurs I*). For completeness, Proposition 12 also includes a severability clause. Prop. 12 § 9, as approved by voters, Gen. Elec. (Nov. 6, 2018).

### 2. A *Pike* Balancing or Extraterritorial Effect Theory is Foreclosed by *Ross*

To the extent Triumph intends to rely on *Pike* or Proposition 12 operating extraterritorially, *Ross* forecloses such reliance. "Under *Pike*, a plaintiff must demonstrate that a challenged law imposes a 'substantial' or 'significant' burden on interstate commerce before *Pike* balancing can occur." *Flynt*, 131 F.4th at 924. If this burden is met, "the court proceeds to determine whether that burden is clearly excessive in relation to the putative local benefits." *Id.* (internal quotation marks omitted). "[U]nless the benefits of the state's law are 'illusory,' courts typically accept the state's articulation of the law's claimed benefits," *id.*, and "state regulations justified on public safety grounds enjoy a strong presumption of validity." *Id.* (internal quotation marks omitted). For their part, extraterritoriality cases "turn[] on an impermissible discriminatory purpose, and not on any broader, freestanding extraterritoriality principle." *Id.* (internal quotation marks omitted).

Reliance on *Pike* is foreclosed by *Ross*. The *Ross* court "agreed that whether a law imposes a substantial burden on interstate commerce is a threshold inquiry[.]" *Flynt*, 131 F.4th at 925 (citing *Ross*, 598 U.S. at 383 (plurality); *id.* at 393 (Sotomayor, J., concurring); *id.* at 394 (Barrett, J., concurring); *id.* at 395 (Roberts, C.J., concurring in part and dissenting in part)). *Ross* rejected a *Pike* claim based on the same alleged burdens to interstate commerce on which Triumph relies: that compliance with Proposition 12 is costly for pork producers and requires modifications of current business practices, which in turn raises prices and harms the interstate market for pork. *See id.* at 367; *id.* at 405-406 (Kavanaugh, J., concurring in part and dissenting in part). A majority in *Ross* held these concerns were insufficient. The plurality held these harms were either too speculative or ran contrary to the established principle that the dormant Commerce Clause "does not protect 'particular . . . firms' or 'particular structure[s] or methods of operation.'" *Id.* at 386-87 (plurality op.) (quoting *Exxon Corp. v. Governor of Md.*, 437 U.S.

117, 125 (1978)). Justice Barrett concurred, but on the ground that *Pike* balancing

was inappropriate because the "benefits and burdens of Proposition 12 are

incommensurable." *See id.* at 393-94 (Barrett, J., concurring).

The Complaint treads no new ground here. As noted, it relies on the same

assertions of harm to interstate commerce. (*See* Compl. ¶¶ 242-45, 247-49.)

Further, Proposition 12 continues to further "legitimate matters of local concern,"

most notably preventing animal cruelty. *See Chinatown Neighborhood Ass'n v.*

*Harris*, 794 F.3d 1136, 1147 (9th Cir. 2015). This claim is accordingly foreclosed

by *Ross*. *See also Flynt*, 131 F.4th at 931 ("[T]he Supreme Court 'has not

invalidated a law under *Pike*' in more than 30 years." (quoting *Truesdell v.*

*Friedlander*, 80 F.4th 762, 773 (6th Cir. 2023))).

*Ross* separately confirms that Triumph has no exterritoriality argument here.

*Ross* squarely rejected the argument that Proposition 12 violated the dormant

Commerce Clause because of its purported "'practical effect' of 'controlling'

extraterritorial commerce." 598 U.S. at 374.

The Complaint fails to state a claim under the dormant Commerce Clause.

**C.    The Complaint Alleges No Violation of the Fourteenth**
**Amendment's Due Process Clause**

The Fourteenth Amendment's Due Process Clause provides that "[n]o State

shall . . . deprive any person of life, liberty, or property, without due process of

law." U.S. Const. amend. XIV, § 1. Due process claims come in both "substantive"

and "procedural" varieties. Unless they concern "fundamental" rights, substantive

due process claims are evaluated under rational basis review, which is "highly

deferential to the government, allowing any conceivable rational basis to suffice."

*Curtis v. Inslee*, 154 F.4th 678, 692 (9th Cir. 2025). "To obtain relief on a

procedural due process claim, the plaintiff must establish the existence of '(1) a

liberty or property interest protected by the Constitution; (2) a deprivation of the

interest by the government; [and] (3) lack of process.'" *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008).

The Complaint asserts violations of Triumph's due process rights based on its contentions that (1) the terms "engage in the sale" and "in California commerce" are too vague to be understood by a person of reasonable intelligence; (2) a risk of arbitrary enforcement of purportedly vague inspection and seizure provisions by enforcement authorities; and (3) a lack of sufficient "lead time" for compliance with the Turn Around Requirements failed to provide adequate notice or "time to comply" with Proposition 12; and (4) the belated promulgation of Proposition 12's implementing regulations similarly caused a lack of information regarding what Proposition 12 prohibited. (Compl. ¶¶ 255-82.) Each lacks merit.

### 1.    Proposition 12 Is Not Unconstitutionally Vague

A criminal statute must "give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." *Knox v. Brnovich*, 907 F.3d 1167, 1182 (9th Cir. 2018) (internal quotation marks omitted). However, "[b]ecause Proposition 12 does not implicate First Amendment rights, it is only facially vague if it specifies no standard of conduct at all." *IPPA II*, 2024 WL 3158532, at *4 (cleaned up).

Triumph's vagueness challenge is aimed at the terms "engage in the sale" and "in California commerce." Neither is meritorious. As this Court previously observed, "the plain language of the statute is clear" and "clearly defines 'engaged in a sale' under Proposition 12 to mean 'when a buyer takes physical possession' of a covered item in California." *IPPA I*, 2022 WL 613736, at *6 (C.D. Cal. Feb. 28, 2022); *see also IPPA II*, 2024 WL 3158532, at *4 ("The term 'engage in' is widely used and readily understood" to mean "to take part in [an] activity" (cleaned up)); Cal. Health & Safety Code § 25991(*o*) (defining "sale" specifically). And the Legislature's inclusion of a scienter requirement, *compare* Cal. Health & Safety Code § 25990(b) (prohibiting "knowingly engaging in a sale) *with* Compl. ¶¶ 258-

12

59, eliminates any doubt about the standard of conduct at issue. Accordingly, Triumph's first theory fails.

Similarly, the plain meaning of "in California commerce" in Proposition 12's implementing regulations of "commercial sale," Cal. Code Regs. tit. 3, § 1322(f), is clear. "In California commerce" is a variation of the ubiquitous "in commerce" jurisdictional statement and plainly means commerce within the State. *See United States v. Campanale*, 518 F.2d 352, 364 (9th Cir. 1975) ("The concept of affecting interstate or foreign commerce is so well imbedded in federal law as not to mislead anyone who desires to conform his conduct to the requirements of this law."). Proposition 12 confirms this by defining "sales" as occurring "where the buyer takes physical possession," Cal. Health & Safety Code § 25991(*o*), as well as prohibiting specified "sale[s] within the state." *Id.* § 25990(b). Examples of how the term works in practice are provided to the public, including Triumph, in CDFA's "Animal Care Program: Key Terms" and "Sale Under Animal Confinement" guidance documents. (Req. for Jud. Notice, Ex. A, at 2; Ex. B.) This theory also fails because, as this Court previously found, Proposition 12 was sufficiently clear even *before* any regulations were implemented. *IPPA I*, 2022 WL 613736, at *9; *see also Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 908 (9th Cir. 2019) (holding lack of implementing regulations does not create due process problem where statute is sufficiently clear).

### 2. There is No Risk of Arbitrary Enforcement

"A statute violates the arbitrary enforcement requirement if it is so indefinite that it encourages arbitrary and erratic arrests and convictions." *Knox*, 907 F.3d at 1182 (cleaned up). But Proposition 12 imposes standards that do not invite arbitrary enforcement actions. Initially, insofar as the Complaint relies on the "facially vague [Proposition 12] and [its implementing] Regulations," (*see* Compl. ¶ 266), these assertions cannot support this theory. *See Knox*, 907 F.3d at 1184 (statute with "clear" scope "poses no significant threat of arbitrary enforcement"). Likewise, as

1    the Court has held, the Complaint's reliance on hypothetical enforcement scenarios,

2    (*see id.* ¶¶ 267-74), is insufficient because Triumph does not allege it is "going to

3    represent" any "non-complaint meat is compliant." *IPPA I*, 2022 WL 613736, at *8;

4    *see also Vill. of Hoffman Ests. v. Flipside Hoffman Ests., Inc.*, 455 U.S. 489, 503

5    (1982) (theoretical enforcement is "of no due process significance unless the

6    possibility ripens into a prosecution"). The Complaint elsewhere contends some of

7    Proposition 12's implementing regulations amount to an "arbitrary, vague process."

8    (*See* Compl. ¶¶ 268-73.) The Complaint, however, does not identify what is vague

9    about these regulations, (*see id.*), and in fact appears to have little trouble

10    discerning them. (*See id.* ¶ 272 (Triumph's interpretation of the regulations).)

11        Proposition 12 is not so standardless that it invites arbitrary enforcement.

### 3.    Triumph Fails to Allege Inadequate Fair Notice

13        In a last-ditch effort, the Complaint equates the purportedly insufficient "lead

14    time" for out-of-state producers' compliance with the Turn Around Requirements

15    and belated issuance of implementing regulations with a due process violation.

16    (Compl. ¶¶ 277-78.) However, "governmental decisions which affect large areas

17    and are not directed at one or a few individuals do not give rise to the constitutional

18    procedural due process requirements of individual notice and hearing; general

19    notice as provided by law is sufficient." *Halverson v. Skagit Cnty.*, 42 F.3d 1257,

20    1261 (9th Cir. 1994). The Complaint all but admits this standard is met.

21        The Complaint does not explain how Triumph's asserted "weeks" of prior

22    notice somehow makes Proposition 12 unconstitutionally vague. (*See* Compl.

23    ¶ 277.) The fact that Triumph had "weeks to comply" with the Turn Around

24    Requirements "before Proposition 12 went into effect," (*id.*), and continues to

25    comply with them, (*see id.* ¶¶ 242-47, 291) shows that Triumph had constitutionally

26    sufficient notice of Proposition 12's requirements. *See Halverson*, 42 F.3d at 1261.

27    And Triumph's contention that the failure to promulgate regulations timely violates

28    due process fails on its face; this Court has already rejected the argument that the

failure to promulgate regulations at all created a due process issue because the statutory language is sufficiently clear. *See IPPA I*, 2022 WL 613736, at *9.

In sum, the Complaint fails to state a due process claim.

**D.    The Import-Export Clause Does Not Apply to this Action**

The Constitution's Import-Export Clause generally prohibits States from "lay[ing] any Imposts or Duties on Imports or Exports" absent Congressional consent. U.S. Const. art I, § 10, cl. 2. The Complaint alleges Proposition 12 violates this clause by purportedly acting as a "duty" or "tax" on out-of-state products. (Compl. ¶¶ 283-96.) But Proposition 12, on its face, merely regulates the operations of pork producers and distributors and imposes no "duty" or "impost"within the meaning of the Import-Export Clause. And even if, as Triumph alleges, these operational restrictions could be fairly construed as a "tax," Proposition 12 does not implicate any of the policy considerations that the Supreme Court held informed the Import-Export Clause analysis. *See Dep't of Revenue of State of Wash. v. Ass'n of Wash. Stevedoring Companies*, 435 U.S. 734, 752-53 (1978). It does not usurp the primacy of the federal government to regulate foreign trade through tariffs, nor does it deprive the federal government of import revenues to which it is entitled, nor does it allow seaboard States to tax goods flowing through ports of entry. *See id.* Proposition 12 does not offend the Import-Export Clause.

**III.    TRIUMPH'S PREEMPTION CLAIMS ARE BASED ON INAPPLICABLE LAW**

**A.    The FMIA Does Not Preempt Proposition 12**

All preemption cases are "guided by two cornerstones." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). First, "the purpose of Congress is the ultimate touchstone." *Id.* Second, courts "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* (cleaned up). Because Proposition 12 follows from the State's power to enact laws preventing animal cruelty, "a field traditionally regulated by the states, compelling evidence of an intention to preempt

1  is required." *Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Becerra*, 870
2  F.3d 1140, 1146 (9th Cir. 2017) (*Éleveurs II*).

3       Triumph relies on both express and conflict preemption. (Compl. ¶¶ 127-228.)
4  No grounds for either apply. As the First Circuit held in a case filed by Triumph,
5  Proposition 12 "bans the sale of noncompliant pork meat; it does not regulate how a
6  slaughterhouse operates," like the FMIA. *See Triumph Foods, LLC v. Campbell*,
7  156 F.4th 29, 52 (1st Cir. 2025) (*Triumph III*). Even Triumph concedes that
8  Proposition 12's proscriptions "apply to *what the farmers are doing while the pig is*
9  *still on the farm*[.]" (Compl. ¶ 38.)

10       **1.    The FMIA Does Not Expressly Preempt Proposition 12**

11       Express preemption arises "when the text of a federal statute explicitly
12  manifests Congress's intent to displace state law." *Ass'n des Éleveurs de Canards*
13  *et d'Oies du Quebec v. Bonta*, 33 F.4th 1107, 1114 (9th Cir. 2022) (*Éleveurs III*).
14  Express preemption "is a question of statutory construction, requiring a court to
15  look to the plain wording of the statute and surrounding statutory framework."
16  *Jones v. Google LLC*, 73 F.4th 636, 641 (9th Cir. 2023).

17       The FMIA's preemption clause bars states from imposing "[r]equirements"
18  that are "in addition to, or different than, those made under" the FMIA if the
19  requirements are (1) "within the scope of this [Act] with respect to premises,
20  facilities and operations" of FMIA-inspected facilities; or (2) "[m]arking, labeling,
21  packaging, or ingredient requirements." 21 U.S.C. § 678. Section 678 expressly
22  "shall not preclude any State . . . from making requirement[s] or taking other action,
23  consistent with this [Act], with respect to any other matters regulated under this
24  [Act]." *Id.* This clause does not preempt a state law that "works at a remove from
25  the sites and activities that the FMIA most directly governs." *See Nat'l Meat Ass'n*
26  *v. Harris*, 565 U.S. 452, 467 (2012).

27
28

Triumph argues that the FMIA expressly preempts Proposition 12 because
Proposition 12 alters the definition of "condemned" or "adulterated" pork under 21
U.S.C. §§ 606 & 601(m).[4] (Compl. ¶¶ 144-210.) Proposition 12 does not do this.

The FMIA "is concerned with inspecting premises at which meat is produced
for human consumption, rather than with preserving the production of particular
types of meat for people to eat." *Cavel Int'l, Inc. v. Madigan*, 500 F.3d 551, 554
(7th Cir. 2007). Its preemption clause "limits states in their ability to govern meat
inspection and labeling requirements" but "in no way limits states in their ability to
regulate what types of meat may be sold for human consumption in the first place."
*Empacadora de Carnes de Fresnillo, S.A. de C.V., v. Curry*, 476 F.3d 326, 333 (5th
Cir. 2007). Thus, as noted, the FMIA preempts state laws "with respect to premises,
facilities and operations of any establishment at which inspection is provided," 21
U.S.C. § 678, but permits state laws that "work[] at a remove from the sites and
activities that the FMIA most directly governs." *Harris*, 565 U.S. at 467.

Proposition 12 ultimately bans the sale of "noncompliant" pork meat—meat
produced from pigs that were subjected to cruel farming methods, or their
immediate offspring. Cal. Health & Safety Code §§ 25990(b)(2), 25991. It imposes
no requirements on slaughterhouse operations and expressly provides that its
requirements do not apply during animal slaughter carried out in accordance with
applicable law and regulations. *Id.* § 25992(e).  It does not alter the FMIA's
definition of "adulterated," which concerns whether meat is safe to consume. *See*
21 U.S.C. § 601(m) ("adulterated" meat includes meat exposed to radiation, filth,
and poisonous substances). Nor does Proposition 12 alter the process by which
USDA inspectors identify adulterated pork and "condemn" it. *See* 21 U.S.C. § 606.

---

[4] To the extent the Complaint suggests there are conflicts between what Proposition 12 and the FMIA require, (*see id.*), those issues are properly addressed in the context of conflict preemption. *See Jones*, 73 F.4th at 644 (observing, in general, that "express and conflict preemption are analytically distinct inquiries"). As discussed below, these purported conflicts are illusory.

This is underscored by the fact that neither the FMIA nor its implementing regulations concern animal welfare on farms. *See generally* 21 U.S.C. § 601 *et seq.*; 9 C.F.R. § 300 *et seq.*

The First Circuit recently rejected this exact claim in a suit filed by Triumph challenging an analogous Massachusetts law, holding that a law that "only bans the sale of noncompliant pork meat" and "does not regulate how a slaughterhouse operates" is not preempted by the FMIA's preemption clause, which applies "only to '[r]equirements within the scope of [the FMIA].'" *Triumph III*, 156 F.4th at 52 (quoting 21 U.S.C. § 678). Accordingly, such laws do "not create a class of adulteration unrecognized in the FMIA." *Id.* (cleaned up).

This conclusion is buttressed by earlier Ninth Circuit precedent upholding California's ban on foie gras against an argument that it was expressly preempted by the Poultry Products Inspection Act (PPIA)—which contains a preemption clause identical to the FMIA's, *compare* 21 U.S.C. § 467e, *with* 21 U.S.C. § 678— because this language "cannot be read to reach animal husbandry practices." *Éleveurs II*, 870 F.3d at 1148. And other courts have routinely rejected claims attempting to use the FMIA to preempt similar state laws. *See, e.g.*, *Curry*, 476 F.3d at 333 (FMIA did not preempt ban on horse meat sales); *Cavel*, 500 F.3d at 553-54 (same); *People v. Santorsola*, 225 Cal.App.4th Supp. 12, 17-18 (Cal. App. Dep't Super. Ct. 2014) (FMIA did not preempt animal cruelty charges at auction); *Hayslett v. Tyson Foods, Inc.*, No. 1:22-CV-1123-STA-JAY, 2023 WL 3666091, at *11 (W.D. Tenn. May 25, 2023) (FMIA did not preempt vaccine mandate).

The FMIA does not expressly preempt Proposition 12.

### 2. The FMIA Does Not Impliedly Preempt Proposition 12

Field and conflict preemption are the "implied" forms of preemption. *Éleveurs III*, 33 F.4th at 1114. Field preemption "prohibits state regulation of conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." *Id.* (cleaned up). Conflict preemption may

18

1    arise in two ways. First, obstacle preemption occurs "where the challenged state

2    law stands as an obstacle to the accomplishment and execution of the full purposes

3    and objectives of Congress." *Éleveurs II*, 870 F.3d at 1153 cleaned up). Second,

4    impossibility preemption arises when "it is impossible for a private party to comply

5    with both state and federal law." *Éleveurs III*, 33 F.4th at 1114. Courts "should not

6    'seek[ ] out conflicts between state and federal regulation where none clearly

7    exists.'" *Éleveurs II*, 870 F.3d at 1153 (quoting *English v. Gen. Elec. Co.*, 496 U.S.

8    72, 90, (1990)).

9        The Complaint purports to identify conflicts between the FMIA and

10    Proposition 12 in: "registration requirements or alternative options"; "determination

11    of what pigs can be procured"; "what pigs can enter the plant"; the "sorting and

12    segregation process" of pork producers' plants; the "determination and labeling of

13    'inspected' and 'passed'"; the "safe and direct transportation of pork on

14    [slaughterhouses'] trucks"; and "distribution of the pork to the customer for the

15    sale." (Compl. ¶ 220; *see also id.* ¶¶ 221-28.) Comparing Proposition 12 and the

16    FMIA reveals that no conflicts or obstacles exist.

17        As to impossibility preemption, nothing in Proposition 12 precludes

18    compliance with the FMIA. The purported "conflicts" identified in the Complaint

19    are predicated on quintessential legal conclusions couched as factual assertions

20    about what Proposition 12 "will" require or cause. (*See, e.g.*, Compl. ¶¶ 112, 120,

21    155, 170.) These speculative allegations are not entitled to the presumption of truth.

22    *See, e.g.*, *Election Integrity Project*, 113 F.4th at 1081.

23        Proposition 12 bans the sale of noncompliant pork meat in California. Cal.

24    Health & Safety Code § 25990(b)(2). Pork meat is "noncompliant" if it comes from

25    a pig, or the immediate offspring of the pig, "confined in a cruel manner," as

26    defined. *See id.* §§ 25990(b)(2) & § 25991. The FMIA concerns the inspection and

27    labelling of meat products on the premises of slaughterhouses for food safety

28

1  purposes. *See Cavel*, 500 F.3d at 554; *Curry*, 476 F.3d at 333. There is no

2  overlapping conflict between these two laws.

3       Triumph can, and allegedly does, comply with the FMIA and Proposition 12

4  simultaneously. Proposition 12 does not alter the FMIA's proscriptions or

5  requirements in any way. The Complaint tacitly acknowledges this; despite its

6  conclusory allegations about the cost of "ongoing compliance" with Proposition 12,

7  (*see* Compl. ¶ 291), Triumph does not allege it *cannot* comply with the FMIA. *See*

8  *Iowa Pork Producers Ass'n v. Bonta*, No. 22-55336, 2024 WL 3158532, at *5 (9th

9  Cir. June 25, 2024) (*IPPA II*) (same lack of allegations established Proposition 12

10  was not conflict-preempted by different federal law).

11       And Proposition 12 creates no obstacles to the FMIA. Because it "does not

12  impose any new requirements on slaughterhouses within the scope of the FMIA, it

13  cannot, by definition, stand as an obstacle to the accomplishment or execution of

14  Congress's objectives under the FMIA." *Triumph Foods, LLC v. Campbell*, 742 F.

15  Supp. 3d 63, 72 (D. Mass. 2024) (*Triumph II*). State laws preventing animal cruelty

16  coexist with federal laws ensuring food products are "wholesome, not adulterated,

17  and properly marked, labeled, and packaged." *See Éleveurs II*, 870 F.3d at 1153

18  (quoting 21 U.S.C. § 451) (foie gras ban posed no obstacle to the PPIA because

19  "prohibit[ting] what California finds to be a cruel feeding practice that occurs far

20  away from the official establishments that the PPIA regulates" (citing *Curry*, 476

21  F.3d at 334-35)). And, as noted, nothing in Proposition 12 interferes with the

22  USDA's inspection, labeling, or penalization authority. *See id.* Proposition 12 is not

23  an obstacle to the FMIA's goal to protect the public from unsafe meat products. *See*

24  21 U.S.C. § 661(a).

25       This action is not among the "small number of cases" involving "direct[]

26  interferen[ce] with a "uniquely federal area of regulation" or "a federal enactment

27  [that] clearly struck a particular balance of interests that would be disturbed or

28  impeded by state regulation." *See In re Volkswagen "Clean Diesel" Mktg., Sales*

*Pracs., & Prods. Liab. Litig.*, 959 F.3d 1201, 1212-13 (9th Cir. 2020) (noting "the Supreme Court has frequently rejected claims of obstacle preemption" outside of the foreign affairs, fraud on federal agencies, maritime, and immigration contexts). Instead, this case arises at the other end of the preemption spectrum—in "a field traditionally regulated by the states." *Éleveurs II*, 870 F.3d at 1146.

The Complaint's allegations that Triumph elected to modify its operations to comply with Proposition 12 to participate in the California market, (*see, e.g.*, Compl. ¶ 291), taken as true, do not conjure a preemption issue. What matters is the extent of Congress's intent *as reflected in the FMIA* to displace state laws, not Triumph's business decision to operate in a given market. *See Wyeth*, 555 U.S. at 565. At base, conflict preemption is not viable because Proposition 12 does not regulate slaughterhouse operations. *See Triumph III*, 156 F.4th at 52.

Finally, although the Complaint does not rely on field preemption, (*see* Compl. ¶¶ 211-28), Proposition 12 is not field preempted by the FMIA. *See Triumph III*, 156 F.4th at 52; *see also Éleveurs II*, 870 F.3d at 1152-53 ("Congress did not intend to preempt the entire field of meat commerce under the FMIA." (quoting *Curry*, 476 F.3d at 334)).

The FMIA does not impliedly preempt Proposition 12.

## IV.  LEAVE TO AMEND SHOULD BE DENIED AS FUTILE

"Although, under Federal Rule of Civil Procedure 15(a)(2), leave to amend should be 'freely' given, that liberality does not apply when "it is clear that the complaint could not be saved by amendment." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013); *see also Ebner v. Fresh, Inc.*, 838 F.3d 958, 968 (9th Cir. 2016).

Amendment would be futile. Triumph's Section 1983 claims are untimely, and all of its claims fail on the merits. No new allegations could sustain its Section 1983 claims because they are facially time-barred and legally insufficient. *See Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir.

1983) (amendment that "could not affect the outcome of this lawsuit" is futile); *Canatella v. Van De Kamp*, 486 F.3d 1128, 1136 (9th Cir. 2007) (affirming final dismissal of time-barred Section 1983 claim). The preemption claims are similarly unfixable, because preemption is a legal issue determined by a comparison of the FMIA and Proposition 12. *See ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 761-62 (9th Cir. 2014). Leave to amend should be denied.

## CONCLUSION

For the reasons stated, Defendants respectfully request dismissal of the Complaint without leave to amend.


Dated:  December 1, 2025                    Respectfully submitted,

                                            ROB BONTA
                                            Attorney General of California
                                            ANNA FERRARI
                                            Supervising Deputy Attorney General


                                            /s/ *James R. Bowen*
                                            _____

                                            JAMES R. BOWEN
                                            Deputy Attorney General
                                            *Attorneys for Defendants Rob Bonta,
                                            Karen Ross, and Erica Pan, in their
                                            Official Capacities*

1

**CERTIFICATION OF COMPLIANCE**

2          The undersigned, counsel of record for Defendants Rob Bonta, Karen Ross,

3 and Erica Pan, in their official capacities, certifies that this brief contains 6,993

4 words, which complies with the word limit of Local Rule 11-6.1.

5

6 Dated:  December 1, 2025                                    ROB BONTA
                                                             Attorney General of California
7

8                                                            /s/ *James R. Bowen*
9
                                                             JAMES R. BOWEN
10                                                           Deputy Attorney General
                                                             *Attorneys for Defendants Rob Bonta,*
11                                                           *Karen Ross, and Erica Pan, in their*
                                                             *Official Capacities*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

Case Name: **Triumph Foods, LLC v. Rob Bonta, et al.**

Case No.  **2:25-cv-09063-CAS-AJRx**

I hereby certify that on <u>December 1, 2025</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct, and that this declaration was executed on <u>December 1, 2025</u>, at Los Angeles, California.

<br>

Linda Zamora
Declarant

Signature

SA2025305435