| | |
|---|---|
| 1 | ROB BONTA<br>Attorney General of California |
| 2 | ANNA FERRARI<br>Supervising Deputy Attorney General |
| 3 | JAMES R. BOWEN<br>Deputy Attorney General |
| 4 | State Bar No. 334879 |
| 5 |   300 South Spring Street, Suite 1702<br>  Los Angeles, CA  90013-1230 |
| 6 |   Telephone:  (213) 269-6079<br>  E-mail:  James.Bowen@doj.ca.gov |
| 7 | *Attorneys for Defendants*<br>*Rob Bonta, Karen Ross, and Erica Pan, in their* |
| 8 | *Official Capacities* |

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRIUMPH FOODS, LLC,<br><br>                  Plaintiff,<br><br>v.<br><br>**ROB BONTA, in his official capacity as Attorney General of California, KAREN ROSS, in her official capacity as Secretary of the California Department of Food and Agriculture, and ERICA PAN, in her official capacity as Director of the California Department of Public Health,**<br><br>                  Defendants. | Case No. 2:25-cv-09063-CAS-AJRx<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>Date:       January 5, 2025<br>Time:      10:00 a.m.<br><br>Courtroom:  8B (8th Floor)<br>Judge:      Hon. Christina A. Snyder<br>Trial Date:  Not Set<br>Action Filed: September 23, 2025 |

# REQUEST FOR JUDICIAL NOTICE

In support of Defendants Rob Bonta, Karen Ross, and Erica Pan's (collectively, Defendants) Motion to Dismiss Plaintiff Triumph Foods, LLC's Complaint, Defendants respectfully request that, pursuant to Federal Rule of Evidence 201, the Court take judicial notice of:

1. A true and correct copy of the California Department of Food and Agriculture's (CDFA) "Animal Care Program Guidance: Key Terms" document, attached hereto as **Exhibit A** and publicly available on CDFA's website at: https://www.cdfa.ca.gov/AHFSS/AnimalCare/docs/Prop12_guidance_Keyterms.pdf.

2. A true and correct copy of the California Department of Food and Agriculture's (CDFA) "Animal Care Program Guidance: Sale Under Animal Confinement" document, attached hereto as **Exhibit B** and publicly available on CDFA's website at: https://www.cdfa.ca.gov/AHFSS/AnimalCare/docs/Prop12_SalesGuidance.pdf.

When considering a Rule 12(b)(6) motion to dismiss, "courts must consider the complaint in its entirety" as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Facts subject to judicial notice are ones that are "not subject to reasonable dispute because" they: (1) are "generally known within the trial court's territorial jurisdiction" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Courts may take judicial notice *sua sponte* and "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 210(c).

///

1

     The information contained in Exhibits A and B is judicially noticeable. Both are official publication from CDFA, a state government agency, and available on CDFA's official website. As routinely recognized by courts in the Ninth Circuit, including this Court, information sourced from the websites of government agencies is not subject to reasonable dispute and thus is judicially noticeable. *See, e.g.*, *Malkin v. Fed. Ins. Co.*, 562 F. Supp. 3d 854, 861 (C.D. Cal. 2022) (Snyder, J.) (granting request for judicial notice because "the court can take judicial notice of [p]ublic records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies"); *Kheriaty v. Regents of the Univ. of Cal.*, 2022 WL 17175070, at *1 (9th Cir. Nov. 23, 2022) ("[T]he district court properly took judicial notice of the school's policy and the government websites; they are matters of public record made available by the government."). Defendants respectfully request that the Court do the same here.

     Accordingly, Defendants respectfully request that the Court take judicial notice of the appended Exhibits A and B.

Dated: December 1, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
ANNA FERRARI
Supervising Deputy Attorney General

/s/ *James R. Bowen*

JAMES R. BOWEN
Deputy Attorney General
*Attorneys for Defendants Rob Bonta, Karen Ross, and Erica Pan, in their Official Capacities*

# EXHIBIT A



# ANIMAL CARE PROGRAM
# GUIDANCE: KEY TERMS

**Purpose:**

This guidance is an alphabetical list of key terms for all the stakeholders to reference when complying with Animal Confinement laws and regulations. Words in *italics* are listed at another location within this Key Terms guidance.

**Accreditation or accredit** means a determination made by California Department of Food and Agriculture (CDFA) that authorizes a private entity to conduct certification activities of *producer (egg, veal, and pork) and distributor operations as a certifying agent.*

**Animal Confinement regulations**[1] means Chapter 10 of Division 2 of Title 3 of California Code of Regulations (commencing with section 1320) as authorized by Health and Safety Code sections 25990, 25991, 25992, 25993, 25993.1, and 25994.

**Area of operation** means the facilities and *records* for covered *animal* production or *covered product* distribution operations, that a *certifying agent* may certify as compliant with *Animal Confinement regulations*.

**Audit trail** means *records* that are in sufficient detail to document the identification, source, supplier, transfer of ownership, transportation, storage, segregation, handling, packaging, distribution, and sale of *covered products* that were derived from *covered animals* confined in compliance with *Animal Confinement regulations*, and from *producers (egg, veal, and pork)* that hold a valid *certification* as a *certified operation*.

**Breeding pig** means any female pig of the porcine species kept for the purpose of commercial breeding who is six (6) months of age or older, or pregnant.
- A breeding pig must be in a compliant *enclosure* for the duration of its production cycle.
- The **production cycle** of a breeding pig means the lifecycle of a commercial breeding pig for the generation of immediate offspring. A production cycle for gilts begins when they are six (6) months or older and moved into an enclosure for breeding and ends when a litter of piglets is weaned. A new production cycle for sows begins when each litter of piglets is weaned.

**Calf** means any calf of the bovine species kept for the purpose of producing the food product described as *veal meat*.
- **Kept for the purpose of producing** means keeping a calf of the bovine species that is, or is intended to be, slaughtered at more than 21 days of age or more than 150 pounds in liveweight to produce the food described, advertised, represented, identified, or labeled as *veal meat*.

**Certification or certify** means a determination made by a *certifying agent* that a *producer (egg, veal, and pork)* or *distributor* operation is compliant with *Animal Confinement regulations*, which is documented by a certificate of California farm animal confinement compliance.

**Certified operation** means a *producer (egg, veal, and pork)* or *distributor* operation, or portion of such operation, in the case of a *split operation*, that is certified by a *certifying agent* as utilizing a system of animal confinement or distribution which complies with *Animal Confinement regulations*.

**Certifying agent** means 1) any private entity *accredited* by CDFA as a third-party certifying agent for the purpose of *certifying* a *producer (egg, veal, and pork)* or *distributor* operation as a *certified operation*, 2) CDFA, or 3) any *governmental entity* that CDFA recognizes as providing functionally equivalent certification services according to *Animal Confinement regulations*.

---
[1] Health and Safety Code and California Code of Regulations.





# ANIMAL CARE PROGRAM GUIDANCE: KEY TERMS

**Commercial sale** means to sell, exchange, barter, trade, transfer title or possession, or distribute, conditional or otherwise, in California commerce including, but not limited to, transactions by a retailer with a consumer and electronic transactions made using the internet. It shall not include any of the following transactions or transfers of possession, which apply only to a specific transaction listed below, not to the *covered product* itself, and therefore does not apply to all subsequent commercial sales of *covered product*:
- *Covered product* produced outside of the state that enters and exits California, without additional processing or repackaging, exclusively for purposes of transshipment or export outside of the state;
- Any sale of *covered product* undertaken on the premises of an official plant at which mandatory inspection is provided under the federal Egg Products Inspection Act or Federal Meat Inspection Act and that holds an establishment number (prefix "G" or "M", respectively); or that is made directly to federal agencies or that takes place on federal lands located within the state;
- Any *sale of covered* product which takes place on tribal lands located within the state; or
- Donations to nonprofit organizations that have a tax exemption under section 501(c)(3) of the Internal Revenue Code (26 U.S.C.).

**Consumer** means any *person* who purchases *covered product* for the sole purpose of their own personal use or consumption, or that purchases or consumes covered product at a restaurant, food facility, or other similar business that serves covered product to its patrons.

**Covered animal** means a *breeding pig*, *calf*, and an *egg-laying hen* when kept on a *farm* for purposes of producing *covered products*.

**Covered product** means *shell eggs*, *liquid eggs*, *whole veal meat*, and *whole pork meat*.

**Curing agents** means any substance listed and described in section 424.21(c) of Title 9 of the Code of Federal Regulations (January 2021).

**Cut** means any *uncooked* primal, wholesale, sub-primal or retail cut including, but not limited to, those identified and described in the United States Department of Agriculture's Institutional Meat Purchase Specifications: Fresh Pork Series 400 (November 2014 Edition) and Fresh Veal Series 300 (November 2014 Edition) and the 2014 Uniform Retail Meat Identity Standards developed by the Industry-Wide Cooperative Meat Identification Standards Committee, but shall exclude any ground or otherwise comminuted meat products.
- Refer to Guidance: Pork/Veal Meat Covered Under Animal Confinement[2]

**Distributor** means a *person* or facility engaged in the business of *commercial sale* or distribution of *covered product* (as a producer or otherwise) to an *end-user* in California. This definition shall not apply to a person or facility that only receives covered product as an end-user.

**Document of title** means a document (ex. bill of lading, dock warrant, dock receipt, warehouse receipt, or an order for the delivery) which in the regular course of business or financing is treated as adequately evidencing that the person in possession of it is entitled to receive, hold, and dispose of the document and covered product it covers.

**Egg-laying hen** means any female domesticated chicken, turkey, duck, goose, or guineafowl kept for the purpose of egg production. An egg-laying hen kept for egg production means a sexually mature female confined for the purpose of laying eggs which are intended for use as human food as *shell eggs* or *liquid eggs*.

---

[2] Pork/Veal Meat Covered under Animal Confinement





# ANIMAL CARE PROGRAM
## GUIDANCE: KEY TERMS

**Egg producer** means a *person* engaged in the business of producing eggs from domesticated chickens, turkeys, ducks, geese, or guineafowl that will be used as *shell eggs* or *liquid eggs* for human food.

**Enclosure** means any cage, crate, pen, or other construction used to confine a *covered animal*.

**End-user means** any of the following:
- A *consumer*;
- A retailer that is not a *producer (egg, veal, and pork)* and only conducts *commercial sales* directly to a *consumer*, without any further distribution, of *covered product*;
- A food processing facility or cottage food operation that receives *covered product* solely for use as an ingredient to manufacture a combination food product that does not meet the definition of a *covered product*; or
- A restaurant, food facility, or other similar business that only cooks and serves *covered product* to customers, patrons, or guests for purposes of consumption.

**Farm** means the land, building, support facilities, and other equipment that are wholly or partially used for the commercial production of animals or animal products used for food or fiber.

**Flavoring** means any substance, whether artificial or natural, the function of which is to impart flavor rather than nutrition and includes the substances listed and described in sections 172.510, 172.515(b), 182.10, 182.20, 182.40, and 182.50, and substances with a use described as a flavoring, flavoring agent, or flavoring enhancer in Part 184 of Title 21 of the Code of Federal Regulations (April 2021). For *shell eggs* or *liquid eggs* flavoring also includes milk and butter when added to impart flavor rather than nutrition.

**Governmental entity** means any local, state, or federal domestic government, tribal government, or foreign governmental subdivision providing *certification* services.

**Liquid eggs** means eggs of an *egg-laying hen* broken from the shells, intended for human food, with the yolks and whites in their natural proportions, or with the yolks and whites separated, mixed, or mixed and strained, whether it is raw or pasteurized, co-packaged with other foods, or sold frozen, dried, freeze-dried, or as a cooked patty, puck, or other cooked form, and shall include all of the following: dried eggs, frozen eggs, egg whites, dried egg whites, frozen egg whites, egg yolks, dried egg yolks, frozen egg yolks, any mixture, irrespective of proportions, of two or more of the products specified in this description;
- Any product, or mixture of products, specified in this description to which has been added no more than sugar, salt, water, *seasoning*, coloring, *flavoring*, preservatives, stabilizers, or other similar food additives;
- Any product represented to the customer as, or bearing the statement of identity of, liquid eggs, and
- any of the products specified in this subsection on the product label according to section 101.3 of Title 21 of the Code of Federal Regulations (April 2021).
- Refer to Guidance: Eggs Covered Under Animal Confinement[3]

**Meat** means as defined in Section 900 of Title 3 of the California Code of Regulations as of August 2017, from a pig or from a calf raised for the purpose of producing veal meat intended for use as human food.

**Person** means any individual, firm, partnership, joint venture, association, limited liability corporation, corporation, estate, trust, receiver, or syndicate.

---
[3]Eggs Covered Under Animal Confinement





**Pork Producer** means a *person* engaged in the business of keeping, maintaining, confining and/or housing a female pig of the porcine species that is six (6) months of age or older, or is pregnant, for the purpose of commercial breeding to produce pork meat from the *breeding pig* or her immediate offspring for human consumption.

**Records** means any information in written, visual, or electronic form that documents the activities undertaken by a *producer (egg, veal, and pork)*, *distributor*, or *certifying agent* to comply with the *Animal Confinement regulations*.

**Seasoning** is synonymous with the term "spice" and means any aromatic vegetable substance in the whole, broken, or ground form, whose primary function in food is seasoning rather than nutritional and from which no portion of any volatile oil or other flavoring principle has been removed.  Spices include onions, garlic, peppers, and the spices listed in section 182.10 and Part 184 of [Title 21 of the Code of Federal Regulations](#) (April 2021).

**Shell egg** means a whole egg of an *egg-laying hen* in its shell form, intended for use as human food.  **In its shell form** means an egg as developed, proportioned, and shaped in the shell by an *egg-laying hen*, whether it is raw in the shell, pasteurized in the shell, treated in the shell, hardboiled, or otherwise cooked in whole form, peeled, co-packaged with other foods, or subsequently sold sliced, chopped, or otherwise cut.

**Split operation** means an operation that produces or distributes *covered animals* and/or *covered product* from operations, or portions of an operation, that are both in conformance and out-of-conformance with *Animal Confinement regulations*.

**Takes physical possession** means when the *covered product* is delivered to the buyer in California, regardless of whether the title transfer takes place outside of the state, whether the seller and buyer have provided otherwise by a contract, or whether an agent of the buyer accepts the covered product outside of the state for transportation into California.

**Uncooked** means requiring cooking prior to human consumption.
- **Requiring cooking** means not ready-to-eat in the condition sold, offered for sale, or otherwise distributed.
- **Ready-to-eat (RTE)** means in a form that is edible without additional preparation to achieve food safety and may receive additional preparation for palatability or aesthetic, gastronomic, or culinary purposes. RTE product is not required to bear a safe-handling instruction as required for non-RTE products by sections 317.2(l) and 381.125(b)) of [Title 9 of the Code of Federal Regulations](#) (January 2021).

**Usable floorspace** means the total square footage of floorspace provided to each *covered animal*, as calculated by dividing the total square footage of floorspace provided to covered animals in an individual *enclosure* by the number of covered animals in that individual enclosure.  This floorspace shall also include ground-space for enclosures that are outdoor pens or pastures accessible at all times by covered animals confined in the enclosure. For *egg-laying hens*, this floorspace shall include both ground-space and elevated level flat platforms upon which hens can roost but shall not include perches or ramps.

**Veal producer** means a *person* engaged in the business of keeping, confining, and/or housing a *calf* for the purpose of producing the human food product described, advertised, represented, identified, or labeled as veal meat.
- This definition shall not apply to a person housing calves exclusively for purposes of standard dairy herd management practices at, or for, a dairy farm holding a valid market milk permit or manufacturing milk permit pursuant to section 33222 of the Food and Agricultural Code or a valid permit issued by the government milk regulatory authority where the dairy farm is located if not in California.

Guidance: Key Terms | 4


Animal Health and Food Safety Services | 1220 N Street, Sacramento, California 95814
Telephone: 916.900.5187 | Fax: 916.900.5332 | www.cdfa.ca.gov/ahfss


**Whole pork/veal** *meat* means any *uncooked* cut of pork/veal, including (for pork, includes bacon and ham), chop, ribs, riblet, loin, shank, leg, roast, brisket, steak, sirloin, or cutlet, that is comprised entirely of pork/veal meat, except for *seasoning*, *curing agents*, coloring, *flavoring*, preservatives, and similar meat additives.
- Whole pork/veal *meat* does not include combination food products, including soups, sandwiches, pizzas, hotdogs, or similar processed or prepared food products, that are comprised of more than pork meat, seasoning, curing agents, coloring, flavoring, preservatives, and similar meat additives.

Guidance: Key Terms | 5


Animal Health and Food Safety Services | 1220 N Street, Sacramento, California 95814
Telephone: 916.900.5187 | Fax: 916.900.5332 | www.cdfa.ca.gov/ahfss


# EXHIBIT B



# ANIMAL CARE PROGRAM
## GUIDANCE: SALE UNDER ANIMAL CONFINEMENT

**Mission of Animal Care Program**

To serve animal agriculture producers and California consumers by promoting and protecting the welfare and care of animals in agriculture for Californians to have access to food that is sourced from humanely and sustainably raised animals.

Key terms italicized in this guidance are described in [Key Terms for Stakeholders](#) guidance document.

**Purpose**

Proposition 12 (2018), [Health and Safety Code (HSC) section 25990(b)](#), and [Animal Confinement Regulations](#), Chapter 10 (commencing with section 1320) of Division 2 of Title 3 of the California Code of Regulations (3 CCR) sections 1320.1(a), 1321.1(a) and 1322.1(a) prohibit a business owner or operator from engaging in the *commercial sale* within the state of a *covered product* from a *covered animal*, or immediate offspring of a *covered animal* in the case of *whole pork meat*, that was not kept in compliance with standards of HSC section 25991(e) and Animal Confinement regulations.

**Focus on the specific transaction** described to determine if a specific transaction of *covered product* is considered a *commercial sale* under HSC section 25991(o), 3 CCR sections 1320(e), 1321(f), and 1322(f) and therefore needs to be of *covered product* compliant with requirements.

Any exemption to the definition of *commercial sale* under Animal Confinement regulations applies only to that specific transaction, and not to the *covered product* itself. An exemption applies to the one transaction, any future transactions of the *covered product* in California are considered separately to determine if they fall under HSC section 25991(o) and need to be of compliant *covered product*. If any subsequent transactions of the *covered product* are a sale under HSC section 25991(o), then the *covered product* will need to comply with Animal Confinement regulations.

Read through flow of questions below starting with question 1 and follow the prompts provided under each question.

    1) Does the product (*shell eggs*, *liquid eggs*, *whole veal meat* or *whole pork meat*) in the transaction qualify as a **covered product** under Animal Confinement regulations?

        Refer to guidance: [**Eggs Covered Under Animal Confinement**](#)
                                  [**Pork and Veal Meat Covered Under Animal Confinement**](#)

        No ➔ sale does **not** fall under HSC section 25991(o) and Animal Confinement regulations because the transaction is not of a *covered product*. The product does not need to be from a *covered animal*, or immediate offspring of a *covered animal* in the case of *whole pork meat*, kept in compliance with Animal Confinement regulations.

        Yes ➔ The transaction is of a *covered product*, continue to # 2 to determine if there is a *commercial sale* under HSC section 25991(o) and Animal Confinement regulations.

    2) Is the transaction **a donation** of *covered product* to a nonprofit organization that has a tax exemption under section 501(c)(3) of the Internal Revenue Code (26 U.S.C.)? (3 CCR sections 1320(e)(4), 1321(f)(4), and 1322(f)(4))

        Yes ➔ the transaction **does not fall** under HSC section 25991(o) because this transaction falls under 3 CCR sections 1320(e)(4), 1321(f)(4), and 1322(f)(4) exemption of *commercial sale* and therefore does not need to be of *covered product* compliant with Animal Confinement regulations. Done.

---

November 2024                                                                                                                  GUIDANCE: SALE UNDER ANIMAL CONFINEMENT | 1




No ➔ the transaction might fall under HSC section 25991(o) and Animal Confinement regulations, continue to #3.

3) For this transaction, does the buyer of the *covered product take physical possession* in California?

Pursuant to HSC section 25991(o), a sale shall be deemed to occur at the location where the buyer takes *physical possession* of an item. "Takes physical possession" means when the *covered product* is delivered to the buyer in California, regardless of whether the title transfer takes place outside of the state, whether the seller and buyer have provided otherwise by a contract, or whether an agent of the buyer accepts the *covered product* outside of the state for transportation into California. (3 CCR sections 1320(aa), 1321(z), 1322(bb))

No ➔ transaction **does not** fall under HSC section 25991(o) and Animal Confinement regulations because the buyer is located outside of California. Done.

Yes ➔ transaction might fall under HSC section 25991(o) and Animal Confinement regulations, continue to #4.

4) Is the transaction of *covered product* that is produced outside of California, enters and exits California, without additional processing or repackaging, exclusively for purposes of transshipment or export outside of California? (3 CCR sections 1320(e)(1), 1321(f)(1), and 1322(f)(1))

Yes ➔ transaction does **not** fall under HSC section 25991(o) and Animal Confinement regulations because this transaction falls under 3 CCR sections 1320(e)(1), 1321(f)(1), and 1322(f)(1) exemptions from the definition of *commercial sale*. **Refer to graphic on last page of this guidance.**

Processing or repacking is when the *covered product* is removed from its original packaging that it was placed in when it was produced outside of California and put into new packaging, transformed into a different product, or processed in a way that changes the integrity of the product.

Any exemption from the definition of *commercial sale* only applies to that specific transaction. Done.

No ➔ transaction might fall under HSC section 25991(o) and Animal Confinement regulations, continue to #5.

5) Is the transaction of *shell eggs* or *liquid eggs* and undertaken on the premises of an establishment under mandatory inspection under the Egg Products Inspection Act and issued an establishment number with prefix of "G"? (3 CCR section 1320(e)(2))

Yes ➔ transaction **does not** fall under HSC section 25991(o) and Animal Confinement regulations because this transaction falls under 3 CCR section 1320(e)(2) exemption of *commercial sale*. Done.

No ➔ transaction might fall under HSC section 25991(o) and Animal Confinement regulations, continue to #6.

November 2024

Guidance: Sale Under Animal Confinement | 2

Animal Health and Food Safety Services | 1220 N Street, Sacramento, California 95814
Telephone: 916.900.5187 | Fax: 916.900.5332 | www.cdfa.ca.gov/ahfss





# ANIMAL CARE PROGRAM
## GUIDANCE: SALE UNDER ANIMAL CONFINEMENT

6) Is the transaction of *whole pork meat* or *whole veal meat* and undertaken on the premises of an establishment under mandatory inspection under the Federal Meat Inspection Act and issued an establishment number with prefix of "M"? (3 CCR section 1321(f)(2) and 1322(f)(2))

    Yes → transaction **does not** fall under HSC section 25991(o) and Animal Confinement regulations because this transaction falls under 3 CCR sections 1321(f)(2) and 1322(f)(2) exemptions from the definition of *commercial sale*. Done.

    No → transaction might fall under HSC section 25991(o) and Animal Confinement regulations, continue to #7.

7) Is the transaction of *covered product* made directly to federal agencies or takes place on federal lands located within California?

    Yes → transaction **does not** fall under HSC section 25991(o) and Animal Confinement regulations because this transaction falls under 3 CCR sections 1320(e)(2), 1321(f)(2), and 1322(f)(2) exemptions from the definition of *commercial sale*. Done.

    No → transaction might fall under HSC section 25991(o) and Animal Confinement regulations, continue to #8.

8) Is the transaction of *covered product* to a sale to a buyer on tribal lands located within California? (3 CCR sections 1320(e)(3), 1321(f)(3), and 1322(f)(3))

    Yes → transaction **does not** fall under HSC section 25991(o) and Animal Confinement regulations because this transaction falls under 3 CCR sections 1320(e)(3), 1321(f)(3) and 1322(f)(3) exemptions from the definition of *commercial sale*. Done.

    No → transaction might fall under HSC section 25991(o) and Animal Confinement regulations, continue to #9.

9) Is the transaction of *covered product* a sale, exchange, barter, trade, transfer title or possession, or distribution, conditional or otherwise, in California commerce including, but not limited to, transactions by a retailer with a consumer and electronic transactions made using the internet? (3 CCR sections 1320(e), 1321(f) and 1322(f))

    Yes → transaction **does** fall under HSC section 25991(o) and Animal Confinement regulations. Done.

    No → transaction **does not** fall under HSC section 25991(o) and Animal Confinement regulations. Done.

November 2024



Animal Health and Food Safety Services | 1220 N Street, Sacramento, California 95814
Telephone: 916.900.5187 | Fax: 916.900.5332 | www.cdfa.ca.gov/ahfss



Guidance: Sale Under Animal Confinement | 3



# ANIMAL CARE PROGRAM
## GUIDANCE: SALE UNDER ANIMAL CONFINEMENT



Examples of noncompliant covered product flow illustrating question 4 in this guidance of the exemption to the definition of commercial sale exclusively for purposes of transshipment or export outside of California. (3 CCR sections 1320(e)(1), 1321(f)(1), and 1322(f)(1))

A. Not allowed for noncompliant covered product under 3 CCR sections 1320(e)(1), 1321(f)(1), and 1322(f)(1) exemption of commercial sale. The first buyer of the noncompliant covered product in California did not purchase exclusively for transshipment and export as noncompliant covered product is sold to another buyer in California.

B. Allowed for noncompliant covered product under 3 CCR sections 1320(e)(1), 1321(f)(1), and 1322(f)(1) exemption of commercial sale. The next buyer of the covered product is located outside of California.

C. Allowed for noncompliant covered product under 3 CCR sections 1320(e)(1), 1321(f) (1), and 1322(f)(1) exemption of commercial sale. The buyer of the noncompliant covered product is located outside of California.

November 2024 — Guidance: Sale Under Animal Confinement | 4



Animal Health and Food Safety Services | 1220 N Street, Sacramento, California 95814
Telephone: 916.900.5187 | Fax: 916.900.5332 | www.cdfa.ca.gov/ahfss



# CERTIFICATE OF SERVICE

| Case Name: | **Triumph Foods, LLC v. Rob Bonta, et al.** | Case No. | **2:25-cv-09063-CAS-AJRx** |
|---|---|---|---|

I hereby certify that on <u>December 1, 2025</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct, and that this declaration was executed on <u>December 1, 2025</u>, at Los Angeles, California.

| Linda Zamora | *[signature]* |
|---|---|
| Declarant | Signature |

SA2025305435