UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | March 2, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

Present: The Honorable    CHRISTINA A. SNYDER

| Catherine Jeang | Janet Davis | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:
Michael Raupp
Ryann Glenn
Patricia Alberts

Attorneys Present for Defendants:
James Bowen

Attorneys Present for Intervenors:
Melissa Alpert
Jessica Blome

Proceedings:          ZOOM HEARING RE:

DEFENDANTS' MOTION TO DISMISS (Dkt. 36, filed on December 1, 2025)

DEFENDANT-INTERVENORS' MOTION FOR JUDGMENT ON THE PLEADINGS (Dkt. 49, filed on January 13, 2026)

DEFENDANT-INTERVENOR'S MOTION TO DISMISS (Dkt. 50, filed on January 13, 2026)

## I.    INTRODUCTION

On September 23, 2025, plaintiff Triumph Foods, LLC ("Triumph" or "plaintiff") filed a complaint against Rob Bonta, the Attorney General of California, Karen Ross, the Secretary of the California Department of Food and Agriculture ("CDFA"), and Erica Pan, the Director of the California Department of Public Health ("CDPH") (collectively, "defendants").  Dkt. 1 ("Compl.").  Plaintiff challenges the constitutionality and seeks to prevent the enforcement of California Health & Safety Code § 25990 *et seq.*, as amended by California's Proposition 12 Farm Animal Confinement Initiative ("Proposition 12"),

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | March 2, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

and of the implementing regulations for Proposition 12, Cal. Code Regs. tit. 3, §§ 1322-1327.3 (the "Regulations"). Id. Proposition 12 prohibits the sale within California of "[w]hole pork meat" that a seller "knows or should know is the meat of a covered animal who was confined in a cruel manner, or is the meat of the immediate offspring of a covered animal that was confined in a cruel manner." Cal. Health & Safety Code § 25990. The statute defines "confined in a cruel manner" to include confining any covered animal in a manner that "prevents the animal from lying down, standing up, fully extending the animal's limbs, or turning around freely," (the "Turn Around Requirements") or "confining a breeding pig with less than 24 square feet of useable floorspace per pig," (the "Square Footage Requirements"). Id. at § 25991(e).

The complaint alleges five claims for relief: (1) that Proposition 12 and the Regulations violate the Supremacy Clause of the United States Constitution because they are expressly preempted by the Federal Meat Inspection Act ("FMIA"), id. ¶¶ 137-210; (2) that Proposition 12 and the Regulations violate the Supremacy Clause of the United States Constitution because they are impliedly preempted by the FMIA, id. ¶¶ 211-228; (3) that Proposition 12 and the Regulations violate the Commerce Clause by discriminating in purpose and in effect against out-of-state pork processors, id. ¶¶ 229-254; (4) that Proposition 12 and the Regulations are facially vague resulting in violations of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, id. ¶¶ 255-282; and (5) that Proposition 12 and the Regulations impose an especially burdensome duty on out-of-state pork goods in violation of the Import-Export Clause, at Article I, Section 10, clause 2 of the United States Constitution. Id. ¶¶ 283-296. Plaintiff brings its third, fourth, and fifth claims for relief under 42 U.S.C. § 1983. Plaintiff seeks injunctive and declaratory relief. Id. ¶¶ 297-298.

On December 1, 2025, defendants filed a motion to dismiss. Dkt. 36 ("Mot."). On December 22, 2025, plaintiff filed an opposition. Dkt. 43 ("Opp."). On February 13, 2026, defendants filed a reply. Dkt. 55 ("Reply").

On January 12, 2026, the Court granted the motions to intervene of Humane World for Animals, Animal Legal Defense Fund, Animal Equality, The Humane League, Farm Sanctuary, Compassion in World Farming, Inc., Animal Outlook (collectively, "First Intervenors"), and of The Center for a Humane Economy and Animal Wellness Action (collectively, "Second Intervenors"). Dkt. 47.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | March 2, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

On January 13, 2026, the First Intervenors filed a motion for judgment on the pleadings, dkt. 49 ("F. Int. Mot."), and the Second Intervenors filed a motion to dismiss, dkt. 50 ("S. Int. Mot."). On February 9, 2026, plaintiff filed oppositions to the intervenors' motions. Dkt. 53 ("F. Int. Opp."); Dkt. 54 ("S. Int. Opp"). On February 13, 2026, the Second Intervenors filed a reply. Dkt. 56 ("S. Int. Reply"). On February 16, 2026, the First Intervenors filed a reply. Dkt. 57 ("F. Int. Reply").

The Court consolidated the hearings on defendants' and intervenors' motions to dismiss and motion for judgment on the pleadings to be heard jointly on March 2, 2026. See dkt. 47.

On March 2, 2026, the Court held a hearing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

The following facts are as alleged in the complaint or from the statutes and regulations referenced in the complaint. Compl.

### A.    The Parties

Triumph is a pork processor and distributor, regulated under the FMIA by the U.S. Department of Agriculture ("USDA") and the Food Safety and Inspection Service ("FSIS"). Compl. ¶ 15. Triumph is headquartered in St. Joseph, Missouri, and largely receives its supply of pigs from its farmer owners and other independent pig farmers. Id. Triumph processes pigs into pork and the pork is sold directly and indirectly to customers in California. Id. Triumph is also known as a "slaughterhouse" and is one of the largest distributors of pork products in the United States. Id. Triumph contracts with the farmers to obtain, inspect, buy, and process their pigs to create pork products. Id.

Defendants Rob Bonta, Karen Ross, and Erica Pan, are sued in their official capacities as the Attorney General of California, the Secretary of CDFA, and the Director of CDPH, respectively. Id. ¶¶16-18.

### B.    The FMIA

In 1906, Congress enacted the FMIA, 21 U.S.C. §§ 601-695. Compl. ¶ 22. "The act provides an elaborate system of inspection of animals before slaughter, and of carcasses after slaughter and of meat-food products, with a view to prevent the shipment

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | March 2, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

of impure, unwholesome, and unfit meat and meat-food products in interstate and foreign commerce." Pittsburgh Melting Co v. Totten, 248 U.S. 1, 4-5 (1918). "[USDA's FSIS] has responsibility for administering the FMIA to promote its dual goals of safe meat and humane slaughter." Nat'l Meat Ass'n v. Harris, 565 U.S. 452, 456 (2012).

Triumph alleges that "[e]nsuring that pigs do not enter and pork is not delivered from a plant that is at risk for 'foodborne illness' is a role specifically assigned to the USDA and FSIS through the Congressional enacted statutory requirements imposed by the FMIA." Compl. ¶ 28. Triumph alleges that in order to become a pork processor that is allowed to process, sell, and ship pork products into and through interstate commerce, the pork processor must be inspected and approved by FSIS through an Application for Federal Inspection and, following receipt of a Grant of Inspection. Id. ¶ 29 (citing 9 C.F.R. §§ 304.1304.3). Triumph alleges that the facility and its operations then become an "FMIA establishment." Id. According to Triumph, there are approximately 1,118 pork processing facilities inspected and approved by the FSIS in the United States, 34 of which are located in California. Id. ¶ 30 (citing FSIS Inspected Establishments, available at https://www.fsis.usda.gov/inspection/fsisinspected-establishments (last visited September 22, 2025)).

### C.    California Voters Enact Proposition 2 (2008)

In the November 2008 election, California voters passed Proposition 2, a ballot initiative intended to "prohibit the cruel confinement of farm animals." Compl. ¶ 79. Proposition 2 required in-state pig farmers to house breeding pigs in a manner that permitted the animals to "turn around freely, lie down, stand up, and fully extend their limbs." Id. (citing Cal. Health & Safety Code § 25990(a)). Proposition 2 did not subject out-of-state pork producers to this requirement and gave in-state pork producers more than six years to comply with the requirement, with an effective date of January 1, 2015. Id. ¶¶ 80 (citing Cal. Health & Safety Code § 25990).

### D.    California Voters Enact Proposition 12 (2018)

In the November 2018 election, California voters passed Proposition 12 to amend §§ 25990-93 of the California Health and Safety Code. Compl. ¶ 82. Proposition 12 prohibits the sale within California of "[w]hole pork meat" that a seller "knows or should know is the meat of a covered animal who was confined in a cruel manner, or is the meat of the immediate offspring of a covered animal that was confined in a cruel manner."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL    'O'

| Case No. | 2:25-cv-09063-CAS-AJRx | | Date | March 2, 2026 |
|----------|------------------------|---|------|---------------|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | | |

Cal. Health & Safety Code § 25990. The statute defines "confined in a cruel manner" to include confining any covered animal in a manner that "prevents the animal from lying down, standing up, fully extending the animal's limbs, or turning around freely," (the "Turn Around Requirements") or "confining a breeding pig with less than 24 square feet of useable floorspace per pig," (the "Square Footage Requirements"). Id. at § 25991(e). Proposition 12 deems a sale as one that occurs in California "where the buyer takes physical possession" of the meat at issue in California. See id. ¶ 260 (citing Cal. Health & Safety Code § 25991(o)). The definition of "sale" does not include any sale undertaken at an establishment at which mandatory inspection is provided under the FMIA. Cal. Health & Safety Code § 25991(o).

Any person who violates Proposition 12 is guilty of a misdemeanor punishable by a fine of up to $1,000 and up to 180 days imprisonment. Cal. Health & Safety Code § 25993(b). Additionally, violating Proposition 12 constitutes unfair competition, as defined by Cal. Bus. & Prof. Code § 17200. Id. at § 25993(b).

### E.    Proposition 12 Regulations

On May 28, 2021, the CDFA published draft rules and regulations for Proposition 12, which became final on September 1, 2022. Compl. ¶ 102 (citing Cal. Code Regs. tit. 3, §§ 1322-1327.3).

#### 1.    Registration Requirements

Under the Regulations, beginning January 1, 2024, "any person engaged in business in the state as a pork producer, or any out-of-state pork producer that is keeping, maintaining, confining, and/or housing a breeding pig for purposes of producing whole pork meat, from the breeding pig or its immediate offspring, for human food for commercial sale in California, shall hold a valid certification issued pursuant to Article 5 of [the Regulations] as a certified operation." Cal. Code Regs. tit. 3, § 1322.1 Also under the Regulations, beginning January 1, 2023, "any in-state or out-of-state person engaged in a commercial sale into or within the state as a pork distributor, shall hold a valid registration with the Department pursuant to this Article." Id. at § 1322.2(a). This registration must be renewed annually. Id. at § 1322.2(j).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | March 2, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

### 2. Labelling Requirements

The Regulations also include labelling requirements. See Cal. Code Regs. tit. 3, § 1322.4. "All documents of title and shipping manifests for shipments of whole pork meat entering the state or transported within the state for commercial sale in California shall include the statement 'Pork CA Prop 12 Compliant'." Id. at § 1322.4(a). Whole pork meat entering California that is not produced in compliance with Prop. 12 that is destined for sale to federal agencies or on tribal lands and not for commercial sale in California, must be labeled "For Export," "For Transshipment," or "Not Prop 12 Compliant." Id.

### 3. Inspection, Seizure, and Tagging

The CDFA may stop any vehicle or other conveyance transporting whole pork meat into or within the state, for the purposes of inspection of cargo and any accompanying shipping documents, manifests, and bills of lading. Id. at § 1322.6(b). The CDFA "may seize and hold any containers, sub-containers, lots or loads of whole pork meat in California which they have reasonable suspicion to believe is in violation of [Proposition 12]," and issue a hold notice to the person having control of the whole pork meat. Id. at § 1322.7(c). "Any whole pork meat for which a hold notice is issued shall be held by the person having control of the whole pork meat and shall not be disturbed, moved, diverted, or offered for sale except under the specific directions of the [CDFA]." Id. at § 1322.7(d). "A person may request an informal hearing to contest tagging, hold notice, or seizure of whole pork meat pursuant to [the Regulations]." Id. at § 1322.7(e). The CDFA "may affix a warning tag or notice to shipping documents, manifests, containers, sub-containers, lots, or loads of whole pork meat which have been produced, packaged, stored, labeled, marked, identified, transported, delivered, or sold in violation of [Proposition 12]." Id. at § 1322.7(a)

## III.   LEGAL STANDARD

### A.   Rule 12(b)(1) Motion

A motion to dismiss an action pursuant to Fed. R. Civ. P. 12(b)(1) raises the objection that the federal court has no subject matter jurisdiction over the action. This defect may exist despite the formal sufficiency of the allegations in the complaint. T.B. Harms Co. v. Eliscu, 226 F. Supp. 337, 338 (S.D.N.Y. 1964), aff'd 339 F.2d 823 (2d Cir. 1964). When considering a Rule 12(b)(1) motion challenging the substance of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | March 2, 2026 |
|----------|------------------------|------|----------------|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

jurisdictional allegations, the Court is not restricted to the face of the pleadings, but may
review any evidence, such as declarations and testimony, to resolve any factual disputes
concerning the existence of jurisdiction. See McCarthy v. United States, 850 F.2d 558,
560 (9th Cir. 1988).

Once a Rule 12(b)(1) motion has been raised, the burden is on the party asserting
jurisdiction. Sopcak v. N. Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir.
1995); Ass'n of Am. Med. Coll. v. United States, 217 F.3d 770, 778-79 (9th Cir.
2000). If jurisdiction is based on a federal question, the pleader must show that he has
alleged a claim under federal law and that the claim is not frivolous. See 5B Charles A.
Wright & Arthur R. Miller, Federal Practice and Procedure, § 1350, pp. 211, 231 (3d ed.
2004).

### B.    Rule 12(b)(6) Motion

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal
sufficiency of the claims asserted in a complaint. Under this Rule, a district court
properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence
of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v.
Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't,
901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6)
motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to
provide the 'grounds' of his 'entitlement to relief' requires more than labels and
conclusions, and a formulaic recitation of the elements of a cause of action will not
do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations
must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all
material allegations in the complaint, as well as all reasonable inferences to be drawn
from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be
read in the light most favorable to the nonmoving party. Sprewell v. Golden State
Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to
dismiss can choose to begin by identifying pleadings that, because they are no more than
conclusions, are not entitled to the assumption of truth. While legal conclusions can
provide the framework of a complaint, they must be supported by factual
allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States
Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | March 2, 2026 |
|----------|------------------------|------|---------------|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

**C.     Rule 12(c) Motion**

A motion for judgment on the pleadings may be brought "[a]fter the pleadings are closed—but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). "Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012). A motion for judgment on the pleadings "provides a vehicle for summary adjudication on the merits, after the pleadings are closed but before trial, which may save the parties needless and often considerable time and expense which otherwise would be incurred during discovery and trial." Judge Virginia A. Phillips & Judge Karen L. Stevenson, Federal Civil Procedure Before Trial, § 9:316 (The Rutter Group 2019).

Although Rule 12(c) contains no mention of leave to amend, "courts generally have discretion in granting 12(c) motions with leave to amend, particularly in cases

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**               **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | | Date | March 2, 2026 |
|---|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | | |

where the motion is based on a pleading technicality." In re Dynamic Random Access
Memory Antitrust Litig., 516 F. Supp. 2d 1072, 1084 (N.D. Cal. 2007). There is a strong
policy in favor of allowing amendment, unless amendment would be futile, results from
bad faith or undue delay, or will unfairly prejudice the opposing party. Id. (internal
citation omitted).

**IV.    DISCUSSION**

The First Intervenors argue that Triumph lacks standing under Article III of the
U.S. Constitution. F. Int. Mot. at 5.[1] Defendants argue that Triumph's third, fourth, and
fifth claims, each brought under 42 U.S.C. § 1983, are time-barred by the applicable
statute of limitations. Mot. at 6. Defendants and intervenors argue that each of
Triumph's claims fail to state a plausible claim for relief. See generally Mot., F. Int.
Mot., S. Int. Mot. The Court addresses the standing, statute of limitations, and
sufficiency of allegations arguments in turn.

**A.    Standing**

The First Intervenors argue that Triumph does not allege that it directly sells
products in California that are covered by Proposition 12's ban on the sale of
noncompliant pork. F. Int. Mot. at 5. Instead, the First Intervenors argue that
Triumph-processed pork is actually sold by a separate entity: Seaboard Foods. Id. at 6
(citing In re Pork Antitrust Litigation, No. 0:18-cv-01776, Doc. 3165 at 1 (Oct. 22, 2025)
("[N]o one disputes that Seaboard, not Triumph, sells, markets, and prices Triumph's
pork . . . Seaboard [has] the exclusive right to do so and gives Triumph no right to control
those activities"); Triumph Foods, LLC v. Campbell, No. 1:23-cv-11671, Dkt. 17 ¶¶ 99-
100 (Jul. 31, 2023) ("Seaboard has the exclusive right to market all Triumph pork, and

---

[1] Triumph argues that the First Intervenor's Rule 12(c) motion is premature because
defendants have not filed an answer, and, therefore, the pleadings are not closed. F. Int.
Opp. at 4-5. In reply, the First Intervenors argue that the Rule 12(c) motion is not
premature because the First Intervenors filed an answer in this matter, dkt. 26-2. F. Int.
Reply at 2 n.4. Alternatively, the First Intervenors argue that the Court, in its discretion,
may construe the motion for judgment on the pleadings as a motion to dismiss. Id. Since
the analysis of plaintiff's complaint pursuant to Rule 12(b) and Rule 12(c) motions is
"substantially identical," the Court considers defendants' and intervenors' arguments
together under the Rule 12(b) standards. See Chavez, 638 F.3d at 1108.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | March 2, 2026 |
|----------|------------------------|------|---------------|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

Seaboard makes all sales decisions on behalf of Triumph for its pork products including
who and where it sells the product.")). The First Intervenors argue that if Triumph is not
a pork seller in California and has no control over where its pork is sold, it cannot
establish Article III injury-in-fact and causation. Id. The First Intervenors argue that
Triumph's claims assume injuries to California pork sellers, and that Triumph does not
suffer these alleged injuries. Id. The First Intervenors argue that if Triumph supplies
California-bound pork to a third-party seller, then Triumph cannot establish causation for
its injuries because any injuries arising from Proposition 12 would be the result of the
independent action of some third party. Id.

In opposition, Triumph argues that its complaint sufficiently establishes Article III
standing. F. Int. Opp. at 5. Triumph argues that the complaint alleges continuous and
costly impacts on the operations and facilities of Triumph as a result of Proposition 12.
Id. (citing Compl. ¶¶ 116, 126, 133, 165, 186). Triumph also argues that its allegations
that Proposition 12 gives in-state entities an unfair advantage are sufficient allegations of
injury-in-fact. Id. at 6 (citing Compl. ¶¶ 11, 235, 248-49). Triumph argues that the Court
should not consider the First Intervenors' arguments based on facts outside of the record.
Id. at 7. But even if those arguments are considered, Triumph argues that it has standing
because it has suffered economic injury as a result of Proposition 12. Id. (citing Ass'n
des Éleveurs de Canards et d'Oies du Quebec v. Bonta, 33 F.4th 1107, 1120 (9th Cir.
2022).

In reply, the First Intervenors argue that Triumph appears to concede that it does
not directly sell pork in California. F. Int. Reply at 3. The First Intervenors maintain that
this distinction is fatal to Triumph's standing absent any specifically pleaded facts related
to the third party and its conduct to sustain standing. Id. The First Intervenors argue that
Triumph's alleged operational changes in response to Proposition 12, such as new sorting
procedures, are voluntary and insufficient demonstrate standing. Id. at 4.

The party asserting federal jurisdiction bears the burden of pleading and
establishing Article III standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 562
(1992). To have standing to bring a claim in federal court, "a plaintiff must show (i) that
he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii)
that the injury was likely caused by the defendant; and (iii) that the injury would likely be
redressed by judicial relief." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021)
(citing Lujan, 504 U.S. at 560-561). Here, the Court finds that Triumph's complaint
sufficiently establishes Article III standing for its claims, regardless of whether it directly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | March 2, 2026 |
|----------|------------------------|------|---------------|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

sells pork in California or only processes pork that is later sold by a third party in California, because Triumph alleges that it suffers injuries caused by the enforcement and implementation of Proposition 12 and the Regulations. See generally Compl. Accordingly, the Court does not dismiss the complaint on standing grounds.

**B.     Statute of Limitations for Section 1983 Claims**

Defendants argue that each of Triumph's section 1983 claims may be dismissed as time-barred because the running of the statute of limitations is apparent on the face of the complaint. Mot. at 6. Defendants argue that California's two-year statute of limitations for personal injury claims applies to section 1983 claims in a California forum. Id. (citing Butler v. Nat'l Cmty. Renaissance of Cal., 766 F.3d 1191, 1198 (9th Cir. 2014); Cal. Code Civ. Proc. § 335.1). Defendants argue that any of Triumph's section 1983 claims that accrued before September 23, 2023, two years prior to the filing of the complaint, are time-barred. Id. at 7. Defendants argue that Triumph alleges that it immediately changed its operations to comply with Proposition 12. Id. (citing Compl. ¶¶ 242-45). Proposition 12 was enacted on November 6, 2018, and the Turn Around Requirements became effective on December 19, 2018, and the Square Footage Requirements became effective on January 1, 2022. Id. Defendants argue that Triumph's allegations demonstrate that it was aware of, and complied with, the Turn Around Requirements and the Square Footage Requirements that Triumph challenges in this action before their effective dates, which precede the statute of limitations cutoff of September 23, 2023. Id. Accordingly, defendants argue that Triumph's section 1983 claims are time-barred on the face of the complaint and should be dismissed. Id.

In opposition, Triumph argues that its section 1983 claims are timely because Triumph alleges "continued and repeating harm" caused by Proposition 12 and the Regulations. Opp. at 17-18 (quoting Flynt v. Shimazu, 940 F.3d 457, 462-64 (9th Cir. 2019)). Triumph argues that every time it refrains from selling non-compliant pork into California, and every time Triumph alters its operations or transports pork into California, it suffers a new constitutional injury. Id. at 18. Triumph argues that the complaint details how Proposition 12 impacts the entire supply chain, including Triumph, with daily, continuous burdens, such as border inspections, registration requirements, and labelling requirements. Id. at 18-19 (citing Compl. ¶¶ 13, 104, 110, 112-113, 116, 144, 154, 205, 222-25, 251, 279, 293). Triumph argues that "[w]ith each new injury, a new claim arises, and the statute of limitations period begins anew." Id. at 19 (quoting Shimazu, 940 F.3d at 462-63).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | March 2, 2026 |
|----------|------------------------|------|---------------|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

In reply, defendants argue that the continuing violations doctrine does not apply to
Triumph's section 1983 claims. Reply at 10. Defendants argue that the continuing
violations doctrine distinguishes an actionable "continuing practice" from a non-
actionable "continuing impact." Id. (quoting Bird v. Dep't of Hum. Servs., 935 F.3d 738,
748 (9th Cir. 2019)). Defendants also argue that the continuing violations doctrine is
virtually non-existent outside of the hostile work environment context. Id. (citing Bird,
935 F.3d at 748). Defendants argue that Triumph's continuing violation theory is
premised on allegations that amount to no more than continuing effects of implementing
the challenged statute and regulations, which are insufficient to constitute a continuing
violation. Id. at 11. Moreover, defendants argue that Triumph does not allege that it
refrained from selling non-compliant pork into California or that it altered its operations
after Proposition 12 was passed, if at all. Id. And defendants argue that Triumph's
alleged annual registration is voluntary because Triumph is excluded from that
requirement because Triumph is, according to the complaint, an establishment at which
mandatory inspection is provided under the FMIA. Id. (citing Cal Code. Regs. tit. 3, §
1322.2(n); Compl. ¶¶ 15, 29). Defendants also note that Triumph does not argue that
equitable tolling or estoppel applies, and defendants argue that Triumph could not argue
that equitable tolling or estoppel applied because the complaint acknowledges that
Triumph was aware of the passage of Proposition 12 and the Regulations before their
effective dates. Id. at 10 n.4 (citing Compl. ¶¶ 241-43, 246-47).

The Court finds that Triumph's third claim, a Commerce Clause claim made under
section 1983, is partly barred by California's two-year statute of limitations for personal
injury claims. Triumph alleges that defendants gave in-state pork processors a "decade-
long head start" over out-of-state pork processors to comply with Proposition 12's Turn
Around Requirements, and that this differential treatment violates the Commerce Clause.
Compl. ¶¶ 248, 250. Triumph alleges that out-of-state processors like Triumph had to
make "emergency operational changes" and "were frantically responding to threatened
criminal exposure of the immediately implemented Turn Around Requirements." Id. ¶¶
244, 247. Thus, it appears that Triumph knew or had reason to know of the alleged
disadvantage that Proposition 12 imposed on out-of-state pork processors as early as the
date that Proposition 12 was approved by voters, November 6, 2018, and no later than the
effective date of the Turn Around Requirements on out-of-state pork processors,
December 19, 2018. Compl. ¶ 241; see TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir.
1999) ("[A] claim accrues when the plaintiff knows or has reason to know of the injury
which is the basis of the action."). To the extent that Triumph alleges "Proposition 12

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | March 2, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

and its Regulations' ongoing, continuous differential treatment violate the Commerce Clause," these allegations amount to continuous effects of the initial, alleged lead-time disadvantage suffered by Triumph and other out-of-state pork processors at the time of Proposition 12's enactment, and a "continuing effect is insufficient to constitute a continuing violation." Bird v. Dep't of Hum. Servs., 935 F.3d 738, 748 (9th Cir. 2019) (citing Williams v. Owens-Illinois, Inc., 665 F.2d 918, 924 (9th Cir. 1982), opinion modified on denial of reh'g, No. 79-4110, 1982 WL 308873 (9th Cir. June 11, 1982) ("[C]ontinuing impact from past violations is not actionable.")). Accordingly, Triumph's lead-time claim in its third claim is time-barred by the statute of limitations.

On the other hand, Triumph separately alleges "a loophole for in-state processors," by which in-state processors may sell noncompliant Whole Pork Meat from their FMIA-regulated facility if the buyer takes possession of the product at the facility, constitutes continuing discrimination against out-of-state pork-processors in violation of the Commerce Clause. Compl. ¶¶ 232-36. Given that the Court dismisses this "loophole" claim for failure to state a plausible dormant Commerce Clause claim, the Court declines to reach this statute of limitations issue.

The Court also finds that Triumph's fourth and fifth claims for relief, a Fourteenth Amendment due process claim and an Import-Export Clause claim, each made under section 1983, are not barred by the same statute of limitations. For these claims, Triumph alleges that the enforcement rather than implementation of Proposition 12 and the Regulations results in constitutional torts against Triumph. See Compl. ¶¶ 255-96. Specifically, Triumph alleges "vagueness exists surrounding the process of CDFA stops, inspections, searches and seizures that occur at the California border pursuant to [Proposition 12 and the Regulations]." Compl. ¶ 267. And Triumph alleges that this daily enforcement and threat of prosecution pursuant to a facially vague act constitute violations of due process. Id. ¶ 266. Triumph also alleges that defendants continuously levy duties on out-of-state pork goods in violation of the Import-Export Clause of the U.S. Constitution. Id. ¶ 293. These claims based on independent, allegedly wrongful acts within the limitations period are not barred by the statute of limitations. See Flynt v. Shimazu, 940 F.3d 457, 462 (9th Cir. 2019) ("When the continued enforcement of a statute inflicts a continuing or repeated harm, a new claim arises (and a new limitations period commences) with each new injury.") (citations omitted); see also Pouncil v. Tilton, 704 F.3d 568, 581 (9th Cir. 2012) (holding that constitutional and statutory claims were not barred by the statute of limitations where the defendant committed continuing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                          **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | March 2, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

acts within the limitations period, even if said acts related to a preexisting policy of which
the plaintiff was aware and subject to outside the limitations period). Accordingly, the
statute of limitations is not grounds for dismissal of Triumph's fourth and fifth claims for
relief.

### C.    Express Preemption

Defendants and intervenors argue that Triumph's first claim, based on express
preemption, should be dismissed for failure to state a claim for relief. See generally Mot.
at 15-18, F. Int. Mot. at 7-18, S. Int. Mot. at 6-20. Defendants and intervenors argue that
the FMIA's preemption clause does not bar Proposition 12 or the Regulations. Id.
Defendants argue that Proposition 12 does not alter the definition of "condemned" or
"adulterated" pork under the FMIA as Triumph alleges, because those definitions concern
whether meat is safe to consume, not whether meat is compliant with Proposition 12's
prohibition on cruel farming methods. Mot. at 17; see also F. Int. Mot. at 13 ("[T]he
FMIA only determines which animals and meat will pass inspection, not which pigs
slaughterhouses may accept."). The intervenors also argue that Proposition 12 is outside
of the scope of the FMIA, which is limited to the activities of slaughterhouses and post-
slaughter facilities. F. Int. Mot. at 9-11; S. Int. Mot. at 7-11. The intervenors argue that
Proposition 12, by contrast, establishes pig farm confinement standards and regulates in-
state pork sales. F. Int. Mot. at 9. The Second Intervenors note that the Supreme Court
recognized that Congress had the ability to preempt Proposition 12 but "[d]espite the
persistent efforts of certain pork producers, Congress has yet to adopt any statute that
might displace Proposition 12 or laws regulating pork production in other States." S. Int.
Mot. at 12 (quoting Nat'l Pork Producers Council v. Ross, 598 U.S. 356, 368 (2023)
(citing legislative proposals)). The First Intervenors argue that, contrary to Triumph's
allegations, Proposition 12 imposes no requirements with respect to Triumph as an
FMIA-inspected establishment. F. Int. Mot. at 11. The Second Group of Intervenors
argue that even accepting Triumph's alleged operational impacts as true, the FMIA does
not directly regulate pigs that slaughterhouses can purchase and thus does not preempt
states from doing so. S. Int. Mot. at 14.

In opposition, Triumph argues that the complaint adequately alleges express
preemption. Opp. at 7. Triumph cites Nat'l Meat Ass'n v. Harris, for the proposition that
the FMIA's preemption clause "sweeps widely" and "prevents a State from imposing any
additional or different—even if non-conflicting—requirements that fall within the scope
of the Act and concern a slaughterhouse's facilities or operations." Id. at 7-8 (quoting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | March 2, 2026 |
|----------|------------------------|------|---------------|
| Title    | Triumph Foods, LLC v. Rob Bonta et al | | |

Harris, 565 U.S. at 459-60). Triumph argues that Proposition 12 does exactly what the Supreme Court found was precluded in Harris: for a state to "impose any regulation on slaughterhouses just by framing it as a ban on the sale of meat produced in whatever way the State disapproved." Id. at 9 (quoting Harris, 565 U.S. at 464). Triumph argues that, just as in Harris, Proposition 12 and the Regulations effectively substitute a new regulatory scheme for the one that FSIS uses under the FMIA. Id. at 9-10. Triumph then lists eight operational alterations that it alleges Proposition 12 commands of Triumph. Id. at 10-13. Triumph argues that the cases in which horsemeat bans were upheld as not preempted by the FMIA are readily distinguishable by the fact that they involved wholesale bans on horsemeat, not bans on how horsemeat was produced, and therefore, those laws could not have plausibly added additional or different requirements to the operations of an FMIA-inspected slaughterhouse, given that the slaughterhouse would never process horsemeat. Id. at 14 (citing Cavel Int'l, Inc. v. Madigan, 500 F.3d 551 (7th Cir. 2007); Empacadora de Carnes de Fresnillo, S.A. de C.V., v. Curry, 476 F.3d 326 (5th Cir. 2007)).

In reply, defendants argue that the FMIA's preemption clause does not focus on the "processor" but rather whether requirements are "in addition to, or different than" the FMIA's requirements "within the scope of [the FMIA] with respect to premises, facilities and operations" of FMIA-inspected facilities or "[m]arking, labeling, packaging, or ingredient requirements." Reply. at 3 (quoting 21 U.S.C. § 678). Defendants also argue that Harris does not hold that the FMIA exempts meat processors from all state-level regulations and explicitly draws a line between preempted laws that "reach[] into the slaughterhouse's facilities and affect[] its daily activities," and permissible state laws that "work[] at a remove from the sites and activities that the FMIA most directly governs." Id. (quoting Harris, 565 U.S. at 467). Defendants argue that Triumph's list of eight claimed conflicts between the FMIA and Proposition 12 fails to identify any operational requirement on the face of Proposition 12 that is applicable to slaughterhouses and additional to or different from the FMIA. Id. at 4. Defendants argue that Triumph misinterprets Proposition 12 to conclude that voluntary modifications to Triumph's business practices that are not legally required by Proposition 12 are in conflict with the FMIA. Id. Defendants argue that five of the eight purported conflicts are based on Triumph's mistaken premise that Proposition 12 changes the FMIA's definition of "adulterated" or "condemned" meat. Id. And defendants argue that Triumph's remaining three purported conflicts establish no FMIA ground on which Proposition 12 impermissibly treads. Id. at 5. Defendants argue that Proposition 12's inspection

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**           **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | | Date | March 2, 2026 |
|---|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | | |

regulations do not require breaking seals, that Proposition 12's labelling regulations do not affect the FMIA's independent labelling provisions, and that Proposition 12's seizure and tagging regulations do not reduce, enlarge, or alter any seizure or tagging requirements under the FMIA.  Id. at 5-6.

"Congress may expressly preempt state law by enacting a clear statement to that effect."  In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig., 959 F.3d 1201, 1211 (9th Cir. 2020).  "[T]he plain wording of [an] express preemption clause 'necessarily contains the best evidence of Congress'[s] preemptive intent.'"  Am. Apparel & Footwear Ass'n, Inc. v. Baden, 107 F.4th 934, 939 (9th Cir. 2024) (quoting Puerto Rico v. Franklin Cal. Tax-Free Tr., 579 U.S. 115, 125 (2016)).  Here, the express preemption clause of the FMIA provides:

> Requirements within the scope of this [Act] with respect to premises, facilities and operations of any establishment at which inspection is provided under [this Act], which are in addition to, or different than those made under this [Act] may not be imposed by any [State] . . . Marking, labeling, packaging, or ingredient requirements in addition to, or different than, those made under this [Act] may not be imposed by any [State] with respect to articles prepared at any establishment under inspection in accordance with the requirements under subchapter I of this [Act], but any [State] may, consistent with the requirements under this [Act], exercise concurrent jurisdiction with [USDA] over articles required to be inspected under said subchapter I, for the purpose of preventing the distribution for human food purposes of any such articles which are adulterated or misbranded and are outside of such an establishment, or, in the case of imported articles which are not at such an establishment, after their entry into the United States. This chapter shall not preclude any [State] from making requirement or taking other action, consistent with this [Act], with respect to any other matters regulated under this [Act].

21 U.S.C. § 678.

The Court finds that Triumph has failed to state a plausible claim for relief based on express preemption.  First, Proposition 12's Turn Around Requirements and Square Footage Requirements are not within the scope of the FMIA preemption clause because these requirements apply to a farm owner or operator rather than an FMIA-inspected

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | March 2, 2026 |
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

establishment (a "slaughterhouse"[2]).  Cal. Health & Safety Code § 25990(a).  And Proposition 12's ban on the sale of noncompliant meat within the state does not apply on the premises of slaughterhouses.  Id. § 25991(o).  To the extent that Triumph or any other FMIA-inspected establishment is impacted by Proposition 12's sales ban or the Regulations, Proposition 12 and the Regulations do not impose any "requirements" on slaughterhouses that are "in addition to, or different than" any federal requirements within the scope of the FMIA.  Instead, any such operational changes by slaughterhouses in response to Proposition 12 and the Regulations are voluntary business decisions undertaken to avail of the California market.[3]  Even assuming that the Regulations impose some labelling or inspection "requirements" on slaughterhouses as businesses in the supply chain for whole pork meat sold in California, such requirements would also be outside of the scope of the FMIA's regulation "of activities at slaughterhouses to ensure both the safety of meat and the humane handling of animals."  Harris, 565 U.S. at 455 (2012).  Contrary to Triumph's allegations, the plain language of Proposition 12 and the Regulations do not concern the humane handling of animals at slaughterhouses or the safety of meat for consumption.  See Cal. Health & Safety Code § 25990 et seq.; Cal. Code Regs. tit. 3, §§ 1322-1327.3.  Harris is readily distinguishable because in that case, the California law specifically regulated the handling of animals in slaughterhouses.  See Harris, 565 U.S. at 458-59.  Furthermore, the Court is not persuaded by Triumph's attempt to distinguish the upheld state bans on horsemeat from Proposition 12.  Here, like in those two cases, slaughterhouses may incur operational costs to accommodate a sales ban, but the ban on a particular type of meat—whether from a horse or a pig confined in a

---

[2] The Court notes that an FMIA-inspected establishment includes "any slaughtering, packing, meat-canning, rendering, or similar establishment, in which [amenable species] are to be slaughtered and the meat and meat food products thereof are to be used in commerce."  21 U.S.C. § 603(a).  The Court uses the term "slaughterhouses" to capture such establishments.  The Court acknowledges that a slaughterhouse can also be a farm or a business that engages in the sale of pork meat, but the Court also recognizes that such farm or sales operations are outside of the scope of the FMIA.

[3] At oral argument, Triumph argued that this issue cannot be resolved on a motion to dismiss.  According to Triumph, its operational changes made in response to Proposition 12 are required by the terms of Proposition 12.  However, Triumph is incorrect.  This issue can be resolved on a motion to dismiss without reference to a more complete factual record because statutory interpretation is a question of law.  Pakootas v. Teck Cominco Metals, LTD., 830 F.3d 975, 980 (9th Cir. 2016).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | March 2, 2026 |
|----------|------------------------|------|---------------|
| Title    | Triumph Foods, LLC v. Rob Bonta et al | | |

cruel manner—is not preempted by the FMIA. *See* Empacadora de Carnes de Fresnillo, S.A. de C.V., v. Curry, 476 F.3d 326, 333 (5th Cir. 2007) ("[T]he FMIA's preemption clause is more naturally read as being concerned with the methods, standards of quality, and packaging that slaughterhouses use, matters [the Texas law] is entirely unconcerned with."); Cavel Int'l, Inc. v. Madigan, 500 F.3d 551, 554 (7th Cir. 2007) ("[Congress's passing of the FMIA] was not a decision that states must allow horses to be slaughtered for human consumption. The government taxes income from gambling that violates state law; that doesn't mean the state must permit the gambling to continue. Given that horse meat is produced for human consumption, its production must comply with the [FMIA]. But if it is not produced, there is nothing, so far as horse meat is concerned, for the [FMIA] to work upon."). Likewise, if noncompliant whole pork meat is not produced or separated from compliant whole pork meat at slaughterhouses as an operational choice to comply with Proposition 12, the FMIA is unaffected.

Accordingly, the Court dismisses Triumph's first claim for failure to state a claim upon which relief can be granted.

### D.    Implied Preemption

Defendants and intervenors next argue that Triumph's second claim for relief, based on implied preemption, should also be dismissed for failure to state a claim for relief. Mot. at 18-21; F. Int. Mot. at 17-18; S. Int. Mot. at 21-22. Defendants and intervenors argue that there is no obstacle preemption because Proposition 12 and the Regulations are not within the scope of the FMIA's purpose to ensure the safety of meat for consumption. Mot. at 20; F. Int. Mot. at 18; S. Int. Mot. at 22. Defendants also argue that there is no impossibility preemption because nothing in Proposition 12 precludes compliance with the FMIA. Mot. at 19. The intervenors argue that the First Circuit rejected Triumph's FMIA-preemption claim for a materially identical Massachusetts law. F. Int. Mot. at 17; S. Int. Mot. at 21-22 (citing Triumph Foods, LLC v. Campbell, 742 F. Supp. 3d 63 (D. Mass. 2024), aff'd, 156 F.4th 29 (1st Cir. 2025)).

In opposition, Triumph argues that the complaint adequately states a claim for obstacle preemption because the effects of Proposition 12 and the Regulations undermine the FMIA's intended purposes: to ensure that meat products are "wholesome, not adulterated," to carry out the "effective regulation of meat and meat food products in interstate [] commerce," and to "protect the health and welfare of consumers." Opp. at 16-17 (quoting 21 U.S.C. § 602). Triumph argues that Proposition 12 conflicts with the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | March 2, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

FMIA because pork that passes USDA inspection is now deemed unfit for consumption within California. Id. at 17. Triumph argues that the Ninth Circuit rejected the Fifth Circuit's statement in Empacadora that "states are free to decide which animals may be turned into meat." F. Int. Opp. at 9 (quoting Harris, 565 U.S. at 465).

In reply, defendants and intervenors argue that Triumph mischaracterizes Proposition 12, which does not say anything about whether meat is safe for human consumption but rather bans the sale of whole pork meat in California that was not raised in accordance with California's animal cruelty prevention standards. Reply at 8; F. Int. Reply at 17. Defendants and intervenors argue that Triumph cannot support its asserted broader purpose of the FMIA to promote efficient market operations. Reply at 9; F. Int. Reply at 17. Defendants and intervenors argue that the consumer protection purpose of the FMIA does not reach beyond slaughterhouse inspections to also preempt animal cruelty laws. F. Int. Reply at 17.

The Court finds that Triumph has failed to state a plausible claim for relief based on implied preemption. Triumph does not allege or argue field preemption. See generally Compl. ¶¶ 211-28. Instead, Triumph alleges:

> [Proposition 12 and the Regulations] conflict[] and operate[] as [] obstacle[s] to the operations at FMIA-inspected facilities including, but not limited to, the following ways: (a) the registration requirements or alternative options of the FSIS establishment; (b) determination of what pigs can be procured by the plant; (c) what pigs can enter the plant; (d) the sorting and segregation process inside the plant; (e) the sorting and segregation process on the processing line; (f) the sorting and segregation process of the packaged pork; (g) the determination and labeling of "inspected and passed;" (h) the safe and direct transportation of the pork on the establishment's trucks; and (i) the distribution of the pork to the customer for the sale.

Compl. ¶ 220.

"Implied conflict preemption occurs where (1) it is impossible to comply with both federal and state law, or (2) where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Am. Apparel & Footwear Ass'n, Inc. v. Baden, 107 F.4th 934, 943 (9th Cir. 2024) (quotation and citation omitted). Here, there is no impossibility preemption because Triumph has

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | March 2, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

not alleged that compliance with Proposition 12 renders it impossible to comply with the
FMIA. In fact, Triumph alleges that it and other out-of-state processors can and do
comply with both laws, albeit incurring additional costs. See generally Compl.

As to obstacle preemption, Triumph's allegations of obstacles "to the operations at
FMIA-inspected facilities" appear to reflect a misunderstanding of preemption law.
Compl. ¶ 220. Obstacle preemption considers whether the purposes of the federal law,
not merely the operations of private parties regulated under a federal law, are obstructed.
Baden, 107 F.4th at 943. The question of "[w]hat is a sufficient obstacle is a matter of
judgment, to be informed by examining the federal statute as a whole and identifying its
purpose and intended effects." Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 373
(2000). Having considered the FMIA as a whole and the case law interpreting it, the
Court concludes that Triumph fails to plausibly allege that Proposition 12 and the
Regulations stand as obstacles to the accomplishment and execution of the FMIA's "dual
goals of safe meat and humane slaughter." Harris, 565 U.S. at 456. Triumph's first
allegation, that Proposition 12 redefines what constitutes meat that is "adulterated" or
unsafe for consumption is belied by the plain text of Proposition 12 and the Regulations.
California's laws do not in any way define what meat is safe for consumption, but rather
they prescribe standards of confinement of pigs on farms to prevent animal cruelty and
prohibit the sale of meat in California that is noncompliant with those animal welfare
standards. See Cal. Health & Safety Code § 25990 et seq.; Cal. Code Regs. tit. 3, §§
1322-1327.3.

Triumph does not allege any other obstacles to the inspection-for-safety purpose of
the FMIA. Instead, Triumph argues that the purpose of the FMIA is broader and includes
the "effective regulation of meat and meat food products in interstate [] commerce."
Opp. at 16 (quoting 21 U.S.C. § 602). But the context of this quotation from the FMIA's
congressional statement of findings reinforces the more-limited purpose of the FMIA to
regulate pork inspection for safe human consumption rather than a broader purpose to
regulate the entire field of meat food products in interstate commerce. See 21 U.S.C. §
602 ("*Unwholesome, adulterated, or misbranded meat or meat food products impair* the
effective regulation of meat and meat food products in interstate or foreign commerce,
are injurious to the public welfare, destroy markets for *wholesome, not adulterated*, and
properly labeled and packaged meat and meat food products, and result in sundry losses
to livestock producers and processors of meat and meat food products, as well as injury to
consumers.") (emphasis added). Moreover, the FMIA's "title refers specifically to meat

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | March 2, 2026 |
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

*inspection,* rather than a more comprehensive scheme of meat regulation." Empacadora, 476 F.3d at 334.

When evaluating whether federal law has preempted a state law, a court must "(1) look to the purpose of Congress as the ultimate touchstone, while also (2) starting with the assumption that the historic police powers of the States were not to be superseded unless that was the clear and manifest purpose of Congress." McClellan v. I-Flow Corp., 776 F.3d 1035, 1039 (9th Cir. 2015) (citing Wyeth v. Levine, 555 U.S. 555, 565 (2009)) (internal quotations omitted). While preemption was not an issue before the Supreme Court in Nat'l Pork Producers Council v. Ross, the Supreme Court nonetheless explicitly noted that Proposition 12 was not preempted by federal law. 598 U.S. 356, 368 (2023) ("Everyone agrees that Congress may seek to exercise this power to regulate the interstate trade of pork, much as it has done with various other products. Everyone agrees, too, that congressional enactments may preempt conflicting state laws. See Art. VI, cl. 2. But everyone also agrees that we have nothing like that here. Despite the persistent efforts of certain pork producers, Congress has yet to adopt any statute that might displace Proposition 12 or laws regulating pork production in other States.").

Unlike the FMIA's purpose to prevent the sale of adulterated meat, the stated purpose of Proposition 12 is "to prevent animal cruelty." Compl. ¶ 204.[4] The Court concludes that the FMIA does not limit California's ability to regulate animal confinement standards at farms or to decide what types of meat may be sold in the state. Empacadora, 476 F.3d at 3343. Triumph does not allege any cognizable obstacles to the accomplishment and execution of the FMIA's purpose and objectives by the enforcement

---

[4] At oral argument, Triumph argued that the FMIA's purpose is to ensure uniform food safety regulations throughout the country, and that Proposition 12 expressly includes preventing "foodborne illness" as a purpose in addition to preventing animal cruelty. See Compl. ¶ 204. Indeed, Triumph alleges that reducing the risk "foodborne illness" is listed as an effect of Proposition 12's farm confinement standards. See id. To the extent that this implicates a food safety purpose of Proposition 12, the FMIA does not preempt all laws that in any way affect food safety. Instead, the FMIA regulates the inspection of slaughterhouse facilities for the identification of adulterated meat. Proposition 12 does not share this purpose or create an obstacle to the achievement of this purpose. Triumph acknowledges in the complaint that Proposition 12 does not reflect a purpose of preventing the distribution of adulterated meat. See Compl. ¶ 141 n.9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | | Date | March 2, 2026 |
|---|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | | |

of Proposition 12 or the Regulations.  Accordingly, the Court dismisses Triumph's second claim for failure to state a claim upon which relief can be granted.

### E.    Commerce Clause

The Court has already determined that Triumph's "lead time" claim is time-barred by the statute of limitations.  Furthermore, Rule 12(b)(6) provides alternative grounds to dismiss that claim, pursuant to the Court's reasoning in <u>Iowa Pork Producers Ass'n v. Bonta</u>, No. 2:21-CV-09940-CAS (AFMX), 2022 WL 613736, (C.D. Cal. Feb. 28, 2022) ("<u>IPPA I</u>"), <u>aff'd</u>, No. 22-55336, 2024 WL 3158532 (9th Cir. June 25, 2024) ("<u>IPPA II</u>"), <u>cert. denied</u>, 145 S. Ct. 2866, 222 L. Ed. 2d 1147 (2025).  There, this Court found that "plaintiff cannot plausibly state a claim that Proposition 12 is facially discriminatory, because it makes no distinction between in-state and out-of-state pork producers," and "plaintiff cannot plausibly allege that the fact that in-state producers had six years to comply with the Turn Around Requirements under Proposition 2, while out-of-state producers subject to Proposition 12 only had six weeks to comply, violates the dormant Commerce Clause."  <u>Id.</u> at *13.

The Court turns to Triumph's other Commerce Clause claim, that Proposition 12 includes a discriminatory "loophole," or "slaughterhouse exception," allowing in-state pork processors to sell noncompliant whole pork meat from their FMIA-inspected facility ("slaughterhouse") if the buyer takes possession of the product at that facility.  Compl. ¶¶ 232-236.  Defendants and intervenors argue that Triumph fails to allege that this "slaughterhouse exception" is discriminatory under the dormant Commerce Clause.  Mot. at 9; F. Int. Mot. at 21.  The Second Intervenors attest that the "slaughterhouse exception" was not intended to advantage in-state interests over out-of-state interests but rather drafted to avoid litigation over FMIA-preemption claims, with the understanding that few, if any, sales occur on slaughterhouse premises.  S. Int. Mot. at 20 n.19.[5]

In opposition, Triumph argues that Proposition 12 is *per se* invalid as a state law that discriminates against out-of-state commerce.  Opp. at 20 (citing <u>S. Dakota v.</u>

---

[5] <u>Harris</u> suggests that a ban on slaughterhouses selling noncompliant meat on the premises of slaughterhouses could possibly be preempted by the FMIA because the FMIA regulates the activities of *slaughterhouses*, whereas a ban on farming or sales practices outside, or "at a remove from," slaughterhouses likely would not be preempted by the FMIA.  565 U.S. 452 at 462-63, 467.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | March 2, 2026 |
|----------|------------------------|------|---------------|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

_Wayfair_, 585 U.S. 162, 173 (2018)).  Triumph repeats its allegation that the "slaughterhouse exception" is unconstitutional because it only provides an advantage to in-state slaughterhouses, and that Triumph would need to open its own California facility to take advantage of this exception.  _Id._ at 21-22.

In reply, defendants argue that the virtual _per se_ invalidity rule for simple state economic protectionist laws does not apply here, where Proposition 12's unambiguous purpose is to advance California's interest in preventing animal cruelty.  Reply at 13.

The Constitution extends to Congress the power to "regulate Commerce . . . among the several states."  U.S. Const., Art. I, § 8, cl. 3.  "Although the Commerce Clause is by its text an affirmative grant of power to Congress to regulate interstate and foreign commerce, the Clause has long been recognized as a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce."  Nat'l Ass'n of Optometrists & Opticians v. Harris, 682 F.3d 1144, 1147 (9th Cir. 2012) ("_Optometrists II_") (quoting South–Central Timber Dev., Inc. v. Wunnicke, 467 U.S. 82, 87 (1984)).  "This limitation on the states to regulate commerce is 'known as the dormant Commerce Clause.'"  Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Harris, 729 F.3d 937, 947 (9th Cir. 2013) (quoting Optometrists II, 682 F.3d at 1148).  "The primary purpose of the dormant Commerce Clause is to prohibit 'statutes that discriminate against interstate commerce' by providing benefits to 'in-state economic interests' while 'burdening out-of-state competitors.'"  _Id._ at 947 (quoting CTS Corp. v. Dynamics Corp. of Am., 481 U.S. 69, 87 (1987) and Dep't of Revenue v. Davis, 553 U.S. 328, 337 (2008)).

"The Supreme Court has adopted a 'two-tiered approach to analyzing state economic regulation under the Commerce Clause.'"  Éleveurs, 729 F.3d at 948 (quoting Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth., 476 U.S. 573, 578–79 (1986)).  On the one hand, state regulations that (1) "discriminate against interstate commerce" or (2) "directly regulat[e] extra-territorial conduct" are generally "struck down . . . without further inquiry."  _Id._ at 948-49 (quoting Brown-Forman); see also Dakota v. Wayfair, Inc., 138 S. Ct. 2080, 2091 (2018) (explaining that such laws "face a virtually _per se_ rule of invalidity").  However, state regulations that (3) "regulate even-handedly to effectuate a legitimate local public interest . . . will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."  Wayfair, Inc., 138 S. Ct. at 2091 (quoting Pike v. Bruce Church, Inc., 397 U.S. 137 (1970)); see also Energy & Env't Legal Inst. v. Epel, 793 F.3d 1169, 1171 (10th

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**         **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | March 2, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

Cir. 2015) (Gorsuch, J.) (explaining that "dormant commerce clause cases are said to
come in [these] three varieties").

Here, the Court finds that Triumph does not plausibly allege that Proposition 12 is
facially discriminatory.  See IPPA II, 2024 WL 3158532, at *1 ("On its face, Proposition
12 does not discriminate against out-of-state pork producers.").  The "slaughterhouse
exception" excludes from Proposition 12's definition of "sale" any sale undertaken at *any*
slaughterhouse.  See Cal. Health & Safety Code § 25991(o).  This exception, on its face,
does not discriminate against out-of-state slaughterhouses.  As Triumph acknowledges in
its opposition brief, any out-of-state slaughterhouse, including Triumph, may take
advantage of this provision to sell noncompliant meat in California directly from the
premises of an FMIA-inspected facility to the ultimate consumers.  Opp. at 22.  That the
exception, in practical effect, only applies to sales on the premises of slaughterhouses
located in California is immaterial because sales outside of California are not governed
by Proposition 12.  See Cal. Health & Safety Code § 25991(o).  Out-of-state
slaughterhouses may also sell meat that is not Proposition 12-compliant directly from
out-of-state facilities because Proposition 12's sales ban only applies to sales where the
buyer takes physical possession of the pork *within the state*.  See id.  In sum, by
prohibiting sales in California of noncompliant meat where a sale does not occur on the
premises of a slaughterhouse, Proposition 12 does not treat out-of-state businesses,
including pork processors, any differently than in-state businesses under the law.

Moreover, defendants fail to plausibly allege that the "slaughterhouse exception"
in Proposition 12 "is driven by concern about 'economic protectionism that is, regulatory
measures designed to benefit in-state economic interests by burdening out-of-state
competitors.'"  Dep't of Revenue of Ky. v. Davis, 553 U.S. 328, 337-38 (2008) (quoting
New Energy Co. of Ind. v. Limbach, 486 U.S. 269, 273-274 (1988)).  Triumph
acknowledges that the express purpose of Proposition 12 is "to prevent animal cruelty by
phasing out extreme methods of farm animal confinement, which also threaten the health
and safety of California consumers, increase the risk of foodborne illness, and have
negative fiscal impacts on the State of California."  Compl. ¶ 204.

The Court also finds that Triumph does not plausibly allege a clearly excessive
burden on interstate commerce based on the "slaughterhouse exception."  See Nat'l Pork
Producers Council v. Ross, 6 F.4th 1021, 1032 (9th Cir. 2021) ("[A]t the motion to
dismiss stage a complaint must, at a minimum, 'plausibly allege the ordinance places a
'significant' burden on interstate commerce.') (citation omitted), aff'd, 598 U.S. 356, 143

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | March 2, 2026 |
|----------|------------------------|------|---------------|
| Title    | Triumph Foods, LLC v. Rob Bonta et al | | |

S. Ct. 1142, 215 L. Ed. 2d 336 (2023).  "Absent discrimination for the forbidden purpose,
however, the law 'will be upheld unless the burden imposed on [interstate] commerce is
clearly excessive in relation to the putative local benefits.'"  Davis, 553 U.S. at 338-39
(quoting Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970)).  "State laws frequently
survive this Pike scrutiny."  Id.  Triumph has not alleged any facts from which the Court
may infer that the facially nondiscriminatory "slaughterhouse exception" imposes a
significant burden on interstate commerce.  See Compl. ¶¶ 232-36 (no allegations of
effects).  Accordingly, the Court dismisses Triumph's third claim for failure to state a
claim upon which relief can be granted.

### F.    Due Process Clause of the Fourteenth Amendment

Next, defendants and intervenors argue that Triumph's fourth claim for relief,
alleging Proposition 12 violates the Due Process Clause of the Fourteenth Amendment,
should be dismissed for failure to state a claim.  Mot. at 11-15; F. Int. Mot. at 22.
Specifically, Triumph alleges that Proposition 12 does not clearly define: "engage in the
sale," Compl. ¶ 259, "in California commerce," id. ¶ 262, or who is subject to the laws,
id. ¶ 264.  Triumph alleges that the facially vague law and regulations create a risk of
arbitrary, inconsistent, and discriminatory enforcement by defendants.  Id. ¶274.
Triumph also alleges that defendants provided out-of-state processors insufficient notice
or lead time to comply with the Turn Around Requirements.  Id. ¶ 277.

Defendants and intervenors argue that each of the allegedly vague terms in
Proposition 12 are clearly defined.  Mot. at 12-13; F. Int. Mot. at 22.  Defendants also
argue that Triumph fails to plausibly allege inadequate fair notice.  Mot. at 13-14.

In opposition, Triumph argues that its allegations are adequate.  Triumph cites
Black's Law Dictionary in support of its contention that "engage" is unclear.  Opp. at 25.
Triumph argues that this ambiguity is compounded by the fact that the Regulations
contemplate enforcement against production facilities upstream from the ultimate sale.
Id. at 26 (citing Cal. Code Regs. tit. 3, § 1322.2).

In reply, defendants argue that Triumph's Due Process Clause claim fails whether
based on purported definitional vagueness, arbitrary enforcement, or a lack of notice.
Reply at 17.

In the context of a facial challenge on constitutional vagueness grounds, a plaintiff
confronts a "heavy burden" in asserting its claim.  Nat'l Endowment for the Arts v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | March 2, 2026 |
|----------|------------------------|------|---------------|
| Title    | Triumph Foods, LLC v. Rob Bonta et al | | |

Finley, 524 U.S. 569, 580 (1998) ("[f]acial invalidation 'is, manifestly, strong medicine' that 'has been employed by the Court sparingly and only as a last resort'") (internal citations omitted).  "A statute can be impermissibly vague for either of two independent reasons.  First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.  Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." Hill v. Colorado, 530 U.S. 703, 732 (2000) (citing Chicago v. Morales, 527 U.S. 41, 56-57 (1999)).

Here, the Court finds that Triumph fails to plausibly allege unconstitutional vagueness through either lack of fair notice or risk of arbitrary enforcement.  First, Triumph's insufficient notice argument based on the short lead time afforded to out-of-state processors to comply with the Turn Around Requirements was rejected in IPPA I, where the Court found that even before any implementing regulations were promulgated, the plaintiff had failed to sufficiently allege that Proposition 12 gave inadequate notice to out-of-state processors of how to comply with the Turn Around Requirements.  2022 WL 613736, at *9.  Here, Triumph's claim fails for the same reasons.

The Court also finds that the plain language of the statute is clear.  The Ninth Circuit rejected an identical allegation that Proposition 12's definition of "engage in" is unconstitutionally vague.  IPPA II, 2024 WL 3158532, at *4 ("The term 'engage in' is widely used and readily understood.").  Further, the Ninth Circuit found no ambiguity as to whether Proposition 12 applies to entities "upstream of a sale in California." Id. ("Upstream entities, by virtue of being upstream, are not engaging in the ultimate sale in California; rather, they are engaging in earlier, separate sales.").  Here, the Court finds that the Regulations cited by Triumph in its opposition brief do not create any ambiguities where none previously existed as to possible enforcement against upstream production facilities.  Opp. at 26.  The cited regulations refer to registrations required of those persons or entities engaged in sales of whole pork meat *into or within California*. Cal Code Regs. tit. 3, § 1322.2.[6]

---

[6] At oral argument, Triumph argued that various regulations cited throughout the complaint inject ambiguity into Proposition 12 as to what "engage in" a sale means and whether it includes upstream supply chain participants.  Having reviewed the paragraphs of the complaint that Triumph cited at the hearing, the Court finds no plausible allegation of ambiguity arising out of the Regulations as to what "engage in" a sale means under Proposition 12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL                                      'O'

| Case No. | 2:25-cv-09063-CAS-AJRx | | Date | March 2, 2026 |
|---|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | | |

Nor does Triumph plausibly allege that Proposition 12 and the Regulations are unconstitutionally vague as to who is subject to enforcement or what constitutes "in California commerce."  Proposition 12 was sufficiently clear even before any regulations were published, see IPPA I, 2022 WL 613736, at *9, and the Regulations further clarify what constitutes a "commercial sale" in California, Cal. Code Regs. tit 3, § 1322(f), and who is subject to enforcement of Proposition 12, id. §1322(s)-(u).

Accordingly, the Court dismisses Triumph's fourth claim for failure to state a claim upon which relief can be granted.

### G.    Import-Export Clause

Finally, defendants and intervenors argue that Triumph's fifth claim for relief should be dismissed because the Import-Export Clause is inapplicable to this action. Mot. at 15; F. Int. Mot. at 23; S. Int. Mot. at 25-26.  Defendants and intervenors argue that the Import-Export Clause applies only to foreign imports and exports, not to interstate commerce.  Id.  The Second Intervenors argue that even if the Import-Export Clause applied to interstate commerce, Proposition 12's ban on certain whole pork meat would not fall within courts' narrow construction of the terms "duty" or "impost."  S. Int. Mot. 25-26 (citing cases).

In opposition, Triumph argues that several Supreme Court justices have reasoned that the Import-Export Clause may also prevent States from imposing certain especially burdensome taxes and duties on imports from other States.  Opp. at 27 (citing Comptroller of Treasury of Md. v. Wynne, 575 U.S. 542, 573 (2015) (Scalia, J., dissenting); Camps Newfound/Owatonna, Inc. v. Town of Harrison, 520 U.S. 564, 621-637 (1997) (Thomas, J., dissenting)).

In reply, defendants argue that the opposition relies on two dissenting opinions to avoid longstanding precedent that forecloses its claim.  Reply at 20.  Defendants also argue that Triumph fails to allege that Proposition 12 is a "tax" under the Import-Export Clause.  Id.

The Court finds that Triumph's fifth claim for relief is foreclosed by Supreme Court precedent interpreting the Import-Export Clause "to refer only to international trade," and not to interstate commerce.  Tennessee Wine & Spirits Retailers Ass'n v. Thomas, 588 U.S. 504, 516 (2019); see also Am. Steel & Wire Co. v. Speed, 192 U.S. 500, 520 (1904) ("[I]mports, in the constitutional sense, embrace only goods brought

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:25-cv-09063-CAS-AJRx | | Date | March 2, 2026 |
|----------|------------------------|---|------|---------------|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | | |

from a foreign country, and consequently do not include merchandise shipped from one
state to another."); Woodruff v. Parham, 75 U.S. 123, 128 (1868) ("The prohibition
against taxing 'imports or exports' refers exclusively to foreign commerce."). Triumph's
citations to dissenting opinions, which do not have any precedential effect, cannot save
Triumph's claim. Accordingly, the Court dismisses Triumph's fifth claim for failure to
state a claim upon which relief can be granted.

        **H.**    **Leave to Amend**

Defendants argue that leave to amend should be denied because amendment would
be futile. Mot. at 21-22. Defendants contend that Triumph's claims are either
time-barred or legally insufficient, and that no new allegations could sustain the claims.
Id.

"Dismissal without leave to amend is improper unless it is clear . . . that the
complaint could not be saved by any amendment." Polich v. Burlington N., Inc., 942
F.2d 1467, 1472 (9th Cir. 1991) (citing Kelson v. City of Springfield, 767 F.2d 651 (9th
Cir. 1985)). The Court finds that Triumph's express preemption claim, implied
preemption claim, and Import-Export Clause claim each fail as a matter of law, and,
therefore, amendment would be futile. Triumph's Commerce Clause claim based on a
"lead time" theory is time-barred and thus cannot be saved by amendment.

On the other hand, Triumph's Commerce Clause claim based on the
"slaughterhouse exception" is dismissed because Triumph failed to allege a significant
burden on interstate commerce. Because Triumph could fix this deficiency with an
amended complaint, the Court grants Triumph leave to amend this claim. And while the
Court found that Triumph failed to plausibly allege that Proposition 12 is
unconstitutionally vague, Triumph requested at oral argument that it be granted leave to
amend to assert additional allegations that the Regulations create facial vagueness and/or
to assert an "as applied" Due Process Clause claim. Accordingly, the Court grants
Triumph leave to amend this claim.

**V.**    **CONCLUSION**

In accordance with the foregoing, the Court:

1) **GRANTS** defendants' and intervenors' motion to dismiss as to plaintiff's express
   preemption claim, with prejudice;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | March 2, 2026 |
|----------|------------------------|------|---------------|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

2) **GRANTS** defendants' and intervenors' motion to dismiss as to plaintiff's implied preemption claim, with prejudice;

3) **GRANTS** defendants' and intervenors' motion to dismiss as to plaintiff's dormant Commerce Clause claim, dismissing plaintiff's claim based on a "lead time" theory with prejudice and dismissing plaintiff's claim based on the "slaughterhouse exception" without prejudice;

4) **GRANTS** defendants' and intervenors' motion to dismiss as to plaintiff's Due Process Clause claims under the Fourteenth Amendment, without prejudice; and

5) **GRANTS** defendants' and intervenors' motion to dismiss as to plaintiff's Import-Export Clause claim, with prejudice.

The Court permits plaintiff 14 days' leave to amend.

IT IS SO ORDERED.

| | 00 | : | 41 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |