UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-09063-CAS-AJRx | Date | July 13, 2026 |
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

Present: The Honorable      CHRISTINA A. SNYDER

| Catherine Jeang | Laura Elias | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:
Michael Raupp

Attorneys Present for Defendants:
Camille Framroze

Attys Present for Intervenor Defendants
Melissa Alpert
Jessica Blome

**Proceedings:**   DEFENDANTS' MOTION TO DISMISS (Dkt. 36, filed on December 1, 2025)

DEFENDANT-INTERVENORS' MOTION FOR JUDGMENT ON THE PLEADINGS (Dkt. 49, filed on January 13, 2026)

DEFENDANT-INTERVENOR'S MOTION TO DISMISS (Dkt. 50, filed on January 13, 2026)

## I.   INTRODUCTION

On September 23, 2025, plaintiff Triumph Foods, LLC ("Triumph" or "plaintiff") filed a complaint against Rob Bonta, the Attorney General of California, Karen Ross, the Secretary of the California Department of Food and Agriculture ("CDFA"), and Erica Pan, the Director of the California Department of Public Health ("CDPH") (collectively, "defendants"). Dkt. 1 ("Compl."). Plaintiff challenges the constitutionality and seeks to prevent the enforcement of California Health & Safety Code § 25990 *et seq.*, as amended by California's Proposition 12 Farm Animal Confinement Initiative ("Proposition 12"), and of the implementing regulations for Proposition 12, Cal. Code Regs. tit. 3, §§ 1322-1327.3 (the "Regulations"). Id. Proposition 12 prohibits the sale within California of "[w]hole pork meat" that a seller "knows or should know is the meat of a covered animal who was confined in a cruel manner, or is the meat of the immediate offspring of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | July 13, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

a covered animal that was confined in a cruel manner." Cal. Health & Safety Code § 25990. The statute defines "confined in a cruel manner" to include confining any covered animal in a manner that "prevents the animal from lying down, standing up, fully extending the animal's limbs, or turning around freely," (the "Turn Around Requirements") or "confining a breeding pig with less than 24 square feet of useable floorspace per pig," (the "Square Footage Requirements"). Id. at § 25991(e).

The complaint alleges five claims for relief: (1) that Proposition 12 and the Regulations violate the Supremacy Clause of the United States Constitution because they are expressly preempted by the Federal Meat Inspection Act ("FMIA"), id. ¶¶ 137-210; (2) that Proposition 12 and the Regulations violate the Supremacy Clause of the United States Constitution because they are impliedly preempted by the FMIA, id. ¶¶ 211-228; (3) that Proposition 12 and the Regulations violate the Commerce Clause by discriminating in purpose and in effect against out-of-state pork processors, id. ¶¶ 229-254; (4) that Proposition 12 and the Regulations are facially vague resulting in violations of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, id. ¶¶ 255-282; and (5) that Proposition 12 and the Regulations impose an especially burdensome duty on out-of-state pork goods in violation of the Import-Export Clause, at Article I, Section 10, clause 2 of the United States Constitution. Id. ¶¶ 283-296. Plaintiff brings its third, fourth, and fifth claims for relief under 42 U.S.C. § 1983. Plaintiff seeks injunctive and declaratory relief. Id. ¶¶ 297-298.

On December 1, 2025, defendants filed a motion to dismiss. Dkt. 36.

On January 12, 2026, the Court granted the motions to intervene of Humane World for Animals, Animal Legal Defense Fund, Animal Equality, The Humane League, Farm Sanctuary, Compassion in World Farming, Inc., Animal Outlook (collectively, "First Intervenors"), and of The Center for a Humane Economy and Animal Wellness Action (collectively, "Second Intervenors"). Dkt. 47.

On January 13, 2026, the First Intervenors filed a motion for judgment on the pleadings, dkt. 49, and the Second Intervenors filed a motion to dismiss, dkt. 50.

On March 2, 2026, the Court issued an order on defendants' and intervenors' motions to dismiss and motion for judgment on the pleadings. Dkt. 62 ("March 2, 2026 Order"). The Court (1) granted defendants' and intervenors' motion to dismiss as to plaintiff's express preemption claim, with prejudice; (2) granted defendants' and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | July 13, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

intervenors' motion to dismiss as to plaintiff's implied preemption claim, with prejudice; (3) granted defendants' and intervenors' motion to dismiss as to plaintiff's dormant Commerce Clause claim, dismissing plaintiff's claim based on a "lead time" theory with prejudice and dismissing plaintiff's claim based on the "slaughterhouse exception" without prejudice; (4) granted defendants' and intervenors' motion to dismiss as to plaintiff's Due Process Clause claims under the Fourteenth Amendment, without prejudice; and (5) granted defendants' and intervenors' motion to dismiss as to plaintiff's Import Export Clause claim, with prejudice. Id. at 28-29.

On March 17, 2026, plaintiff filed a first amended complaint. Dkt. 67 ("FAC").

On April 14, 2026, defendants filed the instant motion to dismiss plaintiff's FAC. Dkt. 72 ("Mot. by defendants"). The same day, the First Intervenors and the Second Intervenors filed the instant motions to dismiss plaintiff's first amended complaint. Dkts. 71 ("F. Int. Mot."), 73 ("S. Int. Mot."). On May 26, 2026, plaintiff filed oppositions to the defendants' and intervenors' motions to dismiss. Dkt. 81 ("Opp. to Mot. by defendants"); Dkt. 82 ("Opp. to F. Int. Mot."); Dkt. 83 ("Opp. to S. Int. Mot."). On June 12, 2026, defendants filed a reply. Dkt. 86 ("Reply by defendants"). The same day, the First Intervenors and the Second Intervenors filed replies. Dkt. 85 ("Reply by F. Int."); Dkt. 86 (Reply by S. Int.").

On July 13, 2026, the Court held a hearing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

The following facts are as alleged in the complaint or from the statutes and regulations referenced in the first amended complaint. See FAC.

### A. The Parties

Triumph is a pork processor and distributor, regulated under the FMIA by the U.S. Department of Agriculture ("USDA") and the Food Safety and Inspection Service ("FSIS"). FAC ¶ 15. Triumph is headquartered in St. Joseph, Missouri, and largely receives its supply of pigs from its farmer owners and other independent pig farmers. Id. Triumph processes pigs into pork and the pork is sold directly and indirectly to customers in California. Id. Triumph is also known as a "slaughterhouse" and is one of the largest

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | July 13, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

distributors of pork products in the United States.  Id.  Triumph contracts with the farmers to obtain, inspect, buy, and process their pigs to create pork products.  Id.

Defendants Rob Bonta, Karen Ross, and Erica Pan are sued in their official capacities as the Attorney General of California, the Secretary of CDFA, and the Director of CDPH, respectively.  Id. ¶¶16-18.

### B.     The FMIA

In 1906, Congress enacted the FMIA, 21 U.S.C. §§ 601-695.  FAC ¶ 22.  "The act provides an elaborate system of inspection of animals before slaughter, and of carcasses after slaughter and of meat-food products, with a view to prevent the shipment of impure, unwholesome, and unfit meat and meat-food products in interstate and foreign commerce."  Pittsburgh Melting Co v. Totten, 248 U.S. 1, 4-5 (1918).  "[USDA's FSIS] has responsibility for administering the FMIA to promote its dual goals of safe meat and humane slaughter."  Nat'l Meat Ass'n v. Harris, 565 U.S. 452, 456 (2012).

Triumph alleges that "[e]nsuring that pigs do not enter and pork is not delivered from a plant that is at risk for 'foodborne illness' is a role specifically assigned to the USDA and FSIS through the Congressional enacted statutory requirements imposed by the FMIA."  FAC ¶ 28.  Triumph alleges that in order to become a pork processor that is allowed to process, sell, and ship pork products into and through interstate commerce, the pork processor must be inspected and approved by FSIS through an Application for Federal Inspection and, following inspection, through receipt of a Grant of Inspection. Id. ¶ 29 (citing 9 C.F.R. §§ 304.1304.3).   Triumph alleges that the facility and its operations then become an "FMIA establishment."  Id.  According to Triumph, there are approximately 1,118 pork processing facilities inspected and approved by the FSIS in the United States, 34 of which are located in California.  Id. ¶ 30 (citing FSIS Inspected Establishments, available at https://www.fsis.usda.gov/inspection/fsisinspected-establishments (last visited September 22, 2025)).

### C.     California Voters Enact Proposition 2 (2008)

In the November 2008 election, California voters passed Proposition 2, a ballot initiative intended to "prohibit the cruel confinement of farm animals."  FAC ¶ 79. Proposition 2 required in-state pig farmers to house breeding pigs in a manner that permitted the animals to "turn around freely, lie down, stand up, and fully extend their limbs."  Id. (citing Cal. Health & Safety Code § 25990(a)).  Proposition 2 did not subject

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | July 13, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

out-of-state pork producers to this requirement and gave in-state pork producers more than six years to comply with the requirement, with an effective date of January 1, 2015. Id. ¶¶ 80 (citing Cal. Health & Safety Code § 25990).

### D.    California Voters Enact Proposition 12 (2018)

In the November 2018 election, California voters passed Proposition 12 to amend §§ 25990-93 of the California Health and Safety Code. FAC ¶ 81. Proposition 12 prohibits the sale within California of "[w]hole pork meat" that a seller "knows or should know is the meat of a covered animal who was confined in a cruel manner, or is the meat of the immediate offspring of a covered animal that was confined in a cruel manner." Cal. Health & Safety Code § 25990. The statute defines "confined in a cruel manner" to include confining any covered animal in a manner that "prevents the animal from lying down, standing up, fully extending the animal's limbs, or turning around freely," or "confining a breeding pig with less than 24 square feet of useable floorspace per pig." Id. at § 25991(e). Proposition 12 deems a sale as one that occurs in California "where the buyer takes physical possession" of the meat at issue in California. See id. ¶ 137 (citing Cal. Health & Safety Code § 25991(o)). The definition of "sale" excludes any sale undertaken at an establishment at which mandatory inspection is provided under the FMIA. Cal. Health & Safety Code § 25991(o). Plaintiff refers to this exclusion as the "slaughterhouse exception." FAC ¶ 138.

Triumph alleges that under this slaughterhouse exception, a California FMIA-inspected slaughterhouse may sell noncompliant whole pork meat—i.e., pork derived from breeding pigs that do not meet Proposition 12's Turn Around Requirements or Square Footage Requirements—directly from the slaughterhouse's premises in California to a buyer who takes physical possession at that facility, without violating Proposition 12. Id. ¶ 139. Triumph alleges that California has approximately 34 FMIA-inspected establishments that are capable of utilizing the slaughterhouse exception for on-site sales of non-compliant whole pork meat. Id. ¶ 140. By contrast, Triumph is an FMIA-inspected establishment located in St. Joseph, Missouri; Triumph has no slaughterhouse operations or FMIA-inspected facilities in California and cannot receive the benefit of the slaughterhouse exception. Id. ¶ 141.

Plaintiff alleges that the slaughterhouse exception burdens interstate commerce by imposing compliance costs on out-of-state FMIA-inspected establishments like Triumph, id. ¶¶ 143-147, 150-153, and by increasing the prices of pork meat for consumers in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | July 13, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

California.  Id. ¶¶ 148-149.  Plaintiff alleges that the slaughterhouse exception "shifts competitive market share toward California's in-state FMIA-inspected establishments relative to out-of-state FMIA-inspected processors like Triumph by effectively reducing the compliance cost burden on in-state sellers for any transactions occurring on their California premises, while leaving out-of-state FMIA-inspected processors to bear the full weight of the compliance regime for all California-bound transactions."  Id. ¶ 153.

Any person who violates Proposition 12 is guilty of a misdemeanor punishable by a fine of up to $1,000 and up to 180 days imprisonment.  Cal. Health & Safety Code § 25993(b).  Additionally, violating Proposition 12 constitutes unfair competition, as defined by Cal. Bus. & Prof. Code § 17200.  Id. at § 25993(b).

**E.      Proposition 12 Regulations**

On May 28, 2021, the CDFA published draft rules and regulations for Proposition 12, which became final on September 1, 2022.  FAC ¶ 101 (citing Cal. Code Regs. tit. 3, §§ 1322-1327.3).

**1.      Registration Requirements**

Under the Regulations, beginning January 1, 2024, "any person engaged in business in the state as a pork producer, or any out-of-state pork producer that is keeping, maintaining, confining, and/or housing a breeding pig for purposes of producing whole pork meat, from the breeding pig or its immediate offspring, for human food for commercial sale in California, shall hold a valid certification issued pursuant to Article 5 of [the Regulations] as a certified operation."  Cal. Code Regs. tit. 3, § 1322.1  Also under the Regulations, beginning January 1, 2023, "any in-state or out-of-state person engaged in a commercial sale into or within the state as a pork distributor, shall hold a valid registration with the Department pursuant to this Article."  Id. at § 1322.2(a).  This registration must be renewed annually.  Id. at § 1322.2(j).

**2.      Labelling Requirements**

The Regulations also include labelling requirements.  See Cal. Code Regs. tit. 3, § 1322.4.  "All documents of title and shipping manifests for shipments of whole pork meat entering the state or transported within the state for commercial sale in California shall include the statement 'Pork CA Prop 12 Compliant'."  Id. at § 1322.4(a).  Whole pork meat entering California that is not produced in compliance with Proposition 12 that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | July 13, 2026 |
|----------|------------------------|------|---------------|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

is destined for sale to federal agencies or on tribal lands and not for commercial sale in California, must be labeled "For Export," "For Transshipment," or "Not Prop 12 Compliant." Id.

> 3.      Inspection, Seizure, and Tagging

The CDFA may stop any vehicle or other conveyance transporting whole pork meat into or within the state, for the purposes of inspection of cargo and any accompanying shipping documents, manifests, and bills of lading. Id. at § 1322.6(b). The CDFA "may seize and hold any containers, sub-containers, lots or loads of whole pork meat in California which they have reasonable suspicion to believe is in violation of [Proposition 12]," and issue a hold notice to the person having control of the whole pork meat. Id. at § 1322.7(c). "Any whole pork meat for which a hold notice is issued shall be held by the person having control of the whole pork meat and shall not be disturbed, moved, diverted, or offered for sale except under the specific directions of the [CDFA]." Id. at § 1322.7(d). "A person may request an informal hearing to contest tagging, hold notice, or seizure of whole pork meat pursuant to [the Regulations]." Id. at § 1322.7(e). The CDFA "may affix a warning tag or notice to shipping documents, manifests, containers, sub-containers, lots, or loads of whole pork meat which have been produced, packaged, stored, labeled, marked, identified, transported, delivered, or sold in violation of [Proposition 12]." Id. at § 1322.7(a)

## III.   LEGAL STANDARD

### A.   Rule 12(b)(1) Motion

A motion to dismiss an action pursuant to Fed. R. Civ. P. 12(b)(1) raises the objection that the federal court has no subject matter jurisdiction over the action. This defect may exist despite the formal sufficiency of the allegations in the complaint. T.B. Harms Co. v. Eliscu, 226 F. Supp. 337, 338 (S.D.N.Y. 1964), aff'd 339 F.2d 823 (2d Cir. 1964). When considering a Rule 12(b)(1) motion challenging the substance of jurisdictional allegations, the Court is not restricted to the face of the pleadings, but may review any evidence, such as declarations and testimony, to resolve any factual disputes concerning the existence of jurisdiction. See McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).

Once a Rule 12(b)(1) motion has been raised, the burden is on the party asserting jurisdiction. Sopcak v. N. Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**               **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | July 13, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

1995); Ass'n of Am. Med. Coll. v. United States, 217 F.3d 770, 778-79 (9th Cir. 2000).  If jurisdiction is based on a federal question, the pleader must show that he has alleged a claim under federal law and that the claim is not frivolous.  See 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1350, pp. 211, 231 (3d ed. 2004).

**B.      Rule 12(b)(6) Motion**

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint.  Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them.  Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998).  The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.").  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | July 13, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials).  In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201.  In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted.  Fed. R. Civ. P. 15(a).  However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV.   DISCUSSION

Defendants and intervenors argue that Triumph's FAC did not cure the deficiencies in its Commerce Clause claim or Due Process Clause claim.  See generally Mot. by defendants; F. Int. Mot.; S. Int. Mot.  The Second Intervenors further argue that Triumph lacks Article III standing to assert its amended Commerce Clause claim and Due Process Clause claim.  See generally S. Int. Mot.  The Court addresses the standing and sufficiency of allegations arguments in turn.

### A.   Standing

The Second Intervenors argue that Triumph lacks standing to assert its Due Process Clause claim because the FAC does not allege that it is currently noncompliant with Proposition 12, nor does it allege that it has suffered injury due to enforcement of Proposition 12.  S. Int. Mot. at 2.  They also argue that Triumph's Due Process Clause claim and Commerce Clause claim fail because Triumph does not plausibly allege that it is a seller of pork in California, given evidence that Triumph relies on a third party in California to sell pork in California.  See id. at 2-5.  The Second Intervenors further argue that Triumph's Commerce Clause claim fails because Triumph fails to allege that it "actually engages in sales at its FMIA-inspected facility."  Id. at 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | July 13, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

In opposition, Triumph argues that the Court already found that Triumph has standing.  Opp. to S. Int. Mot. at 4.  Triumph argues that it has plausibly alleged real and immediate threat of enforcement of Proposition 12 and its implementing regulations that would imminently injure plaintiff.  Id. at 5-7.

In reply, the Second Intervenors acknowledge that the Court has already found that Triumph has standing to pursue some of its claims under the original complaint but argue that Triumph cannot establish standing for its new due process theories of injury.  Reply by S. Int. at 1.  The Second Intervenors argue that plaintiff's "as applied" due process theory asserts injuries of "costly impacts on operations and facilities" and economic "unfair advantages" that are not cognizable.  See id. at 2.  Moreover, the Second Intervenors argue that plaintiff's void-for-vagueness theory fails to allege a cognizable injury because "[p]laintiff—the producer—simply cannot be injured by state seizure of downstream products."  Id.

The party asserting federal jurisdiction bears the burden of pleading and establishing Article III standing.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 562 (1992).  To have standing to bring a claim in federal court, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021) (citing Lujan, 504 U.S. at 560-561).  Here, the Court finds that Triumph's FAC sufficiently establishes Article III standing for its claims, regardless of whether it directly sells pork in California or only processes pork that is later sold by a third party in California, because Triumph alleges that it suffers or will imminently suffer economic and other injuries caused by the enforcement and implementation of Proposition 12 and the Regulations.  See generally FAC.  The Second Intervenors' arguments regarding the deficiencies of plaintiff's new theories for relief for the due process claim are better characterized as arguments regarding the merits of such theories, as opposed to arguments regarding the lack of imminence or concreteness of plaintiff's asserted injuries for purposes of standing.  Accordingly, the Court does not dismiss the complaint on standing grounds.

**B.      Commerce Clause**

This Court already found that Proposition 12 is not discriminatory because its slaughterhouse exception makes no distinction between in-state and out-of-state pork

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | July 13, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

processors. March 2, 2026 Order at 24.[1]  The Court further found that plaintiff cannot adequately allege that Proposition 12 was motivated by a discriminatory purpose. Id. ("Triumph acknowledges that the express purpose of Proposition 12 is 'to prevent animal cruelty by phasing out extreme methods of farm animal confinement, which also threaten the health and safety of California consumers, increase the risk of foodborne illness, and have negative fiscal impacts on the State of California.' Compl. ¶ 204.").  Nonetheless, the Court granted Triumph leave to amend its Commerce Clause claim because it was possible for Triumph to cure the deficiency of its Commerce Clause claim by alleging that the slaughterhouse exception in Proposition 12 imposed a significant burden on interstate commerce that is clearly excessive in relation to any putative local benefit. See id. at 28.

Defendants argue that Triumph has failed to cure its Commerce Clause claim because "[w]here 'a regulation does not regulate activities that inherently require a uniform system of regulation and does not otherwise impair the free flow of materials and products across state borders, there is not a significant burden on interstate commerce.'" Mot. by defendants at 8 (quoting Nat'l Ass'n of Optometrists & Opticians v. Harris, 682 F.3d 1144, 1154-55 (9th Cir. 2012)).  Defendants argue that even if the slaughterhouse exception imposes some burdens on FMIA-regulated, out-of-state processors like Triumph and causes a competitive market shift, "'[i]nterstate commerce is not subjected to an impermissible burden simply because an otherwise valid regulation causes some business to shift from one interstate supplier to another,' even if some sellers 'choose to withdraw entirely from the [California] market.'" Id. (quoting Exxon Corp. v. Governor

---

[1] The Court reasoned:

> That the [slaughterhouse] exception, in practical effect, only applies to sales on the premises of slaughterhouses located in California is immaterial because sales outside of California are not governed by Proposition 12. See Cal. Health & Safety Code§ 25991(0). Out-of-state slaughterhouses may also sell meat that is not Proposition 12-compliant directly from out-of-state facilities because Proposition 12's sales ban only applies to sales where the buyer takes physical possession of the pork within the state. See id. In sum, by prohibiting sales in California of noncompliant meat where a sale does not occur on the premises of a slaughterhouse, Proposition 12 does not treat out-of-state businesses, including pork processors, any differently than in-state businesses under the law.

March 2, 2026 Order at 24.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | July 13, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

of Md., 437 U.S. 117, 127-28 (1978)).  Defendants further argue that even if Triumph's "market shift theory" were relevant, "this theory is not plausibly supported" because "the FAC raises no more than an insufficient 'sheer possibility' that the slaughterhouse exception has any effect on pork commerce in California, much less a substantial burden on interstate commerce." Id. at 9 (citing Iqbal, 556 U.S. at 678).  Defendants argue that the FAC fails to allege that Proposition 12 and its slaughterhouse exception "has had the effect of impeding the flow of goods into [California]." Id. at 10.  They argue that Triumph's FAC relies on the incorrect assumption "that only out-of-state processors are required to comply with Proposition 12 … [rather,] Proposition 12 applies *only* to sales within California"; moreover, "the FAC never alleges that any in-state sales of noncompliant pork meat to an end-user within California have actually occurred on the premises of an FMIA-regulated facility." Id. at 11-12 (emphasis in original).

Defendants further argue that even if Proposition 12 and its slaughterhouse exception impose a substantial burden on interstate commerce, such burdens do not "clearly outweigh the local benefits arising from [the statute]," which aims to influence certain farming practices "that the [California] electorate deemed cruel to animals." Id. at 13-15.

In their motion to dismiss, the First Intervenors make similar arguments, including that the FAC fails to allege cognizable or substantial burdens on interstate commerce, F. Int. Mot. at 8, 9-14, and that the FAC "fails to allege that any slaughterhouse-floor sales are even *occurring* in California—let alone of noncompliant meat, in quantities significant enough to cause a 'substantial' burden on the entire interstate market." F. Int. Mot. at 7 (emphasis in original).

In opposition, Triumph argues that its FAC asserts facts that plausibly allege that Proposition 12 imposes a significant burden on interstate commerce.  Opp. to Mot. by defendants at 4-5.  Triumph argues that because Triumph's only FMIA-inspected establishment is in Missouri, Triumph is therefore incapable of availing itself of the slaughterhouse exception for any California sale unless it constructs a new California FMIA-inspected establishment. Id. at 5-6.  Triumph argues that "[t]he Slaughterhouse Exception thereby creates a regulatory asymmetry in which California's FMIA establishments may sell noncompliant Whole Pork Meat on-site without liability, while out-of-state FMIA establishments are subject to Proposition 12 for every transaction in which their pork enters California and transfers title to a buyer." Id. at 6.  Triumph argues that "[t]his asymmetry imposes a discriminatory, significant and substantial

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | July 13, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

burden on interstate commerce." Id. at 6.  Specifically, Triumph argues that "[t]he nature of the burden here—compelling an out-of-state processor either to construct California facilities or to bear asymmetric compliance burdens that in-state competitors avoid entirely for on-site sales—is constitutionally significant. It is the structural character of the regulatory asymmetry, not merely its magnitude, that renders the burden constitutionally suspect." Id. at 8.  Triumph argues that it "is not required to prove its Pike claim at this stage—only to plausibly allege facts from which such a burden can be inferred," and that Triumph has done so. Id. at 8-9.  Triumph further argues that its "market-share shift theory" of injury is cognizable under Pike because the "competitive advantage conferred by the Slaughterhouse Exception" does not result from "'natural conditions' of geographic proximity" but rather is the product of "geographic asymmetry [that] is a structural feature of the regulatory scheme itself." Id. at 10-11.

Triumph also argues that it has adequately alleged a Commerce Clause claim because "[t]here is no legitimate local benefit that justifies this differential treatment" because "[t]he Slaughterhouse Exception does not advance Proposition 12's stated goals of preventing animal cruelty or protecting California consumers' health and safety; it expressly permits noncompliant Whole Pork Meat to be sold within California, so long as the sale occurs on-premises at a California FMIA establishment. The exception was drafted not to advance any animal welfare or public health purpose, but solely to sidestep federal preemption concerns [arising from the FMIA]." Id. at 12-13.

Triumph also argues that the Supreme Court's decision in National Pork Producers Council v. Ross, 598 U.S. 356 (2023), and subsequent Ninth Circuit authority do not foreclose Triumph's claim because "those cases addressed Proposition 12's general compliance requirements, not the distinct constitutional question raised here: whether the Slaughterhouse Exception creates an asymmetric regulatory burden that violates Pike." Id. at 14.

In reply, defendants argue that Triumph's "market-share shift" theory of injury fails to state a Commerce Clause claim under Pike "because the dormant Commerce Clause does not protect individual out-of-state firms from burdensome regulations like Proposition 12; it protects only the interstate 'flow' of goods in the market as a whole." Reply by defendants at 3 (citing Exxon Corp. v. Governor of Maryland, 437 U.S. 117, 126 (1978)).  Defendants argue that Exxon forecloses Triumph's "market-share shift" theory because the Supreme Court there held that a Maryland statute which provided that a producer or refiner of petroleum products could "not operate any civil retail service

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | July 13, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

station within the State"—and which disproportionately affected out-of-state companies because no petroleum products were produced or refined in Maryland—did not impermissibly burden interstate commerce.  Id. at 3-4.  The Exxon court reasoned that "the [dormant Commerce] Clause protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulations," and that there was no impermissible burden on interstate commerce "simply because an otherwise valid regulation causes some business to shift from one interstate supplier to another."  Exxon, 437 U.S. at 127-28.  Defendants argue that similarly, here, "[t]he dormant Commerce Clause protects the interstate pork industry; it does not protect Triumph, out-of-state FMIA-regulated entities like Triumph."  Reply by defendants at 4.  Defendants argue that because "Triumph does not [allege] anywhere that there is any disruption to the flow of pork products due to the slaughterhouse exception" and "[alleges] only that market share will shift from entities like itself to those who sell pork meat at FMIA-regulated facilities in California," Triumph fails to state a Commerce Clause claim under Pike.  Id.

In reply, the First Intervenors make similar arguments as defendants.  Reply by F. Int. at 10-15.  They also repeat their argument that Triumph has failed to allege a significant burden on interstate commerce because "it has failed to allege the existence (past, present, or future) of *any* on-site … sales of noncompliant meat [in any California slaughterhouse]."  Id. at 6.  The First Intervenors argue that Triumph's USDA data "gap" argument—that there is a gap between compliant pork entering California and the volume residents consume, which may be evidence of in-state processors exercising the slaughterhouse exception to sell noncompliant pork—fails because it is "purely speculative" and "makes no mention of the existence of any such sales at all."  Id. at 8.

"The Supreme Court has adopted a 'two-tiered approach to analyzing state economic regulation under the Commerce Clause.'"  Éleveurs, 729 F.3d at 948 (quoting Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth., 476 U.S. 573, 578–79 (1986)).  On the one hand, state regulations that (1) "discriminate against interstate commerce" or (2) "directly regulat[e] extra-territorial conduct" are generally "struck down . . . without further inquiry."  Id. at 948-49 (quoting Brown-Forman); see also Dakota v. Wayfair, Inc., 138 S. Ct. 2080, 2091 (2018) (explaining that such laws "face a virtually *per se* rule of invalidity").  However, state regulations that (3) "regulate even-handedly to effectuate a legitimate local public interest . . . will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."  Wayfair, Inc., 138 S. Ct. at 2091 (quoting Pike v. Bruce Church, Inc., 397 U.S.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | July 13, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

137, 142 (1970)); see also Energy & Env't Legal Inst. v. Epel, 793 F.3d 1169, 1171 (10th Cir. 2015) (Gorsuch, J.) (explaining that "dormant commerce clause cases are said to come in [these] three varieties").

Because Proposition 12, including its slaughterhouse exception, does not discriminate against interstate commerce[2] or directly regulate extra-territorial conduct,[3] the Court analyzes whether Triumph's FAC adequately alleges that the statute imposes a substantial burden on interstate commerce that is "clearly excessive in relation to the putative local benefits." Pike, 397 U.S. 137, 142.

"Under Pike, a plaintiff must demonstrate that a challenged law imposes a 'substantial' or 'significant' burden on interstate commerce before Pike balancing can occur." Flynt v. Bonta, 131 F.4th 918, 925 (9th Cir. 2025), cert. denied, 223 L. Ed. 2d 506 (Jan. 12, 2026). Invalidating a state law under the dormant Commerce Clause "is a matter of extreme delicacy, something courts should do only where the infraction is clear." Ross, 598 U.S. at 390 (internal quotation marks omitted). Demonstrating that a state law violates the Commerce Clause under Pike is a "heavy burden: the Supreme Court has not invalidated a law under Pike in more than 30 years." Flynt, 131 F.4th at 931 (internal quotation marks omitted).

"[M]ost statutes that impose a substantial burden on interstate commerce do so because they are discriminatory" or purport to regulate extraterritorially. Eleveurs, 729 F.3d at 952. "[L]ess typically," courts have found that non-discriminatory, non-extraterritorial statutes may still "impose significant burdens on interstate commerce" when they cause the "'inconsistent regulation of activities that are inherently national or require a uniform system of regulation.'" Id. (quoting Optometrists, 682 F.3d at 1148). The need for uniformity generally arises in challenges to laws affecting "interstate

---

[2] March 2, 2026 Order at 24.

[3] "[S]tate laws that regulate only conduct in the state, including the sale of products in the state, do not have impermissible extraterritorial effects. A state law may require out-of-state producers to meet burdensome requirements in order to sell their products in the state without violating the dormant Commerce Clause." Nat'l Pork Producers Council v. Ross, 6 F.4th 1021, 1029 (9th Cir. 2021), aff'd, 598 U.S. 356 (2023) (citations omitted). Here, Proposition 12 regulates the farming practices of pork that may be sold in California. Cal. Health & Safety Code § 25990(b). Proposition 12 does not directly regulate extra-territorial conduct. Ross, 6 F.4th at 1029.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-09063-CAS-AJRx | Date | July 13, 2026 |
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

transportation"—such as cases that cause "disruption of travel and shipping," <u>Pac. Nw. Venison Producers v. Smitch</u>, 20 F.3d 1008, 1015 (9th Cir. 1994)—as well as cases involving sports leagues. <u>See</u> <u>Eleveurs</u>, 729 F.3d at 952 (observing that "examples of 'courts finding uniformity necessary' fall into the categories of 'transportation' or 'professional sports leagues'") (citing <u>Valley Bank of Nevada v. Plus Sys., Inc.</u>, 914 F.2d 1186, 1192 (9th Cir. 1990)). The Ninth Circuit has held that "a regulation [which] [1] does not regulate activities that inherently require a uniform system of regulation and [2] does not otherwise impair the free flow of materials and products across state borders … is not a significant burden on interstate commerce." <u>Optometrists</u>, 682 F.3d at 1154–55.

As an initial matter, the Court finds—and Triumph does not appear to contest—that Triumph does not allege that there is a "compelling need for national uniformity in regulation" of pig-farming practices; rather, "[t]he 'small number' of cases dealing with 'activities that are inherently national or require a uniform system of regulation' generally concern taxation or interstate transportation." <u>Eleveurs</u>, 729 F.3d at 1031.

Instead, Triumph alleges that Proposition 12 and its slaughterhouse exception substantially burdens interstate commerce by: (1) asymmetrically increasing compliance costs and operational disruption burdens on FMIA-inspected, out-of-state meat processors like Triumph who, unlike in-state meat processors, cannot avail themselves of the exception because they do not have meat processing facilities in California, FAC ¶¶ 145, 150; (2) increasing the prices of pork products sold in California, <u>see</u> <u>id.</u> ¶ 148; (3) causing a "shift [in] competitive market share toward California's in-state FMIA-inspected establishments relative to out-of-state FMIA-inspected processors like Triumph," <u>id.</u> ¶ 153; and (4) causing a "sharp decline in pork volume sales in California and a 2-3% decline in California's share of national fresh pork sales." <u>Id.</u> ¶ 149.

The Court finds that Triumph adequately alleges that Proposition 12 and its slaughterhouse exception substantially burden interstate commerce by causing a "shift [in] competitive market share toward California's in-state FMIA-inspected establishments relative to out-of-state FMIA-inspected processors like Triumph," <u>id.</u> ¶ 153, and which has caused a "sharp decline in pork volume sales in California and a 2-3% decline in California's share of national fresh pork sales."[4] <u>Id.</u> These allegations,

---

[4] Triumph's other allegations in support for its claim that Proposition 12 and its slaughterhouse exception substantially burden interstate commerce fail as a matter of law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | July 13, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

which must be taken as true at the pleading stage, adequately allege that Proposition 12 "impair[s] the free flow of materials and products across state borders" and is "a significant burden on interstate commerce." Optometrists, 682 F.3d at 1154–55. See also Exxon, 437 U.S. at 126 (The Commerce Clause prohibits state laws that "impede the flow of interstate goods.").

The Commerce Clause "protects the interstate market, not particular interstate firms, from burdensome regulations." Flynt v. Bonta, 131 F.4th 918, 932-33 (9th Cir. 2025). Thus, the Commerce Clause does not protect a "particular structure or methods of operation in a retail market," and "interstate commerce is not subjected to an impermissible burden simply because an otherwise valid regulation causes some business to shift from one interstate supplier to another," and even if some sellers "choose to withdraw entirely from the [California] market." Exxon, 437 U.S. at 117, 127. See also Optometrists, 682 F.3d at 1153 (in determining whether a state law imposes a substantial burden on interstate commerce, courts analyze the law's impact on the "interstate flow of goods, not on where the retailers were incorporated, what the out-of-state market shares of sales and profits were, or whether competition would be affected by the statute."). However, "[a] facially neutral statute can [nonetheless] violate the Commerce Clause if it effectuates 'differential treatment of in-state and out-of-state interests that benefits the former and burdens the latter.'" Am. Fuel & Petrochemical Manufacturers v. O'Keeffe, 903 F.3d 903, 913 (9th Cir. 2018) (quoting Oregon Waste Sys., Inc. v. Dep't of Env't Quality of State of Or., 511 U.S. 93, 99 (1994)). See also Ross, 598 U.S. 356, 377 (2023)

---

First, Ninth Circuit precedent forecloses Triumph's claim that Proposition 12 impermissibly increases compliance costs and operational disruption burdens on FMIA-inspected, out-of-state meat processors like Triumph. Burlington N. R.R. Co. v. Dep't of Pub. Serv. Regul., 763 F.2d 1106, 1114 (9th Cir. 1985) ("[A] loss to [some specific market participants] does not, without more, suggest that the [state] statute impedes substantially the free flow of commerce from state to state."); Ross, 6 F.4th at 1032 ("For dormant Commerce Clause purposes, laws that increase compliance costs, without more, do not constitute a significant burden on interstate commerce."). Moreover, Triumph's allegations that increased consumer costs resulting from Proposition 12 constitute a substantial burden on interstate commerce are insufficient. Ross, 598 U.S. at 386 ("[N]o one thinks that costs ultimately borne by in-state consumers thanks to a law they adopted counts as a cognizable harm under our dormant Commerce Clause precedents.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | July 13, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

("[I]f some of our cases focus on whether a state law discriminates on its face, the Pike line serves as an important reminder that a law's *practical effects* may also disclose the presence of a discriminatory purpose.") (emphasis added).

Here, Triumph's FAC adequately alleges that Proposition 12's slaughterhouse exception substantially burdens the interstate market and the interstate flow of goods. Triumph alleges *not* that the slaughterhouse exception has caused a neutral shift in business from one interstate supplier to another in a nondiscriminatory manner; rather, Triumph alleges that the slaughterhouse exception "creates a structurally asymmetric regulatory regime" that disproportionately and substantially burdens out-of-state FMIA-inspected pork processors like Triumph who do not own any FMIA-inspected establishments in California and therefore—unlike in-state processors who have FMIA-inspected establishments in California—are "structurally and categorically incapable of availing [themselves] of the [s]laughterhouse [e]xception." FAC ¶ 144. Triumph alleges that the slaughterhouse exception "thereby shifts competitive market share toward California's in-state FMIA-inspected establishments relative to out-of-state FMIA-inspected processors like Triumph." Id. ¶ 153. Moreover, Triumph alleges that "[t]his market-share shift has already occurred and is ongoing," as evidenced by "a gap between the amount of Proposition 12 compliant pork coming into California and how much pork residents are eating." Id. ¶¶ 154-55. These allegations sufficiently state that Proposition 12's slaughterhouse exception violates the Commerce Clause by "effectuat[ing] 'differential treatment of in-state and out-of-state interests that benefits the former and burdens the latter.'" Am. Fuel & Petrochemical Manufacturers, 903 F.3d at 913.

The Court disagrees with defendants' argument that the FAC fails to plausibly allege facts in support of Triumph's market-share shift theory. At the motion-to-dismiss stage, the Court must accept all non-conclusory allegations as true and make all reasonable inferences in plaintiff's favor. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). Thus, Triumph need not specifically allege that in-state sales of non-compliant pork have in fact occurred on the premises of an FMIA-regulated facility in California. Rather, given Triumph's allegations described above—including the allegations that "California has approximately 34 FMIA-inspected establishments … [which] are capable of utilizing the [s]laughterhouse [e]xception," FAC ¶ 140, whereas "Triumph, and other out-of-state FMIA-inspected establishments, cannot receive the benefit of the [s]laughterhouse [e]xception on the face of the statute," id. ¶ 141—the Court may reasonably infer that Proposition 12 is alleged to effectively impose a discriminatory

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | July 13, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

burden on the interstate market.  Moreover, Triumph alleges that such burden is "significant and substantial," id. ¶ 146, and has caused a "sharp decline in pork volume sales in California and a 2-3% decline in California's share of national fresh pork sales." Id. ¶ 153.  Movants' factual disputes to Triumph's allegations that the slaughterhouse exception imposes a substantial burden on interstate commerce are more appropriately resolved on a motion for summary judgment, not on a motion to dismiss.  See N. Am. Meat Inst. v. Becerra, No. 219CV08569CASFFMX, 2020 WL 919153, at *8 (C.D. Cal. Feb. 24, 2020) ("[Plaintiff's] allegations [in support of its Commerce Clause claim] may or may not be true, but for the purposes of the pending motions [to dismiss and on the pleadings], the Court is required to accept them on their face.").  Accordingly, Triumph adequately alleges that the slaughterhouse exception imposes a substantial burden on interstate commerce.

At the hearing, counsel for defendants made a further argument that the slaughterhouse exception and its implementing regulations, by their terms,[5] foreclose the possibility that noncompliant pork products may be sold in California and renders implausible plaintiff's allegation that the exception imposes a substantial burden on interstate commerce.  Counsel argued that because the location of a "sale" of whole pork meat is defined by Proposition 12 and its implementing regulations as the location where "whole pork meat is delivered to the buyer in California," effectively no noncompliant pork products can be sold to buyers in California under the slaughterhouse exception.

---

[5] Proposition 12 prohibits the sale within California of "[w]hole pork meat" that a seller "knows or should know is the meat of a covered animal who was confined in a cruel manner, or is the meat of the immediate offspring of a covered animal that was confined in a cruel manner."  Cal. Health & Safety Code § 25990.  Proposition 12 defines "sale" as "a commercial sale by a business … but does not include any sale undertaken at an establishment at which mandatory inspection is provided under the [FMIA] …."  Id. § 25991(o).  Moreover, "a sale shall be deemed to occur at the location where the buyer takes physical possession of [an item regulated by Proposition 12]."  Id.  Pursuant to Proposition 12's implementing regulations, "'[t]akes physical possession' … means when the whole pork meat is delivered to the buyer in California, regardless of whether the title transfer takes place outside of the state, whether the seller and buyer have provided otherwise by a contract, or whether an agent of the buyer accepts the whole pork meat outside of the state for transportation into California."  Cal. Code Regs. Tit. 3, § 1322(bb).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | July 13, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

The Court is unpersuaded by counsel's argument. Nothing in Proposition 12 or its implementing regulations foreclose the possibility that noncompliant pork products may be "delivered to the buyer in California" at an FMIA-inspected establishment, such that pork producers with in-state FMIA establishments may take advantage of the slaughterhouse exception. Pursuant to the slaughterhouse exception and implementing regulations, a buyer may lawfully purchase noncompliant pork in California so long as the pork is "delivered to the buyer" at an FMIA-inspected establishment. See Cal. Health & Safety Code § 25991(o); Cal. Code Regs. Tit. 3, § 1322(bb). While Proposition 12 and its regulations may foreclose the possibility of certain buyers—such as grocery store customers—purchasing noncompliant pork in California, other buyers—including restaurants or other businesses—may purchase noncompliant pork in California if such pork is physically delivered to them at an FMIA-inspected establishment in California.

At the hearing, counsel for the First Intervenors made a further argument that Proposition 12 does not plausibly impose a significant burden on interstate commerce because the statute effectively requires that every sale of noncompliant pork in California, pursuant to the slaughterhouse exception, must be produced from pigs originating from outside California; counsel argued that this is so because Proposition 12 independently requires that "[a] farm owner or operator within [California] shall not knowingly cause any covered [pig] to be confined in a cruel manner." Cal. Health & Safety Code § 25990. Counsel for the First Intervenors argued that the slaughterhouse exception therefore does not plausibly impose a significant burden on interstate commerce by asymmetrically advantaging in-state pork producers because they must import noncompliant pork into California to avail themselves of the slaughterhouse exception. Counsel contends that Proposition 12's independent requirement that covered pigs in California be raised in a non-cruel manner neutralizes the alleged advantage conferred to in-state pork producers and alleviates the alleged burden on interstate commerce. The Court is unpersuaded by counsel's argument because it relies on findings of fact not properly resolved on a motion to dismiss. Triumph has adequately alleged that the slaughterhouse exception creates a structurally asymmetric regulatory regime that disproportionately and substantially burdens out-of-state FMIA-inspected pork processors like Triumph relative to in-state pork processors who operate FMIA-inspected establishments in California. Whether this allegation can be substantiated is more properly resolved on a motion for summary judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | July 13, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

Moreover, the Court finds that Triumph adequately alleges that the substantial burden on interstate commerce imposed by the slaughterhouse exception is clearly excessive in relation to the statute's putative local benefits. See FAC ¶¶ 156, 263-264. Triumph alleges that "[t]here is no legitimate local benefit that justifies [Proposition 12's slaughterhouse exception] … [which] does not advance Proposition 12's stated goals of preventing animal cruelty or protecting California consumers' health and safety; to the contrary, it expressly permits noncompliant Whole Pork Meat—derived from breeding pigs confined in conditions that the Act characterizes as cruel—to be sold within California, so long as the sale happens to occur on-premises at a California FMIA establishment." Id. ¶ 156. Moreover, Triumph alleges that "the local benefits of Proposition 12's overall framework—to the extent they exist—do not justify the specific … burden created by the Slaughterhouse Exception." Id. ¶ 264. Construing these allegations in the light most favorable to Triumph, the nonmoving party, the Court finds that they adequately plead that the substantial burden on interstate commerce caused by Proposition 12 is clearly excessive in relation to the statute's putative local benefits.

Factual disputes as to whether Proposition 12's burdens on interstate commerce are clearly excessive in relation to the statute's local benefits are more appropriately resolved on a motion for summary judgment, not a motion to dismiss. See Rhode v. Becerra, 342 F. Supp. 3d 1010, 1016 (S.D. Cal. 2018) ("[T]he degree of burden and how it compares to the benefits of Proposition 63 are predominantly fact questions that are not ripe for a motion to dismiss."); Dep't of Revenue of Ky. v. Davis, 553 U.S. 328, 353 (2008) ("[W]e generally leave the courtroom door open to plaintiffs invoking the rule in Pike, that even nondiscriminatory burdens on commerce may be struck down on a showing that those burdens clearly outweigh the benefits of a state or local practice."). To the extent that movants rely on Black Star Farms LLC v. Oliver, 600 F.3d 1225 (9th Cir. 2010), in support of their motions to dismiss, the decision is inapposite because it affirmed a district court order granting summary judgment in favor of defendant on plaintiffs' Commerce Clause claim. In rejecting plaintiffs-appellants' Pike challenge to the Arizona statute at issue in the case,[6] the Ninth Circuit expressly relied on the district court's findings of fact that "there is no indication whatsoever that the [Arizona statute's] in-

---

[6] In Black Star, the Ninth Circuit upheld an Arizona statute that generally prohibited the direct shipment of wine to consumers but permitted all wineries to ship directly to consumers if they purchased the wine while physically present at the winery (the "in-person purchase exception"). 600 F.3d 1225, 1234 (9th Cir. 2010).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | July 13, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

person exception has any effect on the flow of interstate commerce"; that "[p]laintiffs proffer[ed] no *evidence* that [the in-person purchase exception] erects a barrier to Arizona's wine market that in effect creates a burden that alters the proportional share of the wine market in favor of in-state wineries, such that out-of-state wineries are unable to effectively compete in the Arizona market"; and that plaintiffs had failed to offer "substantial *evidence* of an actual discriminatory effect." Id. at 1231 (emphases added). By contrast, here, on a motion to dismiss, similar facts appear to be in dispute and thus preclude the Court from granting the instant motions to dismiss Triumph's Commerce Clause claim based on the alleged discriminatory effect of the slaughterhouse exception.

The Court further notes that the Supreme Court's decision in National Pork Producers Council v. Ross, 598 U.S. 356 (2023), does not foreclose Triumph's Commerce Clause claim here because the Supreme Court in that case did not address the constitutionality of Proposition 12's slaughterhouse exception; there, the Supreme Court rejected the petitioner's Pike challenge to Proposition 12 on the basis that "the facts pleaded in [the petitioner's] complaint merely allege[d] harm to some producers' favored 'methods of operation'" and because "[a] substantial harm to interstate commerce remain[ed] nothing more than a speculative possibility," given such allegations. Id. at 386. Here, by contrast, Triumph's Pike claim adequately alleges a substantial burden on interstate commerce caused by Proposition 12's slaughterhouse exception. See id. at 410 (Kavanaugh, J., concurring) ("[P]roperly pled dormant Commerce Clause challenges under Pike to laws like California's Proposition 12 (or even to Proposition 12 itself) could succeed in the future—or at least survive past the motion-to-dismiss stage.").

Accordingly, the Court **DENIES** defendants' and the intervenors' motions to dismiss Triumph's Commerce Clause claim.

### C.    Due Process Clause

The Court previously found that Triumph failed to adequately allege that Proposition 12 and its implementing regulations are unconstitutionally vague. Dkt. 62 at 28. Nonetheless, the Court granted Triumph leave "to assert additional allegations that the [Proposition 12] Regulations create facial vagueness and/or to assert an 'as applied' Due Process Clause claim." Id.

In its FAC, Triumph alleges that Proposition 12 is vague on its face and as applied to Triumph because it "does not define who the 'operators' are within a[] [FMIA-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | July 13, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

regulated] establishment," because it "does not provide clarity on who is deemed to have 'engaged in' th[e] sale [of noncompliant Whole Pork Meat in California commerce]," and because there is "uncertainty [in] what it means to be able to comply with [the statute's] 'Turn Around Provision,'" given that "different sized pigs need different size pens to turn around or move." FAC ¶¶ 291-94.

As to the Proposition 12 regulations, Triumph alleges that the terms "commercial sale" and "in California commerce" in the Regulations are unconstitutionally vague. See id. ¶¶ 300-06. Triumph further alleges that the "Regulations governing the CDFA's inspection, seizure, hold, and tagging procedures"—which authorize the CDFA to seize, hold, and affix a warning tag or notice to any load of Whole Pork Meat upon a finding of "reasonable suspicion"—are unconstitutionally vague because the Regulations offer "no definition of what constitutes 'reasonable suspicion' in this enforcement context." Id. ¶¶ 307-12. Triumph alleges because "Proposition 12 and its Regulations lack sufficient definiteness and specificity," they are unconstitutionally vague as applied to Triumph. Id. ¶ 323-24.

Defendants argue that none of Triumph's allegations state a cause of action for a Due Process Clause violation. Mot. by defendants at 16. First, they argue that the "reasonable suspicion" standard has been applied in numerous regulatory contexts and is not void for vagueness. Id. at 17 (citing cases). Second, defendants argue that the term "operator" is not unconstitutionally vague because "[t]he concept of operating a business is well-established." Id. Third, they argue that Proposition 12's "Turn Around Provision" is not impermissibly vague because the statute's implementing regulations specifies the following: "[a]n enclosure shall allow the breeding pig to lie down, stand up, fully extend limbs, and turn around freely." Cal. Code Regs. tit. 3, div. 2, ch. 10 § 1322.1(a)(1); see also Cal. Health & Safety Code § 25991(e)(1). Moreover, "[a]n enclosure shall provide a minimum of 24 square feet of usable floorspace per breeding pig." Cal. Code Regs. tit. 3, div. 2, ch. 10 § 1322.1(a)(2); see also Cal. Health & Safety Code § 25991(e)(3). Mot. at 18. Finally, defendants argue that, as to the terms "engage in," "in California commerce," and "commercial sale," this Court has already found these terms are not unconstitutionally vague. Id. at 18 (citing dkt. 62 at 26-27).

In their motions, the intervenors make similar arguments. The First Intervenors argue that Triumph "claims that its Due Process challenge is now 'as-applied' in addition to facial, but alleges no facts to meaningfully distinguish these theories or explain how the complained-of terms are vague as applied to Triumph." F. Int. Mot. at 19.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | July 13, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

In opposition, Triumph argues that it asserts both facial and as-applied vagueness challenges to Proposition 12 and its implementing regulations: "The facial claims target regulatory provisions that were not before the Court in its prior Order and that no person of ordinary intelligence can parse from the text alone. … The as-applied claims, in turn, are inherently fact-intensive and independently not susceptible to resolution on a motion to dismiss." Opp. to Mot. by defendants at 17. Triumph argues that because Proposition 12 is a criminal statute, it is subject to heightened scrutiny for vagueness. Id. at 17-18. Triumph argues that the vagueness of who constitutes an "operator," what constitutes "compliant product," and what activities constitute "engaging in" a "commercial sale" "in California commerce" means that Triumph and its personnel face ongoing risk of criminal prosecution for conduct they cannot reasonably ascertain is prohibited. Id. at 21. Triumph argues that "[t]he vagueness is further complicated by the definition of "Whole Pork Meat," Cal. Health & Safety Code § 25991(u), which permits Triumph to ship both compliant Whole Pork Meat and noncompliant combination pork products in the same shipment—creating significant uncertainty as to how CDFA officials will decide what products to hold, tag, and seize." Id. at 21-22.

In reply, defendants argue that "Triumph does not plausibly allege a single fact showing that Proposition 12 is vague as applied to it." Reply by defendants at 11. Defendants repeat their arguments that the terms "business owner or operator" and "reasonable suspicion" are not impermissibly vague, nor are the "Turn Around" requirements. Id. at 11-15. The Second Intervenors make similar arguments. See Reply by S. Int. at 4-6.

In reply, the First Intervenors further argue that Proposition 12 does not authorize or encourage arbitrary and discriminatory enforcement simply because the statute or its regulations do not specify an enforcement plan; that Triumph may not be "sure whether its noncompliance w[ill] get caught" does not render the statute impermissibly vague. See Reply by F. Int. at 18. "Triumph argues that its Due Process rights are violated *not because it is unsure how to comply with Proposition 12*, but instead *because it is unsure how to avoid having its compliance investigated by CDFA*. That is not a valid constitutional claim." Id. at 19-20 (emphases in original).

A statute may be challenged for vagueness either "on its face" or "as applied." Schwartzmiller v. Gardner, 752 F.2d 1341, 1346 (9th Cir. 1984). A party has standing to challenge a statute facially if "no standard of conduct is specified at all." Id. at 1347 (quoting Parker v. Levy, 417 U.S. 733, 755, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974)). This

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | July 13, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

means that the statute must be "impermissibly vague in all of its applications." <u>Id.</u> (quoting <u>Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.</u>, 455 U.S. 489, 497 (1982)). "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." <u>Hill v. Colorado</u>, 530 U.S. 703, 732 (2000) (citing <u>Chicago v. Morales</u>, 527 U.S. 41, 56-57 (1999)).

The Court finds that Triumph fails to adequately allege that either Proposition 12 or its implementing regulations are unconstitutionally vague, either on their face or as applied to Triumph. First, the Court has already found that the terms "engage in," "in California commerce," and "commercial sale," are not unconstitutionally vague. Dkt. 62 at 26-27. Moreover, "[t]he 'reasonable suspicion' standard has been applied in a number of contexts and effects a needed balance between private and public interests when law enforcement officials must make a limited intrusion on less than probable cause." <u>United States v. Montoya de Hernandez</u>, 473 U.S. 531, 541 (1985). The standard requires law enforcement to have a "particularized and objective basis for suspecting the particular person" of a violation of law. <u>Id.</u> at 541-42. Accordingly, contrary to Triumph's argument the standard does not give "virtually unbounded discretion to stop, inspect, seize, and hold any shipment of Whole Pork Meat entering California, without meaningful criteria to constrain or guide that discretion." FAC ¶ 312. Nor is the term "operator" unconstitutionally vague; Proposition 12 defines a "business owner or operator" as "any person who owns or controls the operations of a business." Cal. Health & Safety Code § 25990(b)(1). The concept of controlling the operations of a business is not unconstitutionally vague. Finally, Proposition 12's Turn Around Requirements are not unconstitutionally vague because the statutes specifies how to comply with the requirements: Confinement of the animal may not "prevent[] the animal from lying down, standing up, fully extending the animal's limbs, or turning around freely." <u>Id.</u> § 25991(e). That "different sized pigs need different size pens to turn around or move," FAC ¶ 294, does not affect the Court's conclusion that the Turn Around Requirements are not impermissibly vague.

Triumph's argument that Cal. Health & Safety Code § 25991(u) exacerbates the vagueness of Proposition 12 is without merit. Cal. Health & Safety Code § 25991(u) defines regulated "Whole Pork Meat" excludes from the definition of "Whole Pork Meat" "combination food products, including soups, sandwiches, pizzas, hotdogs, or similar

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | July 13, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

processed or prepared food products …".  Cal. Health & Safety Code § 25991(u).  Triumph argues that this definition "create[es] significant uncertainty as to how CDFA officials will decide what products to hold, tag, and seize" and creates "arbitrary, standardless enforcement regime."  Opp. to Mot. by defendants at 22.  The Court disagrees.  Cal. Health & Safety Code § 25991(u) merely clarifies what constitutes "Whole Pork Meat" that may be regulated under Proposition 12; that Proposition 12 does not specify how CDFA officials will decide which products or shipments to inspect for compliance does not mean that it authorizes arbitrary and discriminatory enforcement.  See Tucson v. City of Seattle, 91 F.4th 1318, 1330 (9th Cir. 2024) ("[T]he fact the Local Ordinance 'delegates enforcement of [it] to the [Seattle Police Department] without any guidance or boundaries,' does not render it facially vague"; "The mere fact that the City and its officers have discretion to enforce the Local Ordinance in some circumstances and not others is not a sufficient basis for concluding that the Local Ordinance is wholly vague such that it can never be enforced.").

Accordingly, the Court **GRANTS** defendants' and the intervenors' motions to dismiss Triumph's Due Process Clause claim.

### D.      Leave to Amend

"Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment."  Polich v. Burlington N., Inc., 942 F.2d 1467, 1472 (9th Cir. 1991) (citing Kelson v. City of Springfield, 767 F.2d 651 (9th Cir. 1985)).  Because the Court has afforded Triumph an opportunity to cure its Due Process Clause claim, but Triumph has failed to do so, the Court finds that Triumph cannot possibly cure the deficiency of its claims.  Accordingly, the Court denies further leave to amend.  See Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

## V.      CONCLUSION

In accordance with the foregoing, the Court **DENIES** defendants' and intervenors' motions to dismiss Triumph's Commerce Clause claim.

The Court **GRANTS** defendants' and intervenors' motions to dismiss Triumph's Due Process Clause claim under the Fourteenth Amendment, with prejudice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | July 13, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

Defendants shall file an answer to Triumph's remaining Commerce Clause claim within fourteen (14) days of the date of this order.

IT IS SO ORDERED.

|  |  | 00 | : | 34 |
|---|---|---|---|---|
| Initials of Preparer | | | CMJ | |