PATRICIA BALL ALBERTS
CA #229333
L. SCOTT OLIVER
CA #174824
Husch Blackwell LLP
355 South Grand Avenue
Suite 2850
Los Angeles, CA 90071
Telephone: (213) 356-2968
Facsimile: (213) 337-6551
patricia.alberts@huschblackwell.com
scott.oliver@huschblackwell.com

MICHAEL T. RAUPP (*pro hac vice*)
CYNTHIA L. CORDES (*pro hac vice*)
RYANN A. GLENN (*pro hac vice*)
Husch Blackwell LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
Telephone: (816) 983-8000
Facsimile: (816) 983-8080
michael.raupp@huschblackwell.com
cynthia.cordes@huschblackwell.com
ryann.glenn@huschblackwell.com

Attorneys for Plaintiff
TRIUMPH FOODS, LLC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRIUMPH FOODS, LLC,<br><br>          Plaintiff,<br><br>     v.<br><br>ROB BONTA, in his official capacity as Attorney General of California, KAREN ROSS, in her official capacity as Secretary of the California Department of Food and Agriculture, and ERICA PAN, in her official capacity as Director of the California Department of Public Health,<br><br>          Defendants. | Case No. 2:25-cv-09063-CAS-AJR<br><br>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE COURT'S MARCH 2, 2026 ORDER DISMISSING THE EXPRESS PREEMPTION CLAIM WITH PREJUDICE**<br><br>**Hon. Christina A. Snyder** |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .............................................................................................ii

INTRODUCTION ........................................................................................................1

BACKGROUND ...........................................................................................................2

    A. The Court's March 2, 2026 Order ..................................................................2

    B. *Monsanto Co. v. Durnell* (June 25, 2026)......................................................3

LEGAL STANDARD....................................................................................................4

ARGUMENT ...............................................................................................................4

I. *MONSANTO* CONSTITUTES A CHANGE OF LAW OCCURRING AFTER THE ORDER ...................................................................................................................4

II. *MONSANTO* REJECTS THE ANALYTICAL APPROACH UNDERLYING THIS COURT'S DISMISSAL OF THE EXPRESS PREEMPTION CLAIM ...........................6

    A. This Court's "Voluntary Business Decisions" Holding Rests on an Analytical Approach B. That *Monsanto* Has Now Rejected.......................................................6

    B. The FMIA's Preemption Clause Carries the Same Force as FIFRA's Under *Monsanto*...................................................................................................................7

    C. FSIS's Operational Approvals Are "Requirements" Under the FMIA with Preemptive Force ....................................................................................................8

    D. *Monsanto*'s "Practical Legal Effect" Test Requires Reexamination of This Court's Holding That Operational Compliance Is Merely "Voluntary."...............................10

III. THE APPROPRIATE REMEDY IS REINSTATEMENT OF THE EXPRESS PREEMPTION CLAIM ...........................................................................................10

CONCLUSION...........................................................................................................13

CERTIFICATE OF COMPLIANCE ...........................................................................14

MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Carson v. Monsanto Co.*,
  92 F.4th 980 (11th Cir. 2024)................................................................................5
*Hardeman v. Monsanto Co.*,
  997 F.3d 941 (9th Cir. 2021)................................................................................5
*Monsalvo v. Bondi*,
  604 U.S. 712 (2025) .............................................................................................8
*Monsanto Co. v. Durnell*,
  609 U.S. ___ (2026) ...................................................................................... passim
*National Meat Ass'n v. Harris*,
  565 U.S. 452 (2012)..............................................................................................8
*Riegel v. Medtronic, Inc.*,
  552 U.S. 312 (2008)......................................................................................3, 4, 9
*Schaffner v. Monsanto Corp.*,
  113 F.4th 364 (3d Cir. 2024)................................................................................4
*United States v. Martin*,
  226 F.3d 1042 (9th Cir. 2000)..............................................................................5

**Statutes**

7 U.S.C. § 136v(b) ..................................................................................................1
21 U.S.C. § 678................................................................................................ passim
21 U.S.C. §§ 603-604 .............................................................................................9

**Regulations**

9 C.F.R. § 310.........................................................................................................9

**Other Authorities**

C.D. Cal., L.R. 7-18.......................................................................................... passim
C.D. Cal., L.R. 7-18(b) .......................................................................................4, 5
C.D. Cal., L.R. 7.16(b) ............................................................................................5
H.R. Rep. No. 90-653 .............................................................................................8

**INTRODUCTION**

Four months after this Court dismissed Triumph's express preemption claim related to the Federal Meat Inspection Act ("FMIA") with prejudice, on June 25, 2026, the U.S. Supreme Court decided *Monsanto Co. v. Durnell*, 609 U.S. ___ (2026). In *Monsanto*, the Court construed the precise "in addition to or different from" preemption language that appears in both the Federal Insecticide, Fungicide and Rodenticide Act's ("FIFRA") express preemption clause, 7 U.S.C. § 136v(b), and the very provision at issue in Triumph's First Cause of Action, the FMIA express preemption clause, 21 U.S.C. § 678. In doing so, the Court resolved a long-standing circuit split and expressly **identified the FMIA's preemption clause** as one of the federal statutes with "similar or identical" preemption provisions—indeed, listing the FMIA first among all federal statutes in its citation. *Monsanto*, slip op. at 13-14. The Court announced two principles of statutory interpretation that directly govern this case: First, the express preemption inquiry turns on the ***practical legal effect*** of the state law on the regulated entity, not on how the State nominally characterizes its law. Second, a federal agency's affirmative regulatory approvals—***determinations that a regulated entity may lawfully operate in a particular manner***—constitute federal "requirements" with preemptive force.

The District Court, which did not have the benefit of the Supreme Court's impending guidance or forthcoming framework in *Monsanto*, dismissed Triumph's express preemption claim based squarely on the premise that Proposition 12's operational impacts on FMIA-inspected slaughterhouses do not constitute state-imposed "requirements" because any operational changes slaughterhouses make in response are "voluntary business decisions." ECF 62 at 17. *Monsanto* had not yet been decided when the District Court issued its Order, and the doctrinal framework the U.S. Supreme Court announced was not available to either the parties or the District Court. But *Monsanto* squarely rejects the analytical approach underlying this Court's holding. Under *Monsanto*'s framework, the question is not whether the

1

State has nominally framed its law as a sales ban rather than an operational mandate, but whether the state law's *practical legal effect* on the federally regulated entity imposes something "in addition to, or different than" what federal law requires. *Monsanto*, slip op. at 14-15. Here, Proposition 12's practical legal effect compels FMIA-regulated slaughterhouses to change and restructure their operations in ways that go far beyond anything the FMIA requires—and the Supreme Court has now clarified and supplied the doctrinal framework to make clear that a state regulation with such an implication is prohibited.  It is now incumbent on this Court to apply the now-governing Supreme Court authority to the facts before it.

## BACKGROUND

A.      The Court's March 2, 2026 Order

On March 2, 2026, this Court dismissed Triumph's First Cause of Action—express FMIA preemption—with prejudice. ECF 62 at 28. The Court's reasoning rested on two propositions.

First, this Court held that Proposition 12's Turn Around Requirements and Square Footage Requirements fall outside the FMIA preemption clause because they "apply to a farm owner or operator rather than an FMIA-inspected establishment.[1]" ECF 62 at 16-17. Second, and critically, the Court held that to the extent an FMIA-inspected establishment is impacted by Proposition 12's sales ban or implementing Regulations, Proposition 12 does not impose any "requirements" on slaughterhouses "in addition to, or different than" any federal requirements "within the scope of the FMIA." *Id.* at 17. Instead, the Court concluded, "any such operational changes by slaughterhouses in response to Proposition 12 and the Regulations are voluntary business decisions undertaken to avail of the California market." *Id.*

*Monsanto* directly undermines both underlying premises of the Court's

---

[1] To be clear, Triumph has always maintained that California can regulate what happens *on farms within* California. However, it is the sales ban that extends beyond California's border that unconstitutionally impacts FMIA establishments like Triumph Foods, which is discussed herein. This is an important distinction and flows directly into why the *Monsanto* decision is particularly relevant for reconsideration of this Court's entire ruling concerning Triumph's express preemption claim.

2

MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER

holding concerning Triumph's express preemption claim. To be clear, *Monsanto* had not yet been decided when this Court ruled, and this motion is brought precisely because the Supreme Court's intervening decision has changed the governing legal landscape.

B.      *Monsanto Co. v. Durnell* (June 25, 2026)

On June 25, 2026, the Supreme Court decided *Monsanto Co. v. Durnell*, 609 U.S. ___ (2026). Justice Kavanaugh authored the majority opinion, joined by the Chief Justice and Justices Thomas, Alito, Sotomayor, Kagan, and Barrett. The Court resolved a circuit split over whether FIFRA preempts state failure-to-warn tort claims arising from a pesticide manufacturer's use of an EPA-approved label that does not include a cancer warning.

The Court held that FIFRA expressly preempts such claims. In reaching that conclusion, the Court articulated two governing principles.

First, the preemption inquiry turns on practical legal effect, not nominal form. The respondent argued that Missouri tort law, "like FIFRA itself, simply requires manufacturers to include adequate warnings to protect human health." *Monsanto*, slip op. at 14. The Court flatly rejected this argument as operating "at far too high a level of generality" that "disregards the central and comprehensive role that EPA performs" under the statute. *Id.* The Court held that what matters is what the state law "practically requires" the regulated entity to do—not how the State nominally frames its objective. *Id.* at 14-15.

Second, a federal agency's affirmative regulatory approvals constitute "requirements" with preemptive force—not merely the text of the statute itself. Relying on *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008), the Court held that EPA's registration of a pesticide and its approval of the pesticide's label imposed "'requirements' under" FIFRA's preemption clause. *Id.* at 12-13. The Court emphasized that FIFRA affords preemptive force to requirements imposed "under" the Act—"not merely those imposed 'by' the actual statute itself." *Id.* at 15. A

3

federal agency's regulatory determinations "give content to" the statutory standards and therefore carry preemptive force over contrary or supplemental state law. *Id.*

Of particular significance, the Court *explicitly* cited and pointed to 21 U.S.C. § 678, the FMIA's express preemption clause, as one of "several other federal statutes across a range of industries" that "*contain similar or identical*" preemption provisions to FIFRA's. *Monsanto*, slip op. at 13-14 (emphasis added). The Court noted that these cognate provisions "reflect Congress's judgment that the ability to sell a product throughout the country with a single [regulatory standard] can be important to maintaining an efficient nationwide market." *Id.* at 14.

## LEGAL STANDARD

Central District of California Local Rule 7-18 provides that a party may move for reconsideration of an order on three grounds: (a) a material difference in fact or law from that presented to the Court that could not have been known with reasonable diligence at the time of the original motion; (b) the emergence of new material facts or a change of law occurring after the order was entered; or (c) a manifest failure to consider material facts or dispositive legal arguments presented to the Court. C.D. Cal. L.R. 7-18.

Triumph moves under Local Rule 7-18(b). *Monsanto* was decided June 25, 2026—four months after this Court's March 2, 2026 Order dismissing Triumph's express preemption claim with prejudice. It therefore constitutes a change of law occurring after the Order was entered, but while this case remains pending. Triumph seeks reconsideration on the new doctrinal framework *Monsanto* supplies.

## ARGUMENT

**I.   *MONSANTO* CONSTITUTES A CHANGE OF LAW OCCURRING AFTER THE ORDER.**

*Monsanto* resolved a longstanding circuit split over the scope of express preemption under federal regulatory statutes with "in addition to, or different from" preemption clauses. *Compare Schaffner v. Monsanto Corp.*, 113 F.4th 364 (3d Cir.

2024) (preemption), with *Carson v. Monsanto Co.*, 92 F.4th 980 (11th Cir. 2024) (no preemption), and *Hardeman v. Monsanto Co.*, 997 F.3d 941 (9th Cir. 2021) (no preemption). A Supreme Court decision that resolves a circuit split and announces principles of statutory interpretation applicable to a previously unsettled area of law constitutes a "change of law" for purposes of Local Rule 7-18(b). The decision was issued nearly four months after this Court's March 2, 2026 Order and could not have been raised in the original motion practice.

Although this motion is filed more than 14 days after the Court's March 2, 2026, Order, good cause exists for this Court to reconsider its ruling. The 14-day default period under Local Rule 7-18 for which to pursue motions to reconsider is expressly subject to a good-cause exception. Here, good cause is plainly present: the change of law upon which this motion rests—the Supreme Court's decision in *Monsanto Co. v. Durnell*, 609 U.S. ___ (June 25, 2026)—did not exist until four months after the Order was entered. Triumph could not have moved for reconsideration on this ground within 14 days of March 2, 2026, because the governing authority upon which the motion depends had not yet been issued.

Where the asserted change of law postdates the 14-day window entirely, it is impossible to comply with the default deadline, and impossibility of earlier compliance constitutes good cause as a matter of law. The Ninth Circuit recognized as much in an analogous context in *United States v. Martin*, 226 F.3d 1042 (9th Cir. 2000). Although *Martin* arose in a different procedural posture—addressing the government's motion to reconsider a § 2255 ruling on the basis of an intervening Supreme Court decision filed 83 days after the order—the court held that the motion was timely because the basis for reconsideration (a change of law) postdated the order. Notably, the court expressly observed that the predecessor to Local Rule 7-18, then Local Rule 7.16(b), "imposes no time limits on motions made under its auspices" when the ground is a change of law. *Martin*, 226 F.3d at 1048-49. While the current version of Local Rule 7-18 does impose a 14-day default, the good-cause

MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER

exception serves the same equitable function: it ensures that a party is not penalized for failing to invoke authority that did not yet exist. Triumph files this motion promptly after *Monsanto* was issued and this memorandum was prepared, and the motion presents no prejudice to Defendants. Good cause exists.

**II.   *MONSANTO* REJECTS THE ANALYTICAL APPROACH UNDERLYING THIS COURT'S DISMISSAL OF THE EXPRESS PREEMPTION CLAIM.**

   A.   This Court's "Voluntary Business Decisions" Holding Rests on an Analytical Approach That *Monsanto* Has Now Rejected.

This Court dismissed Triumph's express preemption claim on the ground that Proposition 12's operational impacts on FMIA slaughterhouses do not constitute state-imposed "requirements" because "any such operational changes by slaughterhouses in response to Proposition 12 and the Regulations are voluntary business decisions undertaken to avail of the California market." ECF 62 at 17. As a precursor to this holding, the Court held that the "Turn Around Requirements and Square Footage Requirements are not within the scope of the FMIA preemption clause because these requirements apply to a farm owner or operator rather than an FMIA-inspected establishment." To be clear, and especially as a processor, not a farm, Triumph Foods challenged the *sales ban* language that is expressly tied to the Turn Around Requirements and Square Footage Requirements as preempted by the FMIA because of the practical effects placed on the FMIA establishment. The sales ban falls squarely within the scope of the FMIA for the reasons set forth in Triumph's prior briefing, but such is even more explicit now in light of the *Monsanto* decision which requires this Court to analyze the practical effects of that same sales ban.

The analytical approach underlying this Court's holding is the same one the Supreme Court rejected in *Monsanto*. In *Monsanto*, Roundup's manufacturer was not formally "required" by Missouri tort law to change its label—it could simply

MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER

decline to warn consumers and face whatever tort consequences followed. Under the "voluntary business decisions" logic, a manufacturer that opts to add a cancer warning to avoid tort liability is making a "voluntary business decision undertaken to avail of the Missouri market"—and therefore no "requirement" exists. The Supreme Court squarely rejected that framing. The Court held that the preemption inquiry turns on the state law's "practical legal effect" on the federally regulated entity, not on whether the State has technically compelled the operational change or merely imposed consequences that make such a change a commercial necessity. *Monsanto*, slip op. at 14-15.

The same is true here. Under *Monsanto*'s framework, the relevant question is not whether Proposition 12's text directly orders Triumph to sort pigs, segregate product lines, create new inventory tracking systems, register with CDFA, and submit to annual audits—it is whether Proposition 12's practical legal effect on Triumph, as an FMIA-regulated slaughterhouse, compels those operational consequences as a matter of commercial reality. It plainly does. The First Amended Complaint details those operational consequences at length. *See, e.g.*, FAC ¶¶ 103, 151, 212-215, ECF No. 67. The fact that Triumph made those changes to "avail of the California market" rather than because Proposition 12's text contains a standalone operational mandate does not, certainly after *Monsanto*, insulate those requirements from preemption analysis. As the Supreme Court explained, the preemption inquiry turns on what the state law "practically requires" the regulated entity to do—not how the State nominally frames its objective. *Monsanto*, slip op. at 14-15.

B.   The FMIA's Preemption Clause Carries the Same Force as FIFRA's Under *Monsanto*.

The FMIA's express preemption provision, 21 U.S.C. § 678, contains two distinct preemption clauses. The first—the operational preemption clause—provides that "[r]equirements within the scope of this chapter with respect to premises,

facilities and operations of any [FMIA-inspected] establishment . . . which are in addition to, or different than those made under this chapter" may not be imposed by any State. 21 U.S.C. § 678. The second—the labeling preemption clause—provides that "[m]arking, labeling, packaging, or ingredient requirements in addition to, or different than, those made under this chapter may not be imposed by any State." *Id*. Both clauses deploy the identical "in addition to, or different than" formulation— the very language the Supreme Court construed in *Monsanto*.

The Supreme Court took care to make clear this applied to the FMIA, expressly citing to 21 U.S.C. § 678 first, and then also listing other federal statutes with "similar or identical" preemption provisions. *Monsanto*, slip op. at 13-14.

The Court referenced the labeling preemption sentence of § 678, but the operational preemption clause on which Triumph principally relies appears in the immediately preceding sentence of that very same statutory provision and deploys the identical "in addition to, or different than" formulation. Where Congress uses identical language in adjacent clauses of the same statute, that language bears the same meaning. *See Monsalvo v. Bondi*, 604 U.S. 712, 726 (2025). *Monsanto*'s construction of the "in addition to, or different from" language therefore necessarily governs both clauses of § 678. And the Court's broader observation that these cognate "preemption clauses reflect Congress's judgment that the ability to sell a product throughout the country with a single [regulatory standard] can be important to maintaining an efficient nationwide market," *Monsanto*, slip op. at 14, applies with full force to the FMIA's operational preemption clause, which was enacted to ensure "a uniform framework" that would "provide consumer protection for all citizens, regardless of where their meat originates." H.R. Rep. No. 90-653, pt. 1, at 14 (1967); *see National Meat Ass'n v. Harris*, 565 U.S. 452, 459-60 (2012).

C.    FSIS's Operational Approvals Are "Requirements" Under the FMIA with Preemptive Force.

*Monsanto* held that EPA's registration and approval of a pesticide label—the

8

agency's affirmative determination that a manufacturer may lawfully sell its product with that label—constitutes a federal "requirement" under FIFRA's preemption clause. *Monsanto*, slip op. at 12-13. Relying on *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008), the Court reasoned that a statute's preemption clause protects requirements imposed "under" the Act—"not merely those imposed 'by' the actual statute itself"—and that an agency's regulatory determinations "give content to" the statutory standards and thus carry preemptive force that state law cannot override. *Id.* at 11-12, 15.

The FSIS exercises an equivalent regulatory role under the FMIA. FSIS conducts ante-mortem and post-mortem inspections of every pig that enters an FMIA-inspected facility, determines whether animals and carcasses are "condemned" or "adulterated" within the meaning of the Act, and affirmatively approves pork for commerce by stamping it "inspected and passed." 21 U.S.C. §§ 603-604; 9 C.F.R. § 310. Those approvals—FSIS's affirmative determination that pork is fit for interstate commerce—constitute federal "requirements" under the FMIA's preemption clause just as EPA's registration approval constitutes a federal "requirement" under FIFRA. Under *Monsanto*, a state law that overrides FSIS's determination that inspected-and-passed pork is fit for commerce—by prohibiting its sale based on the farming conditions under which the animal was raised, conditions that the FMIA does not contemplate—imposes a requirement "in addition to, or different than" what the FMIA requires of the slaughterhouse. Both the operational and labeling preemption clauses of § 678 bar such state-imposed requirements.

That is precisely what Proposition 12 does. It prohibits FMIA-inspected slaughterhouses from processing and selling into commerce any pig that was raised in conditions California deems cruel—regardless of whether FSIS has inspected and passed both the animal and the resulting pork. The slaughterhouse must therefore make procurement decisions, implement sorting and segregation procedures, and

9

manage its processing lines in a manner that accounts for a criterion—the sow's housing conditions—that the FMIA's inspection regime does not contemplate and does not require. Under *Monsanto*, that practical operational consequence is a state "requirement" within the scope of the FMIA's preemption clause.

This is plain to see, as when the FMIA says the pork is approved and healthy for sale in California, California's sales ban says it is not. The FMIA-inspected slaughterhouses must change and modify their operations to accommodate for California's sales ban.

D.   *Monsanto*'s "Practical Legal Effect" Test Requires Reexamination of This Court's Holding That Operational Compliance Is Merely "Voluntary."

This Court's Order drew a line between laws that "reach into the slaughterhouse's facilities and affect its daily activities" (preempted) and those that "work at a remove from the sites and activities that the FMIA most directly governs" (not preempted). ECF 62 at 15. The Court concluded that Proposition 12 falls on the "remove" side because its formal requirements are directed at farms, not slaughterhouses. *Id.* But *Monsanto* has now made clear that the preemption inquiry does not turn on whether the law is formally framed as a slaughterhouse mandate; rather, it turns on whether the state law's practical legal effect imposes additional or different operational requirements on the federally regulated entity. Here, it does.

III.   **THE APPROPRIATE REMEDY IS REINSTATEMENT OF THE EXPRESS PREEMPTION CLAIM.**

Given that *Monsanto* constitutes a material change of law that rejects the analytical premise on which the express preemption claim was dismissed, the Court should reconsider its March 2, 2026 Order and reinstate Triumph's First Cause of Action for express FMIA preemption based on *Monsanto*. Triumph recognizes that *Monsanto* was not available when this Court ruled. That is precisely why reconsideration is warranted: the Supreme Court has since spoken directly to the

10

interpretive question at the heart of this case, and its answer compels a different result.

*Monsanto*'s framework is newly announced, its application to the FMIA's preemption clause is a question on which courts have not yet had the opportunity to rule, and the resolution of that question is central to this litigation. This Court is well positioned to apply *Monsanto*'s principles to the facts of this case in the first instance.

Further support for reconsideration is supplied by this Court's own July 13, 2026, Order on the motions to dismiss Triumph's First Amended Complaint. ECF 87. In sustaining Triumph's Commerce Clause claim, the Court found that Triumph adequately alleged that Proposition 12's slaughterhouse exception creates a "structurally asymmetric regulatory regime" that "disproportionately and substantially burdens out-of-state FMIA-inspected pork processors like Triumph" who are "structurally and categorically incapable" of availing themselves of the exception. ECF 87 at 18. The Court further credited Triumph's allegation that this structural burden has caused a "sharp decline in pork volume sales in California and a 2-3% decline in California's share of national fresh pork sales." *Id.* at 16. Those findings rest on precisely the same factual predicate—Proposition 12 does affect Triumph as an FMIA-regulated slaughterhouse—that *Monsanto* now requires this Court to consider in the preemption context. The Court's *Pike* analysis in ECF 87 thus confirms what *Monsanto* commands: the operational consequences Proposition 12 imposes on Triumph are not voluntary in any meaningful sense. They are structurally compelled by the regulatory scheme itself. The March 2, 2026, Order's contrary holding—that those same consequences are merely "voluntary business decisions"—cannot be reconciled with either *Monsanto*'s governing framework or this Court's own findings in ECF 87.

The connection between the preemption and Commerce Clause claims is further confirmed by Defendants' own concession at the July 13, 2026, hearing. As

MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER

reflected in ECF 87, counsel for the State acknowledged that Proposition 12's slaughterhouse exception—the provision exempting from the sales ban any sale occurring on the premises of an FMIA-inspected establishment—was drafted specifically to sidestep FMIA preemption concerns. ECF 87 at 19 n.5. That acknowledgment is significant for purposes of this motion. If California itself designed the slaughterhouse exception around the FMIA's preemptive reach, it cannot credibly maintain that the FMIA has no bearing on the validity of Proposition 12's broader sales ban as applied to FMIA-regulated slaughterhouses generally, and especially those who cannot benefit from the slaughterhouse exception. The State's own litigation position thus confirms the structural nexus between the preemption and Commerce Clause claims, and supplies an additional reason to apply *Monsanto*'s practical-legal-effect framework to the sales ban's consequences on FMIA-inspected establishments.  The bottom line is that a State cannot violate the Commerce Clause to avoid a violation of federal preemption, and a statutory provision which violates the Commerce Clause and is removed, leaves a statute which glaringly – and now admittedly – violates federal preemption.  The Commerce Clause and the federal preemption claims interact in this matter, and must be considered jointly, especially after the recent guidance from the U.S. Supreme Court in *Monsanto*.

Finally, reinstatement of the express preemption claim would cause no additional prejudice to Defendants. The Commerce Clause claim has now survived dismissal, and this case will proceed into discovery. Defendants must answer the First Amended Complaint and will be required to engage in Rule 26 disclosures and full merits discovery regardless of whether the preemption claim is reinstated. The factual record relevant to the preemption claim—Proposition 12's practical operational effects on FMIA-regulated slaughterhouses, FSIS's regulatory approvals and their preemptive force, and the relationship between the sales ban and the FMIA's inspection regime—substantially overlaps with the discovery that will

occur on the Commerce Clause claim in any event. Permitting the preemption claim to proceed alongside the Commerce Clause claim therefore does not impose any material additional burden on Defendants. Where, as here, reconsideration is warranted on the merits by an intervening change of law, and no prejudice results from reinstating the dismissed claim, the interests of justice favor granting the motion.

## CONCLUSION

For the foregoing reasons, Triumph respectfully requests that the Court reconsider its March 2, 2026 Order and reinstate Triumph's First Cause of Action for express preemption under the FMIA.

Respectfully submitted,

Dated: July 21, 2026.

TRIUMPH FOODS LLC, Plaintiff.

By: */s/* Michael T. Raupp
PATRICIA BALL ALBERTS
CA #229333
L. SCOTT OLIVER
CA #174824
Husch Blackwell LLP
355 South Grand Avenue, Suite 2850
Los Angeles, CA 90071
Telephone: (213) 356-2968
Facsimile: (213) 337-6551
patricia.alberts@huschblackwell.com
scott.oliver@huschblackwell.com

MICHAEL T. RAUPP
(*pro hac vice*)
CYNTHIA L. CORDES
(*pro hac vice*)
RYANN A. GLENN
(*pro hac vice*)
Husch Blackwell LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
Telephone: (816) 983-8000
Facsimile: (816) 983-8080
michael.raupp@huschblackwell.com
cynthia.cordes@huschblackwell.com
ryann.glenn@huschblackwell.com

*Attorneys for Triumph Foods, LLC*

MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 3,890 words, which complies with the word limit of L.R. 11-6.1.

*/s/ Michael T. Raupp*
Michael T. Raupp

MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER

## **PROOF OF SERVICE**

*Triumph Foods, LLC v. Rob Bonta, et al.*
Central District of California Case No. 2:25-cv-009063-CAS-AJR

I am a citizen of the United States and employed in Washington, D.C. I am over the age of eighteen years and not a party to the within-entitled action. My business address is Husch Blackwell LLP, 1801 Pennsylvania Avenue, NW, Suite 1000, Washington, D.C. 20006. I served a copy of the within document(s):

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE COURT'S MARCH 2, 2026 ORDER DISMISSING THE EXPRESS PREEMPTION CLAIM WITH PREJUDICE**

as follows:

☐   by sealing the document(s) listed above in an envelope and placing it for collection, which would, in the ordinary course of business, be deposited with the United States Postal Service on this date for delivery to the person(s) at the address(es) set forth below.

☐   by sealing the document(s) listed above in an envelope and causing them to be personally delivered *via* courier to the person(s) at the address(es) set forth below.

☐   by sealing the document(s) listed above in a FEDEX envelope/box and placing it for collection, which would, in the ordinary course of business, be deposited with FEDEX for delivery to the person(s) at the address(es) set forth below.

☒   by emailing a true and correct copy of the document(s) listed to the person(s) at the email address(es) set forth below.

### **SEE ATTACHED SERVICE LIST**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on July 21, 2026, at Washington, D.C.

*/s/ Audrey Murphy*
AUDREY MURPHY

## SERVICE LIST

| | |
|---|---|
| Rob Bonta<br>Attorney General of California<br>Anna Ferrari<br>Supervising Deputy Attorney General<br>Camille Framroze<br>Deputy Attorney General<br>455 Golden Gate Avenue, Suite 11000<br>San Francisco, CA 94102-7004<br>(818) 986-7870 | Attorneys for Defendants<br><br>Tel: (415) 510-03619<br><br>Email: Camille.Framroze@doj.ca.gov |
| Bruce A. Wagman<br>RILEY SAFER HOLMES &<br>CANCILA LLP<br>456 Montgomery Street, 16th Floor<br>San Francisco, CA 94104 | Attorneys for Defendant-Intervenors<br>Humane World for Animals, Animal<br>Legal Defense Fund, Animal Equality,<br>The Humane League, Farm Sanctuary,<br>Compassion in Word Farming, Inc.,<br>and Animal Outlook<br><br>Tel: (415) 275-8540<br>Fax: (41) 275-8551<br><br>Email: bwagman@rshc-law.com |
| Rebecca Cary<br>Melissa Alpert<br>HUMANE WORLD FOR ANIMALS<br>1255 23rd Street, NW, Suite 450<br>Washington, D.C. 20037 | Attorneys for Defendant-Intervenor<br>Humane World for Animals<br><br>Tel: (202) 676-2330<br>Fax: (202) 676-2357<br><br>Email: rcary@humaneworld.org<br>malpert@humaneworld.org |
| Jessica L. Blome<br>GREENFIRE LAW, PC<br>2748 Adeline Street, Suite A<br>Berkeley, CA 94703 | Attorneys for Defendant-Intervenors<br>The Center for a Humane Economy and<br>Animal Wellness Action<br><br>Tel: (510) 900-9502<br><br>Email: jblome@greenfirelaw.com |