UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | September 14, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Michael Raupp | Camille Framroze |

Attorneys Present for Intervenors:

Melissa Alpert
Jessica Blome

**Proceedings:** ZOOM HEARING RE: PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S MARCH 2, 2026 ORDER DISMISSING THE EXPRESS PREEMPTION CLAIM WITH PREJUDICE (Dkt. 89, filed on July 21, 2026)

## I. INTRODUCTION

On September 23, 2025, plaintiff Triumph Foods, LLC ("Triumph" or "plaintiff") filed a complaint against Rob Bonta, the Attorney General of California, Karen Ross, the Secretary of the California Department of Food and Agriculture ("CDFA"), and Erica Pan, the Director of the California Department of Public Health ("CDPH") (collectively, "defendants"). Dkt. 1 ("Compl."). Plaintiff challenges the constitutionality and seeks to prevent the enforcement of California Health & Safety Code § 25990 *et seq.*, as amended by California's Proposition 12 Farm Animal Confinement Initiative ("Proposition 12"), and of the implementing regulations for Proposition 12, Cal. Code Regs. tit. 3, §§ 1322-1327.3 (the "Regulations"). Id. Proposition 12 prohibits the sale within California of "[w]hole pork meat" that a seller "knows or should know is the meat of a covered animal who was confined in a cruel manner, or is the meat of the immediate offspring of a covered animal that was confined in a cruel manner." Cal. Health & Safety Code § 25990. The statute defines "confined in a cruel manner" to include confining any covered animal in a manner that "prevents the animal from lying down, standing up, fully extending the animal's limbs, or turning around freely," (the "Turn Around

Requirements") or "confining a breeding pig with less than 24 square feet of useable floorspace per pig" (the "Square Footage Requirements"). Id. § 25991(e).

The complaint alleges five claims for relief: (1) that Proposition 12 and the Regulations violate the Supremacy Clause of the United States Constitution because they are expressly preempted by the Federal Meat Inspection Act ("FMIA"), id. ¶¶ 137-210; (2) that Proposition 12 and the Regulations violate the Supremacy Clause of the United States Constitution because they are impliedly preempted by the FMIA, id. ¶¶ 211-228; (3) that Proposition 12 and the Regulations violate the Commerce Clause by discriminating in purpose and in effect against out-of-state pork processors, id. ¶¶ 229-254; (4) that Proposition 12 and the Regulations are facially vague resulting in violations of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, id. ¶¶ 255-282; and (5) that Proposition 12 and the Regulations impose an especially burdensome duty on out-of-state pork goods in violation of the Import-Export Clause, at Article I, Section 10, clause 2 of the United States Constitution. Id. ¶¶ 283-296. Plaintiff brings its third, fourth, and fifth claims for relief under 42 U.S.C. § 1983. Plaintiff seeks injunctive and declaratory relief. Id. ¶¶ 297-298.

On December 1, 2025, defendants filed a motion to dismiss. Dkt. 36.

On January 12, 2026, the Court granted the motions to intervene of Humane World for Animals, Animal Legal Defense Fund, Animal Equality, The Humane League, Farm Sanctuary, Compassion in World Farming, Inc., Animal Outlook (collectively, "First Intervenors"), and of The Center for a Humane Economy and Animal Wellness Action (collectively, "Second Intervenors"). Dkt. 47.

On January 13, 2026, the First Intervenors filed a motion for judgment on the pleadings, dkt. 49, and the Second Intervenors filed a motion to dismiss, dkt. 50.

On March 2, 2026, the Court issued an order on defendants' and intervenors' motions to dismiss and motion for judgment on the pleadings. Dkt. 62 ("March 2, 2026 Order"). The Court (1) granted defendants' and intervenors' motion to dismiss as to plaintiff's express preemption claim, with prejudice; (2) granted defendants' and intervenors' motion to dismiss as to plaintiff's implied preemption claim, with prejudice; (3) granted defendants' and intervenors' motion to dismiss as to plaintiff's dormant Commerce Clause claim, dismissing plaintiff's claim based on a "lead time" theory with prejudice and dismissing plaintiff's claim based on the "slaughterhouse exception"

without prejudice; (4) granted defendants' and intervenors' motion to dismiss as to plaintiff's Due Process Clause claims under the Fourteenth Amendment, without prejudice; and (5) granted defendants' and intervenors' motion to dismiss as to plaintiff's Import Export Clause claim, with prejudice. Id. at 28-29.

On March 17, 2026, plaintiff filed a first amended complaint, asserting the same five claims. Dkt. 67 ("FAC").

On April 14, 2026, defendants filed a motion to dismiss plaintiff's FAC. Dkt. 72. The same day, the First Intervenors and the Second Intervenors filed motions to dismiss plaintiff's first amended complaint. Dkts. 71, 73. On July 13, 2026, the Court denied defendants' and intervenors' motions to dismiss Triumph's Commerce Clause claim and granted defendants' and intervenors' motions to dismiss Triumph's Due Process Clause claim under the Fourteenth Amendment, with prejudice. Dkt. 87.[1]

On July 13, 2026, plaintiff filed the instant motion for reconsideration of the Court's March 2, 2026 order dismissing the express preemption claim with prejudice. Dkt. 89. Plaintiff concurrently filed a memorandum in support of its motion. Dkt. 90 ("Mot.").

On July 31, 2026, the Second Intervenors filed an opposition. Dkt. 94 ("Opp. by S. Int."). On August 10, 2026, the First Intervenors filed an opposition. Dkt. 96 ("Opp. by F. Int."). On August 10, 2026, defendants filed an opposition. Dkt. 99 ("Opp. by Def.").

On August 31, 2026, plaintiff filed a response to the Second Intervenors' opposition. Dkt. 105 ("Resp. to S. Int. Opp."). On the same day, plaintiff filed a response to the First Intervenors' opposition. Dkt. 107 ("Resp. to F. Int. Opp."). On the same day, plaintiff filed a response to defendants' opposition. Dkt. 106 ("Resp. to Def. Opp.").

On September 14, 2026, the Court held a hearing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

///

///

[1] The Court's amended July 13, 2026 order, correcting a clerical error, is Dkt. 101.

## II. BACKGROUND

The following facts are as alleged in the complaint or from the statutes and regulations referenced in the first amended complaint. See FAC.

### A. The Parties

Triumph is a pork processor and distributor, regulated under the FMIA by the U.S. Department of Agriculture ("USDA") and the Food Safety and Inspection Service ("FSIS"). FAC ¶ 15. Triumph is headquartered in St. Joseph, Missouri, and largely receives its supply of pigs from its farmer owners and other independent pig farmers. Id. Triumph processes pigs into pork and the pork is sold directly and indirectly to customers in California. Id. Triumph is also known as a "slaughterhouse" and is one of the largest distributors of pork products in the United States. Id. Triumph contracts with the farmers to obtain, inspect, buy, and process their pigs to create pork products. Id.

Defendants Rob Bonta, Karen Ross, and Erica Pan are sued in their official capacities as the Attorney General of California, the Secretary of CDFA, and the Director of CDPH, respectively. Id. ¶¶ 16-18.

### B. The FMIA

In 1906, Congress enacted the FMIA, 21 U.S.C. §§ 601-695. FAC ¶ 22. "The act provides an elaborate system of inspection of animals before slaughter, and of carcasses after slaughter and of meat-food products, with a view to prevent the shipment of impure, unwholesome, and unfit meat and meat-food products in interstate and foreign commerce." Pittsburgh Melting Co v. Totten, 248 U.S. 1, 4-5 (1918). "[USDA's FSIS] has responsibility for administering the FMIA to promote its dual goals of safe meat and humane slaughter." Nat'l Meat Ass'n v. Harris, 565 U.S. 452, 456 (2012).

Triumph alleges that "[e]nsuring that pigs do not enter and pork is not delivered from a plant that is at risk for 'foodborne illness' is a role specifically assigned to the USDA and FSIS through the Congressional enacted statutory requirements imposed by the FMIA." FAC ¶ 28. Triumph alleges that in order to become a pork processor that is allowed to process, sell, and ship pork products into and through interstate commerce, the pork processor must be inspected and approved by FSIS through an Application for Federal Inspection and, following inspection, through receipt of a Grant of Inspection. Id. ¶ 29 (citing 9 C.F.R. §§ 304.1-304.3). Triumph alleges that the facility and its

operations then become an "FMIA establishment." Id. According to Triumph, there are approximately 1,118 pork processing facilities inspected and approved by the FSIS in the United States, 34 of which are located in California. Id. ¶ 30 (citing FSIS Inspected Establishments, available at https://www.fsis.usda.gov/inspection/fsisinspected-establishments (last visited September 22, 2025)).

**C. California Voters Enact Proposition 2 (2008)**

In the November 2008 election, California voters passed Proposition 2, a ballot initiative intended to "prohibit the cruel confinement of farm animals." FAC ¶ 79.

Proposition 2 required in-state pig farmers to house breeding pigs in a manner that permitted the animals to "turn around freely, lie down, stand up, and fully extend their limbs." Id. (citing Cal. Health & Safety Code § 25990(a)). Proposition 2 did not subject out-of-state pork producers to this requirement and gave in-state pork producers more than six years to comply with the requirement, with an effective date of January 1, 2015. Id. ¶¶ 80 (citing Cal. Health & Safety Code § 25990).

**D. California Voters Enact Proposition 12 (2018)**

In the November 2018 election, California voters passed Proposition 12 to amend §§ 25990-25993 of the California Health and Safety Code. FAC ¶ 81. Proposition 12 prohibits the sale within California of "[w]hole pork meat" that a seller "knows or should know is the meat of a covered animal who was confined in a cruel manner, or is the meat of the immediate offspring of a covered animal that was confined in a cruel manner." Cal. Health & Safety Code § 25990. The statute defines "confined in a cruel manner" to include confining any covered animal in a manner that "prevents the animal from lying down, standing up, fully extending the animal's limbs, or turning around freely," or "confining a breeding pig with less than 24 square feet of useable floorspace per pig." Id. at § 25991(e). Proposition 12 deems a sale as one that occurs in California "where the buyer takes physical possession" of the meat at issue in California. See id. ¶ 137 (citing Cal. Health & Safety Code § 25991(o)). The definition of "sale" excludes any sale undertaken at an establishment at which mandatory inspection is provided under the FMIA. Cal. Health & Safety Code § 25991(o). Plaintiff refers to this exclusion as the "slaughterhouse exception." FAC ¶ 138.

Triumph alleges that under this slaughterhouse exception, a California FMIA-inspected slaughterhouse may sell noncompliant whole pork meat—i.e., pork derived

from breeding pigs that do not meet Proposition 12's Turn Around Requirements or Square Footage Requirements—directly from the slaughterhouse's premises in California to a buyer who takes physical possession at that facility, without violating Proposition 12. Id. ¶ 139. Triumph alleges that California has approximately 34 FMIA-inspected establishments that are capable of utilizing the slaughterhouse exception for on-site sales of non-compliant whole pork meat. Id. ¶ 140. By contrast, Triumph is an FMIA-inspected establishment located in St. Joseph, Missouri; Triumph has no slaughterhouse operations or FMIA-inspected facilities in California and cannot receive the benefit of the slaughterhouse exception. Id. ¶ 141.

Plaintiff alleges that the slaughterhouse exception burdens interstate commerce by imposing compliance costs on out-of-state FMIA-inspected establishments like Triumph, id. ¶¶ 143-147, 150-153, and by increasing the prices of pork meat for consumers in California. Id. ¶¶ 148-149. Plaintiff alleges that the slaughterhouse exception "shifts competitive market share toward California's in-state FMIA-inspected establishments relative to out-of-state FMIA-inspected processors like Triumph by effectively reducing the compliance cost burden on in-state sellers for any transactions occurring on their California premises, while leaving out-of-state FMIA-inspected processors to bear the full weight of the compliance regime for all California-bound transactions." Id. ¶ 153.

Any person who violates Proposition 12 is guilty of a misdemeanor punishable by a fine of up to $1,000 and up to 180 days imprisonment. Cal. Health & Safety Code § 25993(b). Additionally, violating Proposition 12 constitutes unfair competition, as defined by Cal. Bus. & Prof. Code § 17200. Id. at § 25993(b).

### E. Proposition 12 Regulations

On May 28, 2021, the CDFA published draft rules and regulations for Proposition 12, which became final on September 1, 2022. FAC ¶ 101 (citing Cal. Code Regs. tit. 3, §§ 1322-1327.3).

#### 1. Registration Requirements

Under the Regulations, beginning January 1, 2024, "any person engaged in business in the state as a pork producer, or any out-of-state pork producer that is keeping, maintaining, confining, and/or housing a breeding pig for purposes of producing whole pork meat, from the breeding pig or its immediate offspring, for human food for commercial sale in California, shall hold a valid certification issued pursuant to Article 5

of [the Regulations] as a certified operation." Cal. Code Regs. tit. 3, § 1322.1 Also under the Regulations, beginning January 1, 2023, "any in-state or out-of-state person engaged in a commercial sale into or within the state as a pork distributor, shall hold a valid registration with the Department pursuant to this Article." Id. at § 1322.2(a). This registration must be renewed annually. Id. at § 1322.2(j).

2. Labelling Requirements

The Regulations also include labelling requirements. See Cal. Code Regs. tit. 3, § 1322.4. "All documents of title and shipping manifests for shipments of whole pork meat entering the state or transported within the state for commercial sale in California shall include the statement 'Pork CA Prop 12 Compliant.'" Id. at § 1322.4(a). Whole pork meat entering California that is not produced in compliance with Proposition 12 that is destined for sale to federal agencies or on tribal lands and not for commercial sale in California, must be labeled "For Export," "For Transshipment," or "Not Prop 12 Compliant." Id.

3. Inspection, Seizure, and Tagging

The CDFA may stop any vehicle or other conveyance transporting whole pork meat into or within the state, for the purposes of inspection of cargo and any accompanying shipping documents, manifests, and bills of lading. Id. at § 1322.6(b). The CDFA "may seize and hold any containers, sub-containers, lots or loads of whole pork meat in California which they have reasonable suspicion to believe is in violation of [Proposition 12]," and issue a hold notice to the person having control of the whole pork meat. Id. at § 1322.7(c). "Any whole pork meat for which a hold notice is issued shall be held by the person having control of the whole pork meat and shall not be disturbed, moved, diverted, or offered for sale except under the specific directions of the [CDFA]." Id. at § 1322.7(d). "A person may request an informal hearing to contest tagging, hold notice, or seizure of whole pork meat pursuant to [the Regulations]." Id. at § 1322.7(e). The CDFA "may affix a warning tag or notice to shipping documents, manifests, containers, sub-containers, lots, or loads of whole pork meat which have been produced, packaged, stored, labeled, marked, identified, transported, delivered, or sold in violation of [Proposition 12]." Id. at § 1322.7(a)

///

///

## III. LEGAL STANDARD

Under Rule 60(b), the Court may relieve a party from a final judgment or order for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or other misconduct; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) any other reason that justifies relief. Fed. R. Civ. P. 60(b). Rule 60(b)(1) permits a court to correct its own inadvertence, mistakes of fact or mistakes of law. However, a Rule 60(b)(1) reconsideration motion should not merely present arguments previously raised, or which could have been raised in the original briefs." Hall v. Haws, 861 F.3d 977, 987 (9th Cir. 2017) (citation omitted).

In addition, in the Central District of California, Local Rule 7-18 sets forth the grounds upon which the Court may reconsider the decision on any motion:

> A motion for reconsideration of an Order on any motion or application may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered. No motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion.

C.D. Cal. L.R. 7-18. "[T]he grounds for reconsideration specified in L.R. 7-18 are the *exclusive* grounds for reconsideration in the Central District of California." Lorenzo Vargas v. City of Los Angeles, No. 2:16-cv-08684-SVW-AFM, 2018 WL 10231166, at *2 (C.D. Cal. Nov. 14, 2018) (emphasis in original); see also Chikosi v. Gallagher, 611 Fed. Appx. 429, 430 (9th Cir. 2015) (affirming denial of motion for reconsideration for failure to comply with L.R. 7-18).

"Whether or not to grant reconsideration is committed to the sound discretion of the court." Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003); see also United States v. Mark, 795 F.3d 1102, 1104 (9th Cir. 2015) (denial of motion for reconsideration reviewed for abuse of discretion).

## IV. DISCUSSION

“Congress may expressly preempt state law by enacting a clear statement to that effect.” In re Volkswagen “Clean Diesel” Mktg., Sales Pracs., & Prods. Liab. Litig., 959 F.3d 1201, 1211 (9th Cir. 2020). “[T]he plain wording of [an] express preemption clause ‘necessarily contains the best evidence of Congress’[s] preemptive intent.’” Am. Apparel & Footwear Ass'n, Inc. v. Baden, 107 F.4th 934, 939 (9th Cir. 2024) (quoting Puerto Rico v. Franklin Cal. Tax-Free Tr., 579 U.S. 115, 125 (2016)). Here, the express preemption clause of the FMIA provides:

> Requirements within the scope of this [Act] with respect to premises, facilities and operations of any establishment at which inspection is provided under [this Act], which are in addition to, or different than those made under this [Act] may not be imposed by any [State] . . . Marking, labeling, packaging, or ingredient requirements in addition to, or different than, those made under this [Act] may not be imposed by any [State] with respect to articles prepared at any establishment under inspection in accordance with the requirements under subchapter I of this [Act], but any [State] may, consistent with the requirements under this [Act], exercise concurrent jurisdiction with [USDA] over articles required to be inspected under said subchapter I, for the purpose of preventing the distribution for human food purposes of any such articles which are adulterated or misbranded and are outside of such an establishment, or, in the case of imported articles which are not at such an establishment, after their entry into the United States. This chapter shall not preclude any [State] from making requirement [sic] or taking other action, consistent with this [Act], with respect to any other matters regulated under this [Act].

21 U.S.C. § 678.

In its March 2, 2026 order, the Court found that “Triumph has failed to state a plausible claim for relief based on express preemption.” March 2, 2026 Order at 16. The Court reasoned that “Proposition 12’s ban on the sale of noncompliant meat within the state does not apply on the premises of slaughterhouses [i.e., an FMIA-inspected establishment].” Id. at 17. The Court further found that “[t]o the extent that Triumph or any other FMIA-inspected establishment is impacted by Proposition 12’s sales ban or the Regulations, Proposition 12 and the Regulations do not impose any ‘requirements’ on

slaughterhouses that are 'in addition to, or different than' any federal requirements within the scope of the FMIA. Instead, any such operational changes by slaughterhouses in response to Proposition 12 and the Regulations are voluntary business decisions undertaken to avail of the California market." Id. (footnote omitted). The Court thus concluded that although "slaughterhouses may incur operational costs to accommodate a sales ban . . . the ban on a particular type of meat—whether from a horse or a pig confined in a cruel manner—is not preempted by the FMIA." Id. at 17-18.

In its instant motion, Triumph argues that the Court should reconsider its March 2, 2026 order and reinstate Triumph's express preemption claim under FMIA following the United States Supreme Court's June 25, 2026 decision in Monsanto Co. v. Durnell, 609 U.S. ___ (2026). Mot. at 1. Triumph argues that Monsanto articulated "two governing principles" that "directly undermine[] both underlying premises of the Court's holding concerning Triumph's express preemption claim." Id. at 2-3. First, Triumph argues that because Monsanto held that "the preemption inquiry turns on practical legal effect, not nominal form," the Court erred in concluding that operational changes by slaughterhouses in response to Proposition 12 and its regulations are voluntary business decisions as opposed to changes that are "practically require[d]" under Proposition 12. Id. at 3, 7. Second, Triumph argues that because Monsanto held that "a federal agency's affirmative regulatory approvals constitute 'requirements' with preemptive force," it follows that the determinations made by the United States Department of Agriculture's Food Safety and Inspection Service ("FSIS") as to the types of pork that are fit for interstate commerce, constitute federal "requirements" under the FMIA's preemption clause. Id. at 3, 9. Triumph argues that such determinations by FSIS preempt Proposition 12 and its regulations—which prohibit the sale within California of pork meat that the seller knows is raised in a cruel manner—because the "practical operational consequence" of Proposition 12 is that it "imposes additional or different operational requirements" on Triumph from what FSIS regulations require. Id. at 9-10.

Triumph further argues that the Court's July 13, 2026 order, dkt. 87, supports its motion for reconsideration because the Court's order assumes "precisely the same factual predicate—Proposition 12 does affect Triumph as an FMIA-regulated slaughterhouse—that Monsanto now requires this Court to consider in the preemption context" and holds that "the operational consequences Proposition 12 imposes on Triumph are not voluntary in any meaningful sense" but are instead "structurally compelled by the regulatory scheme itself." Id. at 11.

In opposition, defendants argue that Monsanto does not constitute a "change of law" within the meaning of Local Rule 7-18 such that the Court should reconsider its dismissal of Triumph's express preemption claim. Opp. at 7. Defendants argue that "Monsanto does not set out a new 'practical legal effect' test for a preemption inquiry" because neither that phrase appears nowhere in the Monsanto majority decision, nor does the Monsanto majority suggest that the "practical effect" of a regulation governs the preemption inquiry. Id. at 8. Defendants further argue that Monsanto does not constitute a change of law because it does not *newly* establish that a federal agency's affirmative regulatory approvals constitute "requirements" with preemptive force, given that Monsanto held that "[b]y its text, [the Federal Insecticide, Fungicide, and Rodenticide Act] affords preemptive force to federal requirements imposed 'under' FIFRA, not merely those imposed 'by' the actual statute itself." Id. at 9 (quoting Monsanto Co. v. Durnell, 146 S. Ct. 2001, 2013 (2026)).

Defendants argue that even if Monsanto amounted to a change of law, it is inapposite to the instant action. Id. at 9. Defendants argue that Monsanto is distinguishable because in Monsanto, the federal regulatory requirement at issue—an U.S. Environmental Protection Agency ("EPA") regulation that required the petitioner Monsanto to use an EPA-approved label without a cancer warning for its pesticide Roundup—preempted a Missouri state tort claim that would require addition of a cancer warning to the label for Roundup because the state tort claim would impose a pesticide labeling requirement "in addition to or different from" the label required by EPA. Id. at 10. Defendants argue that "[i]n other words, Monsanto could not comply with both Missouri state law and FIFRA; either the Roundup label has a cancer warning, or it does not." Id. By contrast, here, defendants argue that the FMIA and Proposition 12 do not regulate the same subject matter: "Proposition 12 and the Regulations apply to the handling of animals before they enter a slaughterhouse; their 'plain language' '[does] not concern the humane handling of animals ***at*** slaughterhouses or the safety of meat for consumption,' which is what the FMIA governs." Id. at 10. Defendants argue that unlike in Monsanto, "here, it is possible for Triumph to comply with ***both*** Proposition 12 and the FMIA":

> Triumph can decide to only produce Proposition 12-compliant meat for sale throughout the country, including in California; Triumph can decide to produce only noncompliant meat, and not to sell meat in California; Triumph can decide to produce both compliant and noncompliant meat for sale to California and to other

> States across the country. But whatever Triumph chooses, ***it remains in compliance with the FMIA***, so long as it adheres to the FMIA's unrelated requirements as to the inspection of animals and carcasses "to prevent the shipment of impure, unwholesome, and unfit meat and meat-food products in interstate and foreign commerce."

Id. at 10-11 (quoting Pittsburgh Melting Co v. Totten, 248 U.S. 1, 4-5 (1918)).

Defendants further argue that "[w]hether the FMIA's 'regulatory determinations' 'carry preemptive force over contrary or supplemental state law' is immaterial here, because those 'determinations' pertain to food safety and whether pork is 'adulterated' and should be 'condemned.' . . . FSIS's 'regulatory determinations' have nothing to do with whether pork is Proposition 12-compliant." Id. at 12.

Defendants also argue that the Court's July 13, 2026 order, dkt. 87, does not support Triumph's instant motion because the Court in that order merely found that Triumph "adequately allege[d] that Proposition 12's slaughterhouse exception substantially burdens the interstate market and the interstate flow of goods" and found that "it was plausible that the slaughterhouse exception shifts market share towards California's FMIA-inspected establishments, relative to out-of-state FMIA-inspected establishments like Triumph." Id. at 13-14 (citing dkt. 87 at 18). Defendants argue that the Court in that order did not suggest that the FMIA preempts Proposition 12. Id. at 14.

In their oppositions to Triumph's motion, the intervenors make the same or similar arguments. See Opp. by F. Int.; Opp. by S. Int. The First Intervenors further argue that Triumph, in its instant motion, raises arguments that it already raised during Rule 12 briefing; specifically, the First Intervenors argue that Triumph's asserted "legal effect test" resembles Triumph's earlier argument that National Meat Association v. Harris, 565 U.S. 452 (2012), required the Court to analyze "the effect of the challenged state statute in order to determine whether that statute is preempted or not." Opp. by S. Int. at 11, 11 n.6 (quoting Dkt. 64, March 2 Hearing Tr. at 6-9).

In reply, Triumph reiterates that Monsanto represents a change in the law. Resp. to F. Int. Opp. at 2-3. Triumph further argues that contrary to arguments in opposition, both the FSIS and Proposition 12 govern the same realm—"food safety." Resp. to Def. Opp. at 6-7. Moreover, Triumph argues that a common label is minimally pertinent here—instead, courts must look to "whether the state law displaces a specific determination the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL 'O'**

| Case No. | 2:25-cv-09063-CAS-AJRx | Date | September 14, 2026 |
|---|---|---|---|
| Title | Triumph Foods, LLC v. Rob Bonta et al | | |

federal scheme has made." Id. at 7. Specifically, Triumph argues that Monsanto holds that "when a federal agency affirmatively approves a product for commerce, a state law that nonetheless bars the product imposes a requirement 'in addition to' or 'different from' the federal scheme. States cannot create heightened or different requirements." Id. Triumph argues that, as in Monsanto, it should not "have to face any consequences under Proposition 12" if it "uses FSIS-approved pork under the FMIA," let alone the "*criminal*" penalties outlined Cal. Health & Safety Code § 25993. Id. at 8.

Triumph also argues that Monsanto "resolves the tension in Triumph's favor" between the Court's March 2, 2026 Order and July 13, 2026 Order. Id. at 9. It argues that applying Monsanto would enhance consistency between the orders by eliminating questions as to "how the same conduct can be both a voluntary market choice for preemption purposes and a structurally compelled burden for Commerce Clause purposes." Id.

Finally, Triumph argues that the Supreme Court's denial of certiorari in Triumph Foods, LLC v. Campbell, No. 25-1047—a related First Circuit case challenging a Massachusetts farm animal confinement law under the FMIA—is "most naturally read as the Court's determination that circuit courts should apply Monsanto in the first instance before the Supreme Court grants further review of state farm animal confinement laws." Resp. to S. Int. Opp. at 11-12.

Local Rule 7-18 provides that "[a] motion for reconsideration of an Order on any motion or application may be made only on the grounds of . . . (b) the emergence of new material facts or a *change of law* occurring after the Order was entered." L.R. 7-18. Here, the Court need not address whether Monsanto constitutes a "change of law" within the meaning of Local Rule 7-18 because, even assuming that Monsanto does constitute a "change of law," Monsanto does not warrant the Court to reconsider its decision to dismiss Triumph's express preemption claim with prejudice.

In Monsanto, the Supreme Court held that the preemption clause in the Federal Insecticide, Fungicide, and Rodenticide Act—which prohibits states from imposing "any requirements for labeling or packaging in addition to or different from those required under," 7 U.S.C. § 136v(b)—expressly preempted the respondent's "state-law failure-to-warn claim [that] would require a cancer warning on Roundup's label" because such requirement would be "'in addition to' and 'different from' the label required by EPA's regulations under FIFRA. Monsanto, 146 S. Ct. at 2017. The Monsanto Court reasoned

that "by its text, FIFRA affords preemptive force to federal requirements imposed 'under' FIFRA, not merely those imposed 'by' the actual statute itself," "[s]o EPA's registration determinations as to the appropriate level of warning on a pesticide's label impose 'requirements' 'under' FIFRA." Id. at 2013. In Monsanto, the EPA had made a registration determination approving the plaintiff's product label without a cancer warning. Id. at 2011. As a result, plaintiff was legally required to "use a label without a cancer warning unless and until EPA approves or requires a change." Id. at 2009. Because the Missouri-law requirement adding cancer warning was "in addition to" and "different from" the EPA's requirements, the Court held that the Missouri-law requirement was expressly preempted. Id. at 2011-2012. The Monsanto Court therefore reversed the Missouri Court of Appeals' judgment, which had held that Missouri failure-to-warn claims were "fully consistent with" FIFRA's misbranding provisions because "both require a pesticide manufacturer to adequately warn users of the potential dangers of using its product." Id. at 2009, 2017.

Monsanto is inapposite here because unlike FMIA and Proposition 12, the federal and state requirements at issue in Monsanto directly regulated the same conduct—specifically, a company's use or nonuse of a cancer warning on a product label. Here, however, "Proposition 12 is not within the scope of the FMIA: the two laws regulate in very different spheres. Where FMIA establishes on-site slaughterhouse inspections of animals and carcasses to identify adulterated meat and prevent inhumane slaughter, Proposition 12 operates on California voters' separate determination that pork derived from pigs raised in extreme confinement on-farm is cruel, and should be eliminated from California markets." Opp. by F. Int. at 5-6. In other words, while FMIA regulations concern food safety and determine whether animals and carcasses in slaughterhouses are "adulterated" or "condemned," Proposition 12 regulations concern the nature of animal confinement. Opp. by Def. at 10; see also Triumph Foods, LLC v. Campbell, 156 F.4th 29, 52 (1st Cir. 2025), cert. denied, No. 25-1047, 2026 WL 1871298 (U.S. June 30, 2026) (observing that the Massachusetts Act to Prevent Cruelty to Farm Animals "only bans the sale of noncompliant pork meat; it does not regulate how a slaughterhouse operates"); Empacadora de Carnes de Fresnillo, S.A. de C.V., v. Curry, 476 F.3d 326, 333 (5th Cir. 2007) ("[T]he FMIA's preemption clause is more naturally read as being concerned with the methods, standards of quality, and packaging that slaughterhouses use, matters [the Texas law banning the sale of horsemeat] is entirely unconcerned with.").

Triumph seems to agree that the pertinent question after Monsanto is "whether the state law displaces a specific determination the federal scheme has made." See Resp. to Def.'s Opp. at 7. However, Triumph does not identify any type of displacement here that can be likened to the overlap in state and federal requirements in Monsanto. Triumph argues that both the FMIA and Proposition 12 concern "food safety," but it concedes that this "common label" is both minimally relevant and stated at too high a level of generality. Id. at 8. Triumph also argues that FMIA requires FSIS to conduct "ante-mortem and post-mortem inspection, decide[] whether the animal and carcass are 'condemned' or 'adulterated' within the meaning of the Act, and affirmatively stamp[] compliant product 'inspected and passed.'" Resp. to F. Int.'s Opp. at 6 (citing 21 U.S.C. §§ 603-604; 9 C.F.R. § 310). Triumph argues that this process leads to a determination that "the pork is fit for interstate commerce," and it argues that Proposition 12 "directly overrides" that determination. Id. at 6-7. Assuming *arguendo* that Proposition 12 bears on pork's fitness for interstate commerce, such an "override" is "for a reason FSIS's inspection regime does not evaluate," as Triumph itself acknowledges. Id. at 7. Specifically, "Proposition 12 overrides [the FSIS] judgment for a subset of that same pork based on a criterion the FMIA's inspection regime did not evaluate: the housing conditions of the sow from which the animal came." Resp. to Def.'s Opp. at 8. Unlike in Monsanto, then, the federal and state schemes here do not overlap in the specific conduct or conditions they regulate. Nor do the schemes occupy the same regulatory "sphere." Accordingly, Monsanto does not mandate a finding that Proposition 12's requirements are "in addition to" and "different from" those set forth in FMIA.

That Proposition 12 falls outside the scope of the FMIA and its preemption clause is evident by the following fact: Triumph may simultaneously comply with both the FMIA's requirements and Proposition 12.[2] This is so because the requirements of

[2] At the September 14, 2026 hearing, plaintiff argued that Triumph's ability to simultaneously comply with the FMIA and Proposition 12 requirements would be pertinent to a *conflict* preemption inquiry, but not the *express* preemption inquiry here. However, as defendant noted at hearing, this argument falls short. As the Supreme Court has stated, all forms of preemption "work in the same way: Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or imposes restrictions that *conflict with the federal law*; and therefore the federal law takes precedence and the state law is preempted." Murphy v. Nat'l Collegiate Athletic Ass'n, 584 U.S. 453, 477 (2018) (emphasis added). While this "[t]his mechanism is shown

Proposition 12 and its implementing regulations are not “in addition to, or different than those made under [the FMIA].” 21 U.S.C. § 678. By contrast, in Monsanto, Monsanto could not simultaneously comply with both the FIFRA—which under its implementing regulations required Monsanto to use an EPA label that did not contain a cancer warning on the label for Roundup—and Missouri tort law, which required a cancer warning on the Roundup label. Monsanto, 146 S. Ct. at 2017. Missouri’s state tort law “would impose a labeling requirement that is ‘in addition to or different from’ federal labeling requirements imposed ‘under’ FIFRA,” and was thus preempted. Id. at 2010.

Finally, with respect to the Supreme Court’s denial of certiorari in Triumph Foods, LLC v. Campbell, No. 25-1047, “[t]he denial of a writ of certiorari imports no expression of opinion upon the merits of the case.” Missouri v. Jenkins, 515 U.S. 70, 85 (1995) (quoting United States v. Carver, 260 U.S. 482, 490 (1923)).

Accordingly, the Court **DENIES** plaintiff’s motion for reconsideration.

## V. CONCLUSION

In accordance with the foregoing, the Court **DENIES** plaintiff’s motion for reconsideration of the Court’s March 2, 2026 Order dismissing the express preemption claim with prejudice.

IT IS SO ORDERED.

| | | |
|---|---|---|
| | 00 : 07 | |
| Initials of Preparer | CMJ | |

most clearly in cases involving ‘conflict preemption,’” express preemption “operates in essentially the same way.” Id. at 478. Moreover, the absence of overlap between the FMIA and Proposition 12 requirements merely illustrates that Proposition 12’s mandates are not “[r]equirements within the scope” of the FMIA. See 21 U.S.C. § 678. Accordingly, FMIA’s express preemption clause does not apply. See also Triumph Foods, 156 F.4th at 52 (holding that the FMIA did not expressly preempt a Massachusetts law regulating methods of pig confinement because the state law “regulates pork production, rather than pork inspection[;] [t]he FMIA regulates only the latter”).